UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HINDU AMERICAN FOUNDATION<br>910 17th Street NW, Suite 316A<br>Washington, DC 20006,<br><br>    Plaintiff,<br><br>  v.<br><br>SUNITA VISWANATH<br>361 Warren Street<br>Brooklyn, New York 11201-6412;<br>RAJU RAJAGOPAL<br>6456 Mystic Street<br>Oakland, California 94618-1347;<br>RASHEED AHMED<br>6321 W. Dempster Street, Suite #295<br>Morton Grove, Illinois 60053;<br>JOHN PRABHUDOSS<br>2055 26th Street S, Apt. 401<br>Arlington, Virginia 22206-2892;<br>AUDREY TRUSCHKE<br>1404 Grand Street, Apt. 4B,<br>Hoboken, New Jersey 07030-2398; AND<br>DOES 1-20,<br><br>    Defendants. | **Civil Action No.**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Hindu American Foundation, by and through its undersigned attorneys, alleges as follows:

## INTRODUCTION

1. Plaintiff Hindu American Foundation (hereinafter "Plaintiff" or "HAF") is a wholly independent, non-partisan and non-profit American organization that was founded by second-generation Hindu Americans born and raised in the United States.  HAF is committed to and actively engaged in promoting dignity, mutual respect, pluralism, and the greater good of all.  HAF seeks to serve Hindu Americans across all sampradaya (Hindu religious traditions), regardless of race, color, national origin, ancestry, citizenship, gender, sexual orientation, age and/or disability.  As a non-profit, HAF is largely dependent on the generosity of donors to operate.

2. Defendants Sunita Viswanath, Raju Rajagopal, Rasheed Ahmed, John Prabhudoss and Audrey Truschke (collectively, "Defendants") conspired with non-party Raqib Hameed Naik, and others, to publish false, defamatory and highly damaging statements about HAF.  Defendants control, operate, act on behalf of, and/or are otherwise affiliated with, one or more organizations – Hindus for Human Rights ("HfHR"), Indian American Muslim Council ("IAMC"), and Federation of Indian American Christian Organizations ("FIACONA") – that have a documented history of attacking and/or disparaging HAF.

3. The false and defamatory statements that give rise to this lawsuit were published in two articles on Al Jazeera Media Company's U.S. facing website, AlJazeera.com.  Each of the Defendants was directly quoted in the articles, conspired to cause false and defamatory statements to be made therein, and/or republished those statements.  The false and defamatory statements contain assertions that HAF is a "US-based front organisation" for India-based Hindu

nationalist organizations, which are allegedly supremacist and highly controversial; is a subsidiary of those organizations in India which Defendants have accused of egregious human rights abuses; and that HAF has "misappropriat[ed]" and "funneled" U.S. Government COVID relief funds to those same organizations. In a further coordinated effort to call attention to these false and defamatory statements and defame HAF, Defendant Truschke also published false and defamatory statements contending that HAF, among other things, has "participated in a recent coordinated effort attacking [her]…involv[ing] targeted harassment of [herself] and others and violent threats" which is a "huge red flag for a US-based organization." These statements, and many others, are unequivocally false, defamatory and highly damaging to HAF.

4.      Defendants dislike the political party currently in power in India (which is often labeled a "Hindu nationalist" party), and have political disagreements with the Indian government, especially with respect to its alleged treatment of Muslims and other religious minorities. However, rather than merely airing those political disagreements, they concocted a scheme to defame groups even outside India whom they perceive to be "pro-Indian government" and "pro-Hindu". Accordingly, they decided to target HAF with a campaign of lies and false statements, attempting to discredit HAF's educational and advocacy efforts. Defendants routinely conspire to spread mistruths about HAF, in an effort to encourage discrimination against them, and impede HAF's ability to effect change in accordance with HAF's guiding principles. To further their aim, and perpetuate the conspiracy, Defendants use each other as corroborating sources.

5.      The conspiracy amongst Defendants to defame HAF also furthers their own interests, seeking to deflect criticism of their own actions and those of their affiliated

organizations, and lend further credibility to their own respective organizations, and solicit further interest and donations on their own behalf.

6. Defendants' conduct has injured, and will cause further substantial injury, to HAF's reputation and ability to fundraise.

## PARTIES

7. Plaintiff HAF is an American non-profit organization headquartered in Washington, D.C. HAF is wholly independent and non-partisan, and has no affiliation or ties to any organizations or political parties in the United States or abroad.

8. On information and belief, Defendant Sunita Viswanath ("Defendant Viswanath") is a Co-Founder and member of the Board of Directors of HfHR, and resides in Brooklyn, New York and Taos, New Mexico.

9. On information and belief, Defendant Raju Rajagopal ("Defendant Rajagopal") is a Co-Founder and member of the Board of Directors of HfHR, and resides in Oakland, California and Chennai, India.

10. On information and belief, Defendant Rasheed Ahmed ("Defendant Ahmed") is the Executive Director of IAMC, and resides in or around Chicago, Illinois.

11. On information and belief, Defendant John Prabhudoss ("Defendant Prabhudoss") is the Chairman of FIACONA, and resides in Arlington, Virginia.

12. On information and belief, Defendant Audrey Truschke ("Defendant Truschke"), works for Rutgers, The State University of New Jersey, and resides in Hoboken, New Jersey.

13. HAF is presently unaware of the identity of the defendants sued herein as DOES 1-20, and will amend this complaint to identify them once HAF learns of their identities.

Defendants Viswanath, Rajagopal, Ahmed, Prabhudoss, Truschke and DOES 1-20 are collectively referred to herein as "Defendants."

14. On information and belief, Defendants, and each of them, were and are the agents, licensees, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the remaining Defendants and each of them are, and at all times mentioned herein were, acting within the course and scope of that agency, license, partnership, employment, conspiracy, ownership, or joint venture. On further information and belief, the acts and conduct herein alleged of each of the Defendants were known to, authorized by and/or ratified by the other Defendants, and each of them.

15. Whenever in this complaint reference is made to any act of a defendant, such allegation shall be deemed to mean the acts of the defendants named in the particular cause of action, and each of them, acting individually, jointly and severally.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000. HAF has lost and/or expended and/or will lose and/or expend at least $75,000 as a result of events that occurred after Defendants executed their conspiracy to defame HAF as outlined herein.

17. This Court has personal jurisdiction over Defendants because they have minimum contacts with Washington, District of Columbia. Such minimum contacts include their purposeful conduct in making and conspiring to publish defamatory statements intended to injure an organization located in the District of Columbia.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events, including the publication of the defamatory statements, giving rise to this complaint occurred here and because HAF is domiciled in this District.

## FACTUAL BACKGROUND

19. HAF is a non-partisan and non-profit American organization that is committed to educating the public about Hindus and Hinduism and advocating for policies and practices that ensure the well-being of all people and the planet. HAF works directly with educators and journalists to ensure accurate understanding of Hindus and Hinduism, and with policymakers and key stakeholders to champion issues of concern to Hindu Americans, including defending civil and human rights and protecting all living beings. As a 501(c)(3) non-profit under the IRS, HAF is a regulated advocacy group dedicated to a charitable purpose.

20. Defendants Viswanath, Rajagopal, Ahmed and Prabhudoss regularly work together to further their shared agenda, and control and/or operate a group of affiliated organizations – HfHR, IAMC and FIACONA – that have a history of coordinated attacks on HAF. IAMC is the "closest organizational partner" of HfHR, according to a recent statement by Defendant Viswanath. On information and belief, HfHR, IAMC and FIACONA are all members of the purported Coalition to Stop Genocide in India (the "Coalition"), which was used by Defendants as a conduit to make certain false and defamatory statements at issue herein, and to further Defendants' common scheme to defame HAF. Defendant Prabhudoss (FIACONA) and Defendant Rajagopal (HfHR) also serve as co-chairs for the India Working Group of the International Religious Freedom Roundtable.

21. Defendant Truschke, a Professor of South Asian history at Rutgers University, has substantial ties to the other Defendants and their organizations, including speaking at a recent

event hosted by IAMC in January 2021.  Defendants caused their respective organizations to sign a letter to Rutgers University in March 2021 supporting Defendant Truschke against various criticisms by student groups.  On or around April 16, 2021, Defendants Viswanath and Rajagopal authored an opinion article in support of Defendant Truschke, which was published on the website, TheWire.in.  This opinion article was subsequently republished on April 17, 2021 on IAMC's website.  IAMC's Advocacy Director, non-party Ajit Sahi, serves on the Board of Advisors with Defendant Truschke, for another member of the Coalition, Students Against Hindutva Ideology.  Defendant Viswanath is also a Co-Founder and Executive Board member of Sadhana: Coalition of Progressive Hindus, and has used this additional "coalition" to support Defendant Truschke, disparage HAF and partner with IAMC.

22. On information and belief, non-party Raqib Hameed Naik ("Mr. Hameed Naik"), the author of the first article at issue, also has substantial ties to Defendants and their respective organizations, which include speaking at public events organized by those organizations and serving as a member of IAMC's executive team for News and Media Outreach.

23. Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves to defame HAF in two articles published on AlJazeera.com. Defendants then caused their respective organizations to republish and provide alleged corroboration of the defamatory statements, resulting in further harm to HAF.

24. On or about April 2, 2021, Defendants caused multiple false and defamatory statements to be published in the "First Story," written by non-party Mr. Hameed Naik, on AlJazeera.com, which was entitled "Hindu right-wing groups in US got $833,000 of federal COVID fund [:] Five groups linked to Hindu nationalist organisations in India received direct payments and loans in federal relief fund."  The First Story falsely refers to HAF as a "Hindu

right-wing group in [the] US" that is "linked to Hindu nationalist organisations in India". The First Story further falsely states that HAF has "ties to Hindu supremacist and religious groups".

25. The original version of the April 2, 2021 First Story contains the following false and defamatory statements of and concerning HAF ("First Story Defamatory Statements"):

   a. **Defendant Viswanath**:

      i. "[Ms.] Viswanath, co-founder of Hindus for Human Rights, expressed concern that the US pandemic relief funds might end up furthering hate campaign[*sic*] against Muslims and other minorities in India."

      ii. "'All these organisations [including HAF] are sympathetic to the Hindu supremacist ideology. Their parent organisations continue to spread hatred in Hindu communities towards Muslims and Christians,'…"

      iii. "'Any American non-profit that perpetuates Islamophobia and other forms of hate should not receive federal relief funds in any form.'"

26. The First Story Defamatory Statements were also republished in connection with additional false and defamatory statements as follows:

   a. **Defendant Ahmed**:

      i. On or around April 3, 2021, Defendant Ahmed caused IAMC to post the First Story and a hyperlink along with the following false and defamatory statement, among others, on its Twitter account and on its website:

         1. "Experts have raised concerns that the US pandemic relief funds received by Hindu rightwing groups might end up furthering hate campaign against Muslims and other minorities in India, @raqib_naik reports in @AlJazeera_World [¶] Link:

https://www.aljazeera.com/news/2021/4/2/hindu-right-wing-groups-in-us-got-833000-of-federal-covid-fund[.]"

ii. On or around April 17, 2021, Defendant Ahmed caused IAMC to republish on its website the First Story, including each of the First Story Defamatory Statements.

b. **Defendant Truschke**: On or about April 2, 2021, Defendant Truschke posted the First Story along with the following false and defamatory statement, among others, in a thread on her Twitter account:

i. "To add a personal note -- Some of the groups mentioned here, especially HAF, have participated in a recent coordinated effort attacking me. [¶] That effort has involved targeted harassment of me and others and violent threats. [¶] This is a huge red flag for a US-based organization."

27. In a strategic and coordinated effort to amplify the First Story Defamatory Statements, Defendants Viswanath, Rajagopal, and Ahmed, acting by and through their respective organizational platforms, and Defendant Truschke, each disseminated and/or republished the First Story on additional occasions. Defendants Viswanath and Rajagopal caused HfHR to post a link to the First Story on its website along with republications and commentary on its Twitter. Defendant Ahmed caused IAMC to post the First Story multiple times on its Twitter along with quotes and commentary in addition to the republication on its website. Defendant Truschke posted the First Story on her Twitter numerous times along with direct statements as well as quotes from the First Story.

28. In furtherance of Defendants' conspiracy, on or about April 8, 2021, Defendants caused additional false and defamatory statements to be published in the "Second Story" on

AlJazeera.com, which was entitled "Call for US probe into Hindu right-wing groups getting COVID fund [:] Following an Al Jazeera report, US-based Coalition to Stop Genocide in India demands investigation into federal funds given to 'sponsor hate'."  The Second Story includes many false and defamatory statements of and concerning HAF made by the Coalition.  On information and belief, Defendants caused these statements to be attributed to the Coalition, of which their respective organizations are members that have a controlling interest, had approval of the statements before publication, and are therefore liable for those statements.

29. The April 8, 2021 Second Story contains the following false and defamatory statements of and concerning HAF ("Second Story Defamatory Statements") (collectively with the First Story Defamatory Statements, the "Defamatory Statements"):

  a. **Defendant Ahmed**:
     i. "US taxpayers' money being used to keep hate groups in business is absolutely unacceptable and should concern all who believe in fairness, justice and government accountability[.]"

  b. **Defendant Rajagopal**:
     i. "'The rise of HAF and other organisations linked with Hindutva has emboldened Hindu supremacist organizations in India, while also stifling the moderate Hindu voices here in the US[.]"

  c. **Defendant Prabhudoss**:
     i. "'Government watchdog groups as well as human rights organisations need to take serious note of the misappropriation of COVID funding by Hindu supremacist groups the United States,'…"

d. **The Coalition**:

  i. "[T]he Hindu groups that received the funds have 'existential links' with the Rashtriya Swayamsevak Sangh (RSS), the 'fountainhead of Hindu supremacist ideology' and 'ideological parent' of Prime Minister Narendra Modi's Bharatiya Janata Party (BJP)."

  ii. "[T]he five groups – Vishwa Hindu Parishad of America (VHPA), Ekal Vidyalaya Foundation, Infinity Foundation, Sewa International and Hindu American Foundation (HAF) – are 'US-based front organisations for Hindutva, the supremacist ideology that is the driving force behind much of the persecution of Christians, Muslims, Dalits and other minorities in India'."

  iii. "There are families across America still reeling from the human and economic toll of COVID-19, while groups [like HAF] that seem to be essentially serving as front organizations for a violent and supremacist ideology are raking in the windfall from federal COVID funding."

  iv. "[T]he RSS has been 'directly involved in orchestrating anti-Christian and anti-Muslim pogroms and instigating terror attacks, as part of a relentless campaign to subvert India's secular moorings and turn it into a Hindu authoritarian state where minorities are relegated to the status of second class citizens'."

  v. "[The RSS's] members and affiliated organisations have been implicated in countless acts of massacres, ethnic cleansing, terrorism, forced-

    conversions and other forms of violence against religious minorities in India,'..."

  vi. "'A comprehensive probe and corrective action is needed to ensure that hard-working American taxpayers' money is not funneled towards sponsoring hate, persecution and the slow genocide of minorities and marginalised communities in India.'"

30. The Second Story Defamatory Statements were also republished with additional false and defamatory statements as follows:

 a. **IAMC**: On or around April 17, 2021, Defendant Ahmed caused IAMC to republish as a "Press Release" on its website a version of the Second Story, which included each of the Second Story Defamatory Statements. This Press Release is attributed to the Coalition, further amplifying the intended outcome of Defendants' conspiracy by adding another alleged layer of apparent corroboration. This Press Release also stated: "The 'Coalition to Stop Genocide in India' is committed to ensuring that American institutions and discourse are safeguarded from the virulent Hindutva ideology. To that end, the coalition will continue to expose Hindutva front organizations in the US and their role in normalizing the human rights abuses and religious freedom violations in India."

31. As with their combined efforts regarding the First Story, Defendants Viswanath, Rajagopal and Ahmed, by and through their respective organizational platforms, and Defendant Truschke, engaged in strategic efforts to amplify the Second Story Defamatory Statements. Defendants Viswanath and Rajagopal caused HfHR to post on its website a link to the Second

Story and Defendant Truschke posted on Twitter a link to the Second Story along with commentary. Defendant Ahmed caused IAMC to make numerous posts on its Twitter regarding the Second Story along with links to the same. In particular, on or around April 8, 2021, Defendant Ahmed caused IAMC to post on its Twitter the following statement, among others, illustrating its coordinated efforts with the other Defendants, including Defendant Truschke:

    a. A Retweet of Defendant Truschke's Twitter post of the Second Story along with the false and defamatory statement, "Indian Americans of diverse backgrounds call for probe of US-based Hindu nationalist groups. [¶] As a scholar of South Asia, I can attest that some of these groups spread hate & use intimidation tactics. [¶] These things are dangerous and unwelcome on US soil[.] https://www.aljazeera.com/news/2021/4/2/hindu-right-wing-groups-in-us-got-833000-of-federal-covid-fund[.]"

    b. The Second Story along with the following, "@AudreyTruschke @FriedrichPieter @simran @arjunsethi81 @suchitrav @shailjapatel @mitalisaran @sonipaul @BasharatPeer @FareedZakaria @RashidaTlaib @RepDebHaaland @BradSherman @RoKhanna @RepJayapal https://www.aljazeera.com/news/2021/4/8/call-for-us-probe-into-hindu-right-wing-groups-getting-covid-fund [.]"

    32. As further confirmation of the conspiracy, on or around April 11, 2021, on information and belief, Defendant Ahmed arranged for Mr. Hameed Naik to appear at IAMC's virtual strategic meeting of its Executive Team to "discuss [IAMC's] advocacy strategy for the next quarter." On information and belief, Mr. Hameed Naik was listed on the related agenda under the designation, "News & Media Outreach".

33. On or around April 13, 2021, Defendant Truschke posted a series of false statements of and concerning HAF on her Twitter:

 a. "Here we have a board member [Rajiv Pandit] of the Hindu American Foundation -- known to promote Hindutva ideology in the US -- employing aa anti-Semitic trope to attack the authors of a recent opinion piece on human rights abuses in India…"

 b. "On the Hindu American Foundation's Hindutva agenda and its long-standing opposition to human rights concerns: http://www.coalitionagainstgenocide.org/press/cag.pr.07apr2014.php[.]"  This hyperlink relates to a post from an earlier version of the Coalition, named the Coalition Against Genocide, dated April 7, 2014, and entitled, "Hindu American Foundation exposed as foe of human rights and religious freedom [:] Indian American coalition condemns HAF's sophistry 'explaining' Hindu nationalist violence against minorities in India[.]"

 c. "…Full disclosure that the HAF Board member in question [Rajiv Pandit] has been going after me, along with a growing list of people, in recent days[.]"

34. On or around April 21, 2021, Defendant Prabhudoss tweeted the following statement on his Twitter:

 a. "Recently realized that the @HinduAmerican just confirmed and acknowledged through its own lawyers that they are a Hindu supremacist organization in the US operating as a charity. Wow! Who would have thought that!!"

35. Defendants' coordinated attacks on HAF are intended to damage, and have in fact caused substantial damage, to HAF's reputation and its ability to raise funds.  These attacks

portray HAF as contributing to and/or perpetuating heinous and despicable crimes against humanity – acts of massacres, ethnic cleansing, terrorism, forced-conversions, and other forms of violence against, and subjugation of, religious minorities in India.  The Defamatory Statements falsely claim that HAF not only serves as a "front" for their "parent" alleged Hindu nationalist and supremacist organizations, but that it "misappropriate[d]" and "funneled" U.S. Government COVID relief funds to those organizations.  The Defamatory Statements falsely accuse HAF of participating in a coordinated effort to attack Defendant Truschke, including falsely stating that HAF made violent threats against her.

36. To the contrary, HAF has no affiliation or ties to any organizations or political parties in the U.S. or abroad, and is not a member or subsidiary of Rashtriya Swayamsevak Sangh ("RSS") or any alleged Hindu nationalist or supremacist group in India.  HAF does not contribute any funds, whether COVID relief or otherwise, to in any way subvert minorities and/or spread Hindu nationalism and supremacy in India.  HAF does not provide money to RSS or anyone affiliated with RSS.  No HAF staff or board member, or any other person authorized to speak on behalf of the organization has made or been involved in making violent threats against Defendant Truschke.  These false accusations are defamatory *per se* and are highly damaging to HAF.  They have caused, or will cause substantial harm to HAF, including lost donations in excess of $75,000.

37. Defendants caused to be published and made and/or republished the false statements with actual malice.  There are extensive publicly available and readily accessible financials and other documents that directly contradict the Defamatory Statements and establish that no funds were provided by HAF to any alleged Indian nationalist or supremacist organizations.  HAF has a page on its website specifically dedicated to its financials, which

offers its Form 990s, Audited Financial Statements, reports on "Your Dollars in Action," a video regarding its Annual Report, the more recent editions of the Semi-Annual Newsletter, and a Statement on Grants Issued ensuring compliance with the Office of Foreign Assets Control (OFAC) of the US Department of the Treasury.

38. As a tax-exempt non-profit, HAF is required to annually submit Form 990s to the IRS, which document HAF's mission, exempt and other activities, finances, governance, compliance with certain federal tax filings and requirements, and compensation paid to certain persons. These filings, which must be made public, ensure that non-profits like HAF conduct their organization in a manner that is consistent with its public responsibilities. They include detailed breakdowns and schedules of financials such as: (1) Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors; (2) Statement of Revenue; (3) Statement of Functional Expenses; (4) Balance Sheet; (5) Reconciliation of Net Assets; (6) Schedule of Contributors; (7) Political Campaign and Lobbying Activities; (8) Supplemental Financial Statements; (9) Statement of Activities Outside of the United States; and (10) Grants and Other Assistance to Organizations, Governments, and Individuals in the United States. These Form 990s document HAF's compliance with the lobbying restrictions for 501(c)(3) non-profits. Further, HAF's financials have been annually reviewed by a third party controller and audited by a third party accounting firm for the past five (5) years, the most recent Reports of which are publicly available on HAF's website.

39. HAF's Form 990s are available on its website and on GuideStar.org, a watchdog platform regarding charities. HAF has proudly been awarded the 2021 Platinum Seal of Transparency, the highest level of recognition offered by GuideStar, due to HAF's extensive reporting on contact and organizational information, in-depth financial data, qualitative metrics

about goals, strategies, and capabilities, and quantitative results and progress towards achieving HAF's mission.

40. Because there were obvious reasons to doubt the accuracy of the Defamatory Statements, Defendants had an obligation to verify the truth, which they failed to do, thereby demonstrating that they published the Defamatory Statements with actual malice.

## FIRST CAUSE OF ACTION

**Defamation Against Defendants Viswanath, Rajagopal, Ahmed and Prabhudoss**

41. HAF hereby re-alleges each allegation in Paragraphs 1 through 40 as though fully set forth herein.

42. Defendants' made false and defamatory statements that HAF is, among other things, a "US-based front organisation" for India-based Hindu nationalist organizations, which are allegedly supremacist and highly controversial; is a subsidiary of those organizations in India which Defendants have accused of egregious human rights abuses; and that HAF has "misappropriate[ed]" and "funneled" U.S. Government COVID relief funds to those same organizations.

43. Defendants made and/or republished such statements with actual malice.

44. As a result of such statements, HAF has suffered, or will suffer, lost donations in an amount to be proven at trial, and which exceed $75,000.

45. Defendants' conduct was malicious, fraudulent, outrageous, and reckless, thereby justifying an award of punitive damages.

///

///

## SECOND CAUSE OF ACTION

### Defamation Against Defendant Truschke

46. HAF hereby re-alleges each allegation in Paragraphs 1 through 40 as though fully set forth herein.

47. Defendant Truschke's statements that HAF, among other things, has "participated in a recent coordinated effort attacking [her]…involv[ing] targeted harassment of [herself] and others and violent threats" which is a "huge red flag for a US-based organization" are false and defamatory, and highly damaging to HAF.

48. Defendant Truschke made and/or republished such statements with actual malice.

49. As a result of such statements, HAF has suffered, or will suffer, lost donations in an amount to be proven at trial, and which exceed $75,000.

50. Defendant Truschke's conduct was malicious, fraudulent, outrageous, and reckless, thereby justifying an award of punitive damages.

## THIRD CAUSE OF ACTION

### Civil Conspiracy Against All Defendants

51. HAF hereby re-alleges each allegation in Paragraphs 1 through 40 as though fully set forth herein.

52. Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves to defame HAF, by causing false and disparaging statements about HAF to be published in the First and Second Stories, and republished thereafter.

53. As a direct and proximate cause of Defendants' conspiracy, HAF has suffered, or will suffer, substantial damages, including to its reputation and ability to fundraise, in an amount to be determined at trial.

54. The above-described conduct is egregious and constitutes moral turpitude. As such, in addition to compensatory damages, HAF demands punitive damages in an amount to be determined at trial.

WHEREFORE, HAF prays for relief against Defendants, jointly and severally, as follows:

i. For compensatory and punitive damages according to proof;

ii. For preliminary and permanent injunctive relief prohibiting the publication or further dissemination of the defamatory statements alleged herein;

iii. For costs of suit; and

iv. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated: May 7, 2021

Respectfully submitted,

By: _____
Ryan J. Stonerock, Esq.
(D.C. Bar No. 1632636)
Dilan A. Esper, Esq.
(*pro hac vice* to be filed)
Jordan A. Gonzales, Esq.
(*pro hac vice* to be filed)

HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone: (424) 203-1600
RStonerock@HarderLLP.com
DEsper@HarderLLP.com
JGonzales@HarderLLP.com

By: /s/ David C. Tobin
David C. Tobin, Esq. D.C. Bar #395959
TOBIN O'CONNOR & EWING
5335 Wisconsin Avenue NW, Suite 700
Washington, D.C. 20015
Telephone: (202) 362-5900
DCTobin@TobinOConnor.com

*Counsel for Plaintiff*
*Hindu American Foundation*