# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HINDU AMERICAN FOUNDATION,<br><br>                          Plaintiff,<br><br>          v.<br><br>SUNITA VISWANATH, RAJU RAJAGOPAL,<br>RASHEED AHMED, JOHN PRABHUDOSS, AND<br>AUDREY TRUSCHKE,<br><br>                          Defendants. | Civ. No. 21-cv-01268 (APM)<br><br>**Oral Argument Requested** |

## MOTION OF DEFENDANT JOHN PRABHUDOSS TO DISMISS
## THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

Defendant John Prabhudoss, by and through his undersigned counsel and pursuant to Fed.

R. Civ. P. 12(b)(6), hereby moves for dismissal with prejudice of Count I (defamation) and

Count III (civil conspiracy) set forth in the Complaint of Plaintiff Hindu American Foundation

(HAF).

A supporting memorandum of points and authorities and a proposed order accompany

this motion. As explained in that memorandum, HAF's claims against Prabhudoss should be

dismissed for at least three independent reasons. *First*, the statements that HAF attributes to

Prabhudoss are non-actionable statements of opinion which are neither false nor capable of

defamatory meaning. *Second*, HAF has not stated facts sufficient to sustain a plausible inference

that Prabhudoss published those statements in question with actual malice. *Third*, HAF has not

carried its pleading burden of alleging either that Prabhudoss's statements were actionable as a

matter of law, or that they caused it to incur special harm. Because no repleading can repair

these deficiencies, and because HAF's civil conspiracy claims against Prabhudoss fail along with

its defamation claim, this Court should dismiss Counts I and III as pleaded against Prabhudoss

with prejudice.

## **REQUEST FOR HEARING**

Defendant John Prabhudoss respectfully requests a hearing on his motion to dismiss the

Complaint pursuant to Fed. R. Civ. P. 12(b)(6).


Dated:   New York, New York
         August 27, 2021


                                        Respectfully submitted,

                                        HOLWELL SHUSTER & GOLDBERG LLP

                                        By:  /s/ *Daniel M. Sullivan*_____
                                             Daniel M. Sullivan
                                             Andrew W. Chang
                                             425 Lexington Ave.
                                             New York, New York 10017
                                             Telephone:  (646) 837-5151

                                             *Attorneys for Defendant John Prabhudoss*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HINDU AMERICAN FOUNDATION,<br><br>                Plaintiff,<br><br>        v.<br><br>SUNITA VISWANATH, RAJU RAJAGOPAL, RASHEED AHMED, JOHN PRABHUDOSS, AND AUDREY TRUSCHKE,<br><br>                Defendants. | Civ. No. 21-cv-01268 (APM)<br><br>**Oral Argument Requested** |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION OF DEFENDANT JOHN PRABHUDOSS TO DISMISS
## THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, New York 10019
Telephone: (646) 837-5151

Dated: New York, New York
      August 27, 2021

*Attorneys for Defendant John Prabhudoss*

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION..................................................................................................................1

STATEMENT OF FACTS....................................................................................................3

I.     DEFENDANT JOHN PRABHUDOSS IS THE CHAIRMAN OF AN
UMBRELLA ORGANIZATION OF INDIAN-AMERICAN CHRISTIANS
DEDICATED TO PROMOTING RELIGIOUS PLURALISM AND LIBERTY
IN INDIA ...........................................................................................................................3

II.    AL JAZEERA PUBLISHES TWO ARTICLES QUESTIONING WHETHER
COVID-19 RELIEF FUNDS WENT TO HINDU NATIONALIST GROUPS.................4

       A.    The Al Jazeera Articles Report That Five Organizations With Ties To
Hindu Nationalists Received Covid-19 Relief Funding .........................................4

       B.    The Second Story Quotes Defendant Prabhudoss Once, In Which He
Expresses A General Opinion About The Need To Ensure That
Appropriate Organizations Receive COVID-19 Funding.......................................6

       C.    Prabhudoss Tweets About HAF.............................................................................8

III.   HAF SUES DEFENDANTS IN AN APPARENT EFFORT TO INTIMIDATE
ITS IDEOLOGICAL RIVALS ..........................................................................................8

ARGUMENT ........................................................................................................................9

I.     HAF HAS FAILED TO ADEQUATELY ALLEGE THAT PRABHUDOSS'S
STATEMENTS WERE FALSE and CAPABLE OF DEFAMATORY
MEANING.......................................................................................................................11

       A.    The Complaint Does Not Plausibly Allege That Prabhudoss's Statements
Were False ...........................................................................................................11

       B.    The Complaint Does Not Plausibly Allege That Prabhudoss's Statements
Were Capable Of Defamatory Meaning ...............................................................18

II.    HAF HAS FAILED TO ADEQUATELY
ALLEGE THAT PRABHUDOSS ACTED WITH ACTUAL MALICE........................20

       A.    HAF Is A Public Figure .......................................................................................20

       B.    HAF's Allegation That Defendants Should Have Reviewed Its Financial
Statements Before Commenting To Al Jazeera Does Not Come Close To
Pleading Actual Malice........................................................................................22

i

III.    HAF HAS FAILED TO ADEQUATELY ALLEGE EITHER SPECIAL
        DAMAGES OR DEFAMATION PER SE ................................................................. 288

IV.     HAF HAS FAILED TO ADEQUATELY ALLEGE ITS CIVIL CONSPIRACY
        CLAIM AGAINST PRABHUDOSS  ............................................................... 29

**CONCLUSION** ................................................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Acosta Orellana v. CropLife Intern.*,
   711 F. Supp. 2d 81 (D.D.C. 2010) ........................................................................ 30, 32

*Alexis v. Dist. of Columbia*,
   77 F. Supp. 2d 35 (D.D.C. 1999) ................................................................................ 16

*Alston v. Johnson*,
   208 F. Supp. 3d 293 (D.D.C. 2016) ........................................................................... 18

*Armstrong v. Thompson*,
   80 A.3d 177 (D.C. 2013) ............................................................................................ 12

*Arpaio v. Cottle*,
   2019 WL 11322515 (D.D.C. Dec. 3, 2019) ......................................................... 22, 23

*Arpaio v. Cottle*,
   404 F. Supp. 3d 80 (D.D.C. 2019) ..................................................................... 9, 20, 26

*Bauman v. Butowsky*,
   377 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................ *passim*

*Baumel v. Syrian Arab Republic*,
   667 F. Supp. 2d 39 (D.D.C. 2009) .............................................................................. 33

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 3, 10, 30, 31

*Bey v. Wash. Metro. Area Transit Auth.*,
   341 F. Supp. 3d 1 (D.D.C. 2018) ................................................................................ 29

*Brady v. Livingood*,
   360 F. Supp. 2d 94 (D.D.C. 2004) .............................................................................. 30

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) .............................................................................. 28, 29

*Buckley v. Littell*,
   539 F.2d 882 (2d Cir. 1984) ........................................................................................ 25

*Carpenter v. King*,
   792 F. Supp. 2d 29 (D.D.C. 2011) ................................................................................ 9

*Clemmons v. Academy for Educ. Development*,
    70 F. Supp. 3d 282 (D.D.C. 2014) ...................................................... 12

*Deripaska v. Assoc. Press*,
    282 F. Supp. 3d 133 (D.D.C. 2017) .......................................... *passim*

*Doe v. Lee*,
    2020 WL 759177 (D.D.C. Feb. 14, 2020) ............................................ 33

*Exes. Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
    749 A.2d 724 (D.C. 2000) ....................................................... 30

*FAA v. Cooper*,
    566 U.S. 284 (2012) .............................................................. 28

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) ........................................ 12, 18, 19

*FCC v. League of Women Voters*,
    468 U.S. 364 (1984) ............................................................... 1

*Franklin v. Pepco Holdings, Inc. (PHI)*,
    875 F. Supp. 2d 66 (D.D.C. 2012) ............................................ 28, 29

*Graves v. United States*,
    961 F. Supp. 314 (D.D.C. 1997) ................................................. 30

*Greenbelt Coop Publ'g Ass'n v. Bresler*,
    398 U.S. 6 (1970) ............................................................... 12

*Harte-Hanks Commcn's v. Connaughton*,
    491 U.S. 657 (1989) ............................................................. 23

*Hourani v. Psybersolutions LLC*,
    164 F. Supp. 3d 128 (D.D.C. 2016) ............................................. 20

*Jankovic v. Int'l Crisis Grp.*,
    822 F.3d 576 (D.C. Cir. 2016) ...................................... 21, 22, 23

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ............................................................. 10

*Letter Carriers v. Austin*,
    418 U.S. 264 (1974) ............................................................. 18

*Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*,
 838 F.2d 1287 (D.C. Cir. 1988) ................................................................... 20

*Libre by Nexus v. Buzzfeed, Inc.*,
 311 F. Supp. 3d 149 (D.D.C. 2018) ................................................. 10, 14, 17

*Lohrenz v. Donnelly*,
 350 F.3d 1272 (D.C. Cir. 2003) ............................................................ 23, 27

*MacFarlane v. Sheridan Square Press, Inc.*,
 91 F.3d 1501 (D.C. Cir. 1996) ................................................................... 23

*Mastro v. Potomac Elec. Power Co.*,
 447 F.3d 843 (D.C. Cir. 2006) ................................................................... 10

*Mattiaccio v. DHA Grp., Inc.*,
 20 F. Supp. 3d 220 (D.D.C. 2014) ............................................................. 30

*McCafferty v. Newsweek Media Grp.*,
 955 F.3d 352 (3d Cir. 2020) ........................................................................ 1

*McFarlane v. Esquire Mag.*,
 74 F.3d 1296 (D.C. Cir. 1996) ................................................................... 22

*NAACP v. USPS*,
 496 F. Supp. 3d 1 (D.D.C. 2020) ................................................................. 3

*Nader v. Dem. Nat'l Comm.*,
 567 F.3d 692 (D.C. Cir. 2009) ................................................................... 29

*New York Times Co. v. Sullivan*,
 375 U.S. 254 (1964) ..................................................................................... 1

*Ollman v. Evans*,
 750 F.2d 970 (D.C. Cir. 1984) ......................................................... 14, 19, 25

*Rosen v. Am. Israel Pub. Affairs Comm., Inc.*,
 41 A.3d 1250 (D.C. 2012) .......................................................................... 12

*Safex Foundation, Inc. v. Safeth, Ltd.*,
 2021 WL 1167266 (D.D.C. March 26, 2021) ................................................ 1

*Sickle v. Torres Adv. Enter. Solns., LLC*,
 884 F.3d 338 (D.C. Cir. 2018) ..................................................................... 9

*Sigal Const. Corp. v. Stanbury*,
    586 A.2d 1204 (D.C. 1991) ................................................................. 12

*Smith v. Clinton*,
    253 F. Supp. 3d 222 (D.D.C. 2017) ..................................................... 18

*Smith v. Clinton*,
    886 F.3d 122 (D.C. Cir. 2018) ............................................................ 28

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ..................................................................... 23, 25

*Szymkowicz v. Frisch*,
    2020 WL 4432240 (D.D.C. July 31, 2020) ...................................... 28, 29

*Tah v. Global Witness Pub'g*,
    991 F.3d 231 (D.C. Cir. 2021) ....................................................... 20, 22

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ............................................................ 23

*Teltschik v. Williams & Jensen, PLLC*,
    683 F. Supp. 2d 33 (D.D.C. 2010) ...................................................... 32

*Waldbaum v. Fairchild Pubs., Inc.*,
    627 F.2d 1287 (D.C. Cir. 1980) .......................................................... 21

*Wash. Post v. Robinson*,
    935 F.2d 282 (D.C. Cir. 1991) .............................................................. 3

*Weyrich v. New Republic, Inc.*,
    235 F.3d 617 (D.C. Cir. 2001) ..................................................... *passim*

*White v. Fraternal Order of Police*,
    909 F.2d 512 (D.C. Cir. 1990) ............................................................ 19

*Xereas v. Heiss*,
    933 F. Supp. 2d 1 (D.D.C. 2013) .................................................... 28, 29

*Zimmerman v. Al Jazeera Am., LLC*,
    246 F. Supp. 3d 257 (D.D.C. 2017) .............................................. *passim*

## Rules

Fed. R. Civ. P. 9(g) ........................................................................... 28

## INTRODUCTION

"Political discourse can be bruising." *McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 355 (3d Cir. 2020). In the "rough-and-tumble of politics," public figures are often subject to "heated rhetoric." *Id.* at 360. Nevertheless, expressions of opinion on matters of public concern lie "at the heart of First Amendment protection." *FCC v. League of Women Voters*, 468 U.S. 364, 381 (1984). And "[t]he core purpose of the constitutional protection of freedom of expression is to ensure that all opinions on important and controversial issues have a chance to be heard and considered." *Safex Foundation, Inc. v. Safeth, Ltd.*, 2021 WL 1167266, at *13 (D.D.C. March 26, 2021) (citation and internal quotation marks omitted). Accordingly, where a public statement of a political adversary comprises the basis of a plaintiff's defamation claim, that claim must be considered "against the background of a profound national commitment to the principle that debate on public issues be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 375 U.S. 254, 270 (1964); *see also McCafferty*, 955 F.3d at 355 (dismissing defamation claim arising from "derogatory opinions based only on disclosed facts").

This defamation lawsuit—brought by a public figure against its political adversaries based on public statements of their political opinions—blatantly contradicts these baseline First Amendment principles. Plaintiff Hindu American Foundation's (HAF's) claim of defamation arises out of two news articles (the "First Story" and the "Second Story"), published by Al Jazeera in April 2021. The First Story is an investigative piece, which reported that several organizational recipients of COVID-19 relief funds—including HAF—have ties to far-right Hindu supremacist and religious groups. The Second Story, in a follow-up to the first, reported that a "broad coalition of Indian American activists and United States-based civil rights organisations" had called on the U.S. Small Business Administration to investigate and explain the disbursement of COVID-19 relief funds to these organizations. Each of the Defendants

individually was quoted in the articles to give comment.  As relevant on this motion, Defendant John Prabhudoss (a leader of an umbrella group of Indian-American Christian organizations) is quoted once in the Second Story, advocating that "serious note" should be taken to ensure COVID-19 relief funding is not "misappropriated" by "Hindu supremacist groups."

HAF has not sued Al Jazeera or the author of the articles for defamation.  And, tellingly, HAF does not dispute the *facts* the articles set forth.  These facts include (1) that HAF's treasurer, Rishi Bhutada, is the son of the national vice-president of the U.S. wing of Rashtriya Swayamsevak Sangh (RSS), a known Hindu nationalist group; (2) that the Bhutada family donated a significant sum to HAF in 2018; (3) that the co-founder of HAF was formerly associated with an affiliate of RSS; and (4) that HAF defended the Indian government's passage of legislation that the United Nations described as "fundamentally discriminatory."  Instead, HAF's objection is that, in the context of an article that reported these and similar facts about the other organizations, Defendant Prabhudoss—who is a member of an organization that HAF alleges has disparaged HAF in the past—expressed his opinion that government agencies should monitor the use of COVID-19 relief funds.  This lawsuit is a transparent attempt to punish HAF's political detractors, including Prabhudoss, for criticizing it.  Worse, here Prabhudoss's comment to Al Jazeera does not even mention HAF, so the criticism is at best oblique.

This Court should dismiss HAF's claims against Prabhudoss for at least three independent reasons.  *First*, Prabhudoss's statements are non-falsifiable expressions of his subjective opinion—and even if they were falsifiable, HAF has not alleged facts sufficient to establish their falsity.  *Second*, HAF has not adequately alleged that Prabhudoss's statements were made with "actual malice," that is, with a reckless disregard for their truth.  *Third*, HAF has

2

not sufficiently alleged that Prabhudoss's statements either caused it to incur pecuniary harm, or otherwise were actionable as a matter of law.

## STATEMENT OF FACTS

The following statement of facts is based on the allegations of the Complaint, the materials referenced in the Complaint, and matters of public record, all of which may be considered in ruling on a motion to dismiss.[1]

**I.     DEFENDANT JOHN PRABHUDOSS IS THE CHAIRMAN OF AN UMBRELLA ORGANIZATION OF INDIAN-AMERICAN CHRISTIANS DEDICATED TO PROMOTING RELIGIOUS PLURALISM AND LIBERTY IN INDIA**

Defendant John Prabhudoss is the Chairman of the Federation of Indian American Christian Organizations (FIACONA), a religious advocacy group based in Washington D.C. FIACONA is an umbrella organization comprised of Protestant, Catholic, Evangelical, Pentecostal, and other independent Christian church organizations across the United States and Canada.  (*See* Ex. 1.)  Its primary mission is to advocate for religious liberty in India, with a particular focus on the ongoing persecution of Indian Christians.  (*See id.*)  In his role as Chairman of FIACONA, Prabhudoss works alongside seventeen other Directors to identify and address issues that threaten religious pluralism in India.  (*See id.*)

---

[1] All references to "Ex." are to the exhibits accompanying the Declaration of Daniel M. Sullivan dated August 27, 2021.  Prabhudoss respectfully submits that this Court should take judicial notice of those documents.  *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (holding that "the District Court was entitled to take notice of the full contents of the published articles" quoted in the complaint); *Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (judicial notice of published news articles proper); *NAACP v. USPS*, 496 F. Supp. 3d 1, 6 n.1 (D.D.C. 2020) (judicial notice of private website proper).

II.     **AL JAZEERA PUBLISHES TWO ARTICLES QUESTIONING WHETHER COVID-19 RELIEF FUNDS WENT TO HINDU NATIONALIST GROUPS**

A.     **The Al Jazeera Articles Report That Five Organizations With Ties To Hindu Nationalists Received Covid-19 Relief Funding**

This case arises out of two news articles published on AlJazeera.com, an online platform operated by the Al Jazeera Media Group, an international news organization.  Both articles are conventional reporting, containing factual statements interspersed with commentary about those facts from various sources.

The First Story, published on April 2, 2021, is titled *Hindu Right-Wing Groups in US Got $833,000 of Federal Covid Fund*.  It reports that, according to the U.S. Small Business Administration, "[f]ive organizations with ties to Hindu supremacist and religious groups have received COVID-19 relief funding" pursuant to programs enacted by the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  (Ex. 2; *see also* Compl. ¶ 24.)  The article identifies each of the five organizations; HAF is one of them.  (Ex. 2.)

The First Story contains specific factual bases to tie HAF to Rashtriya Swayamsevak Sangh (RSS).  The article reports, and HAF does not contest, that RSS is regarded as a far-right Hindu nationalist organization—that is, an organization that seeks to create an avowedly Hindu state whose policies are shaped by, and directed at preserving, the hegemony of Hindu faith and culture.  Specifically, the First Story states that Rishi Bhutada, the son of the national vice-president of "the US wing" of RSS, sits on HAF's board of directors and acts as its treasurer, and the Bhutada Family Foundation donated a significant sum to HAF in 2018.  (Ex. 2.)  It also reports that the group "vehement[ly] defen[ded]" an Indian statute that "the United Nations described as 'fundamentally discriminatory,'" and supported India's scrapping of the

constitutional status of Indian-administered Kashmir in 2019.[2]  (*Id.*)  Further, the article explains

that HAF was co-founded by a former activist affiliated with another one of the other

organizations identified in the article, Vishwa Hindu Parishad of America (VHPA).  (*Id.*)

VHPA's Indian counterpart, Vishwa Hindu Parishad (VHP), was designated as a "religious

militant organisation" by the CIA, and is openly affiliated with RSS.  (*Id.*)

Importantly, HAF does not assert that any of the above statements is false or defamatory,

nor has it brought suit against Al Jazeera or the author of the First Story.

The First Story also quotes reactions from several sources regarding the information

reported.  It contains a statement from non-party Arvind Rajagopal, a Professor of Media Studies

at New York University, who explained that "the RSS has been receiving foreign funding

through its affiliates for a long time."  (Ex. 2.)  It also quotes non-party Brian Levin, a director of

the Center for the Study of Hate and Extremism at the California State University at San

Bernadino, as saying that "Americans should be highly concerned that taxpayer-funded stimulus

relief is being used by organisations and affiliates that have disturbing ties to those allegedly

engaging in religious violence and bigotry overseas."  (*Id.*)  It further includes a statement from

non-party Christian Picciolini, the founder of Free Radicals Project, opining that "America

certainly should not be funding, inadvertently or not, extremist groups or any groups or

individuals tied to extremism or polarisation."  (*Id.*)

---

[2] In August 2019, India abrogated Section 370 of its Constitution, which had granted special
rights to Kashmir, the only Muslim-majority state in India.  (*See* Ex. 3.)  The Office of the
United Nations High Commissioner of Human Rights commented that the scrapping of these
special rights—which included "specific autonomy guarantees to respect the ethnic, linguistic,
and religious identifies of [the people of Kashmir]"—effectively meant that Kashmir would be
subject to "direct rule by the Government of New Delhi," which "could curtail the previous level
of political participation of Muslims and other minorities."  (*Id.*)

Once again, HAF has not brought suit against any these quoted sources, nor has it alleged that their statements are defamatory.

The Second Story follows up the first.  Published a week later on April 8, 2021, and titled *Call for US Probe into Hindu Right-Wing Groups Getting COVID Fund*, this follow-up story reported that "a broad coalition of Indian American activists and United States-based civil rights organizations" had called on the Small Business Administration "to take cognizance of the exposé published by Al Jazeera [in the First Story] and open a formal investigation into the matter."  (Ex. 4.)  The article goes on to quote several of the Defendants in this action individually, who each gave their opinions about the report in the First Article.  (*See id.*)  It also quotes the Coalition to Stop Genocide in India, which issued a press release commenting on the report in the First Story that HAF and the other organizations in question had received COVID-19 relief funding.  (*See id.*)

### B.    The Second Story Quotes Defendant Prabhudoss Once, In Which He Expresses A General Opinion About The Need To Ensure That Appropriate Organizations Receive COVID-19 Funding

Although other Defendants are quoted in the First Story, the First Story does not quote Prabhudoss at all.  Nor does the Complaint attribute to him any other statement quoted in the First Story.

Instead, HAF's allegations against Prabhudoss relating to the Al Jazeera articles arise solely from the Second Story.  The Second Story quotes Prabhudoss exactly once, as making the following statement: "'Government watchdog groups as well as human rights organizations need to take serious note of the misappropriation of COVID funding by Hindu supremacist groups [in] the United States.'"  (Ex. 4; *see also* Compl. ¶ 29(c).)  Prabhudoss's statement does not mention HAF.

The Complaint also appears to attribute to the Defendants, including Prabhudoss, statements by the Coalition to Stop Genocide in India which were quoted in the Second Story. Those statements are:

- "[T]he Hindu groups that received the funds have 'existential links' with the Rashtriya Swayamsevak Sangh (RSS), the 'fountainhead of Hindu supremacist ideology' and 'ideological parent' of Prime Minister Narendra Modi's Bharatiya Janata Party (BJP)." (Compl. ¶ 29(d)(i).)

- "[T]he five groups – Vishwa Hindu Parishad of America (VHPA), Ekal Vidyalaya Foundation, Infinity Foundation, Sewa International, and Hindu American Foundation (HAF) – are 'US-based front organisations for Hindutva, the supremacist ideology that is the driving force behind much of the persecution of Christians, Muslims, Dalits, and other minorities in India.'" (Compl. ¶ 29(d)(ii).)

- "There are families across America still reeling from the human and economic toll of COVID-19, while groups that seem to be essentially serving as front organizations for a violent and supremacist ideology are raking in the windfall from federal COVID funding." (Compl. ¶ 29(d)(iii).)

- "[T]he RSS has been 'directly involved in orchestrating anti-Christian and anti-Muslim pogroms and instigating terror attacks, as part of a relentless campaign to subvert India's secular moorings and turn it into a Hindu authoritarian state where minorities are relegated to the status of second class citizens.'" (Compl. ¶ 29(d)(iv).)

- "[The RSS's] members and affiliated organisations have been implicated in countless acts of massacres, ethnic cleansing, terrorism, forced-conversions and other forms of violence against religious minorities in India." (Compl. ¶ 29(d)(v).)

- "A comprehensive probe and corrective action is needed to ensure that hard-working American taxpayers' money is not funneled towards sponsoring hate, persecution and the slow genocide of minorities and marginalised communities in India." (Compl. ¶ 29(d)(vi).)

However, the Complaint does not detail Prabhudoss's role, if any, in the Coalition's activities generally or in the development, specifically, of those statements of the Coalition quoted in the Second Story. Instead, the Complaint merely alleges—without any factual foundation—that each of the Defendants, including Prabhudoss, "caused" the Coalition's statements "to be attributed to the Coalition, of which their respective organizations are members

that have a controlling interest [and] had approval of the statements before publication."
(Compl. ¶ 28.)

### C.     Prabhudoss Tweets About HAF

Finally, HAF's Complaint cites one other statement made by Prabhudoss.  It quotes a
tweet made on April 21, 2021, which reads in its entirety: "Recently realized that the
@HinduAmerican just confirmed and acknowledged through its own lawyers that they are a
Hindu supremacist organization in the US operating as a charity. Wow! Who would have
thought that!!"  (Ex. 5; *see also* Compl. ¶ 34(a).)

No further context is alleged in the Complaint that would connect this tweet to the Al
Jazeera articles or any specific factual assertion.  This tweet was posted shortly after HAF issued
cease-and-desist letters to Defendants after the publication of the First and Second Stories
demanding that they (i) "[p]ublish a full, fair, and conspicuous retraction, correction, and
apology on your website(s) and social media account(s)," and (ii) "[c]ease and desist from
publishing further false and defamatory statements about HAF."  (Ex. 6.)

### III.    HAF SUES DEFENDANTS IN AN APPARENT EFFORT TO INTIMIDATE ITS IDEOLOGICAL RIVALS

On May 7, 2021, HAF filed the Complaint, naming as defendants Prabhudoss and four
other individuals quoted in the Al Jazeera articles: Sunita Viswanath and Raju Rajagopal, co-
founders of Hindus for Human Rights (HfFR); Rasheed Ahmed, Executive Director of Indian
American Muslim Council (IAMC); and Audrey Truschke, a professor specializing in South
Asian studies at Rutgers University in New Jersey.  It brought three causes of action: (1) a claim
for defamation against Prabhudoss and the other Defendants other than Professor Truschke; (2) a
claim for defamation against Professor Truschke only; and (3) a claim for civil conspiracy
against all Defendants.

The thrust of the Complaint is that Defendants have defamed HAF through the statements they made in the First and Second Stories—or the statements made by the Coalition, assuming those statements can be attributed to Defendants.  HAF alleges that Defendants "coordinated" their supposed "attacks on HAF," specifically intending "to damage" HAF by "portray[ing] HAF as contributing to and/or perpetuating heinous and despicable crimes against humanity." (Compl. ¶ 35.)  According to HAF, its "financials and other documents," which "directly contradict the Defamatory Statements and establish that no funds were provided by HAF to any alleged Indian nationalist or supremacist organizations," are "publicly available and readily accessible."  (Compl. ¶ 37.)  HAF therefore asserts that those financial statements mean "there were obvious reasons to doubt the accuracy of the Defamatory Statements" and that "Defendants had an obligation to verify the truth, which they failed to do."  (Compl. ¶ 40.)  HAF does not identify or attach any particular "financial statement," allege that Prabhudoss or any other defendant knew the contents of HAF's "financials," or explain how those financials demonstrate that each or any of the statements made by Prabhudoss or any other defendant was false.

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 83 (D.D.C. 2019) (citing *Sickle v. Torres Adv. Enter. Solns., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018)).  A court adjudicating a Rule 12(b)(6) motion must first "accept as true all of the factual allegations contained in the complaint and grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Carpenter v. King*, 792 F. Supp. 2d 29, 33 (D.D.C. 2011) (citations and internal quotation marks omitted). The court need not, however, "accept a plaintiff's legal conclusions or the inferences he draws if those inferences are unsupported by the alleged facts," nor must the court "accept legal conclusions cast as factual allegations."  *Id.* at 33 (citation and internal quotation marks omitted).

The court must then determine whether, based on the facts properly alleged, the complaint states

a claim to relief that is "plausible on its face," suggesting a "right to relief above the speculative

level." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Unless a

plaintiff is able to nudge his or her claim across the line from conceivable to plausible, the

complaint must be dismissed." *Deripaska v. Assoc. Press*, 282 F. Supp. 3d 133, 140 (D.D.C.

2017) (citation and internal quotation marks omitted).

      To state a claim for defamation against Prabhudoss under D.C. law, HAF must allege

facts sufficient to show that Prabhudoss (1) "made a false and defamatory statement concerning

the plaintiff"; (2) "published the statement with privilege to a third party"; (3) made the alleged

statement with fault amounting to "actual malice"; and (4) that the statement either "caused

special harm, or was actionable as a matter of law irrespective of special harm."[3] *Libre by Nexus*

*v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 154 (D.D.C. 2018) (citing *Deripaska*, 282 F. Supp. 3d at

140–41).

      HAF has not properly alleged several of these elements, and its defamation claim against

Prabhudoss (Count I) must therefore be dismissed. And because HAF has failed to state an

underlying claim for defamation—and because HAF has not pleaded any facts to suggest any

conspiracy among the Defendants exists—this Court should also dismiss HAF's civil conspiracy

claim (Count III).

---

[3] D.C. defamation law applies here. *See Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001). Federal courts exercising diversity jurisdiction apply state choice-of-law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), and D.C. choice-of-law rules provide that defamation claims should be governed by the state law of the jurisdiction "where the plaintiff suffered [putative] injury by reason of his loss of reputation," *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857 (D.C. Cir. 2006). Because HAF is domiciled in the District of Columbia (Compl. ¶ 18), headquartered in the District of Columbia (Compl. ¶ 7), and appears generally to operate in the District of Columbia, the District of Columbia is the jurisdiction where HAF would have suffered its alleged reputational injury.

I.   **HAF HAS FAILED TO ADEQUATELY ALLEGE THAT PRABHUDOSS'S STATEMENTS WERE FALSE AND CAPABLE OF DEFAMATORY MEANING**

Falsity and defamatory meaning are "distinct elements of the tort of defamation," and a plaintiff must adequately plead both elements to survive a motion to dismiss. *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 273 (D.D.C. 2017).  HAF has not alleged facts to support either element.  Moreover, as shown below, no repleading can repair these deficiencies; Prabhudoss therefore asks that the defamation claim against him be dismissed with prejudice.

A.   **The Complaint Does Not Plausibly Allege That Prabhudoss's Statements Were False**

The statements attributed to Prabhudoss in the Complaint are statements of opinion which do not—and cannot—meet the standard for falsity.  All Prabhudoss did was to advocate for government investigation of the distribution of funds to organizations whose ideology he strongly opposes.  Such political speech cannot be the basis for a defamation claim.

"For a statement to be actionable under the First Amendment, it must at a minimum express or imply a *verifiably* false fact about [the plaintiff]." *Weyrich*, 235 F.3d at 624 (emphasis added).  "Expressions of a subjective view, an interpretation, a theory, conjecture, or surmise are not provably false and thus cannot undergird a claim of defamation." *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 10–11 (D.D.C. 2019).  "In deciding whether a reasonable factfinder could conclude that a statement expressed or implied a verifiably false fact [about the plaintiff], the court must consider the statement in context." *Weyrich*, 235 F.3d at 624.

When a statement, read in context, is reasonably understood to communicate a subjective value proposition, it "lacks provability" and thus cannot be considered false for purposes of a defamation claim. *Bauman*, 377 F. Supp. 3d at 11.  Thus, this Court has frequently dismissed defamation claims for failure to allege falsity when the underlying statements are general, value-laden criticisms of the plaintiff's character or behavior, or where the statements are assertions

11

that a report merits investigation.  *See, e.g.*, *Armstrong v. Thompson*, 80 A.3d 177, 187 (D.C.

2013) (statement that the plaintiff engaged in "serious integrity violations" deemed unverifiable

subjective opinion); *Rosen v. Am. Israel Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1260 (D.C.

2012) (statement that plaintiff's conduct "did not comport with the standards that AIPAC expects

of its employees" deemed unverifiable subjective opinion); *Deripaska*, 282 F. Supp. 3d at 147

(statement that plaintiff's business deals were "worth investigating" deemed unverifiable

subjective opinion); *Clemmons v. Academy for Educ. Development*, 70 F. Supp. 3d 282, 309

(D.D.C. 2014) (statement that plaintiff's leadership resulted in "management problems" deemed

unverifiable subjective opinion).

     Similarly, statements that amount to "imaginative expression or rhetorical hyperbole"

cannot be libelous where those statements are used "not to implicate underlying acts but merely

in a loose, figurative sense to demonstrate strong disagreement with another."  *Bauman*, 377 F.

Supp. 3d at 11 (citing *Sigal Const. Corp. v. Stanbury*, 586 A.2d 1204, 1210–11 (D.C. 1991)).

For example, the Supreme Court found in *Greenbelt Coop Publ'g Ass'n v. Bresler*, 398 U.S. 6,

13–14 (1970), that the word "blackmail," when used figuratively to describe the plaintiff's

unreasonableness in negotiations, was not actionably false even though the plaintiff had never

engaged in actual blackmail.  Similarly, in *Farah v. Esquire Magazine*, 736 F.3d 528, 531 (D.C.

Cir. 2013), Esquire published a satirical blog post stating that the plaintiff had "announced plans

to recall and pulp" his book.  Although the plaintiff had no such plans, the D.C. Circuit found

that the blog post was not false within the meaning of defamation law, explaining that a

"reasonable reader could not understand the [statement] to be conveying real news" given the

magazine's well-documented history of criticizing the author of the book.  *Id.* at 538 (internal

quotation marks omitted).  "Context is crucial, and it can turn what, out of context, appears to be

a statement of fact into rhetorical hyperbole, which is not actionable." *Bauman*, 377 F. Supp. 3d at 13 (citation and internal alteration marks omitted). These principles doom HAF's complaint.

Prabhudoss's Quotation in the Second Story. Prabhudoss's statement in the Second Story, *see* Appendix A, is not actionably false for three reasons.

*First*, Prabhudoss's statement in the Second Story is not actionable because it is a subjective opinion. The operative language in the quotation discusses what government watchdog groups "need to" do, reflecting Prabhudoss's subjective view about the appropriate monitoring priorities of unspecified government agencies. This proposition cannot be falsified as a matter of fact—a party could not "disprove" this statement by making a countervailing assertion that government watchdog groups do not "need to" monitor the allocation of COVID-19 relief funds. Indeed, Prabhudoss's statement is analytically identical to the statement this Court dismissed as unprovable in *Bauman*: an opinion that the plaintiff's involvement in a certain matter "deserved serious scrutiny." 377 F. Supp. 3d at 11; *see also Deripaska*, 282 F. Supp. 3d at 148 (opinion that plaintiff's business deals were "worth investigating" dismissed as unprovable).

Moreover, Prabhudoss's opinion is based on disclosed facts. Where the factual basis for a subjective expression of belief is established in the publication itself, the D.C. Circuit has stated that "the reader understands that such supported opinions represent the writer's *interpretation* of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation." *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994) (emphasis added). Here, as discussed *supra* pp. 4-5, the First and Second Stories set forth numerous factual bases to suggest that COVID-19 relief funds were being disbursed to certain organizations with ties to Hindu

nationalist organizations, and Prabhudoss's statements of opinion based on those disclosed facts are non-actionable expressions of opinion.

*Second*, HAF has not adequately alleged that Prabhudoss's statement is actionable as an opinion implying a false fact.  Such a claim would fail at the threshold: a defamation plaintiff challenging a statement of opinion must at the very least identify what "verifiably false fact" the opinion putatively implies.  *Weyrich*, 235 F.3d at 624.  Here, the Complaint merely recites a laundry list of all the Defendants' statements, and without explanation asserts that all of those statements are false—it is entirely silent on what "fact" Prabhudoss falsely asserted in his statement in the Second Story.

Whatever theory of falsity HAF has in mind, there is no conceivable interpretation of Prabhudoss's statement that HAF has plausibly alleged is false.  For example, if Prabhudoss's statement in the Second Story were construed as a factual assertion that HAF had ideological ties to Hindu supremacist groups, HAF has not alleged why that would be false.  The First Story sets forth numerous factual bases for concluding that HAF has ties to RSS, which HAF glaringly fails to contest.  *Compare supra* pp. 4–5, *with Libre by Nexus*, 311 F. Supp. 3d at 157 n.5 (noting that, "if Plaintiff failed to challenge" an underlying fact, "then that failure would serve as an additional reason to doubt the plausibility of its allegations with respect to falsity").  In any event, as a matter of law the labeling of an organization—whether HAF or RSS—as a "far-right Hindu nationalist" organization is itself a nonactionable opinion.  Describing an organization or a person's ideology in general terms, even heavily-loaded ones, is not verifiably false.  *See, e.g.*, *Ollman v. Evans*, 750 F.2d 970, 987–88 (D.C. Cir. 1984) (statement that plaintiff was "an outspoken proponent of political Marxism" not actionable); *Weyrich*, 235 F.3d at 625–66

(article's descriptions of "political extremism and personal extremism" to highlight plaintiff's "political dogmatism" not actionable).

Moreover, the only factual allegations HAF proffers in support of its claim of falsity is that some set of its unidentified "financial statements," such as its Form 990s, supposedly prove that "no funds were provided by HAF to any alleged Indian nationalist or supremacist organizations."[4]  (*See* Compl. ¶¶ 37–40.)  Yet HAF does not attach these documents, identify the relevant financial statements, describe their import, or explain how one could tell from its financial statements whether a given donee was or was not an "alleged Indian nationalist or supremacist organization."  And Prabhudoss never asserted that HAF had provided funds to such an organization.

Alternatively, if Prabhudoss's statement in the Second Story were construed as a factual assertion that COVID-19 relief funds were being improperly disbursed to Hindu supremacist groups writ large, the Complaint still would not plausibly allege falsity.  Nowhere does HAF dispute that *some* groups affiliated with RSS—regardless whether that includes HAF, as opposed to the other organizations mentioned in the First Story—received COVID-19 relief funds. Again, HAF fails to explain how its individual financial disclosures could disprove a broad statement that Hindu supremacist groups in general, including those other than HAF, received COVID-19 relief funds.

Or perhaps HAF intends to focus on the word "misappropriation" in Prabhudoss's statement.  But Prabhudoss's use of that word cannot plausibly be construed as anything more than a generalized expression of disapproval for the nature of the organizational recipients

---

[4] Tax-exempt nonprofit organizations are required to file "Form 990s" by the U.S. Internal Revenue Service.  (*See* Compl. ¶ 38.)  These forms generally reflect an organization's internal structure and yearly financials.

identified in the First Story.  HAF vaguely suggests Prabhudoss's remark implies a factual assertion that HAF was embezzling COVID-19 relief funds and sending them to Hindu supremacist groups.  (*See* Compl. ¶ 35 ("The Defamatory Statements falsely claim that HAF not only serves as a 'front' for their 'parent' alleged Hindu nationalist and supremacist organizations, but that it 'misappropriate[d]' and 'funneled' U.S. Government COVID relief funds to those organizations.").)  This hinted-at allegation cannot survive scrutiny.

As the D.C. Circuit has recognized, context frequently indicates that words should not be given a technical or specific meaning.  *See Weyrich*, 235 F.3d at 623–65 (description of plaintiff as "paranoid" not to be given its clinical meaning, but rather its "popular meaning" as "crazy" or "nutty").  Here, in context, Prabhudoss's statement merely reflects his opinion that the receipt of COVID-19 relief funds by organizations like HAF constitutes a "misappropriation" of those funds because those funds should not go to advocacy groups whose political ideology he believes deeply threatens the underpinnings of democratic society.  Prabhudoss's belief that certain organizations ought not to receive COVID-19 relief funds is not actionable; rather, it presents the same type of value-laden opinion statement that *Bauman* and *Deripaska* held was protected from defamation liability.  *See supra* p. 13.

Thus, irrespective of how Prabhudoss's statement in the Second Story is interpreted—and regardless of how charitably HAF's Complaint is read—HAF has not sufficiently pleaded facts sufficient to infer that Prabhudoss's statement implied any false fact.

*Third,* Prabhudoss's statement is not even directed at HAF specifically.  "Defamation is personal; a plaintiff who alleges defamation must show that the allegedly defamatory statement was published 'of and concerning him.'"  *Alexis v. Dist. of Columbia*, 77 F. Supp. 2d 35, 40 (D.D.C. 1999) (citation omitted).  Here, Prabhudoss made only a general assertion that

government watchdog groups "need to take serious note of the misappropriation of COVID funding by Hindu supremacist groups [in] the United States." (Ex. 4.) Prabhudoss does not in his statement mention HAF by name or by implication. Although the Second Story separately characterizes HAF as a far-right group, there are no allegations that Prabhudoss had any control over the article, or that the statements concerning HAF could be otherwise attributed to Prabhudoss personally. *Cf. Zimmerman*, 246 F. Supp. 3d at 287 (defendant must be "involved in the editorial preparation" of the putatively defamatory statement for it to be attributed to him). Whatever strategic reason HAF may have had for deciding not to sue Al Jazeera or the author of the articles, it cannot justify imputing to Prabhudoss an assertion he did not make or adopt.

Prabhudoss's Tweet. Prabhudoss's separate, satirical tweet that HAF "confirmed and acknowledged through its lawyers that they are a Hindu supremacist organization in the US operating as a charity," *see* Appendix A, likewise is not actionably false. A plaintiff may not read an "imaginative expression or rhetorical hyperbole" literally to manufacture an actionable statement out of a statement of opinion. *Bauman*, 377 F. Supp. 3d at 11 (internal quotation marks omitted). Here, no reasonable reader could take Prabhudoss's tweet as a factual assertion that HAF issued a public statement through counsel admitting it is a Hindu supremacist organization.

Rather, read in context, Prabhudoss's hyperbolic statement communicates his subjective belief that some unidentified actions taken by HAF's lawyers resembled what a Hindu supremacist organization would do.[5] This is particularly the case given HAF's continued

---

[5] Any suggestion by HAF that Prabhudoss's tweet improperly characterized its lawyers' actions is a reason to dismiss HAF's claims arising from the tweet. HAF's failure to attach any document explaining what Prabhudoss was referring to in his tweet "leaves the factual predicate for Plaintiff's defamation claim wanting here." *Libre by Nexus*, 311 F. Supp. 3d at 158. HAF cannot simultaneously allege that Prabhudoss mischaracterized its actions and refuse to state

position that it is not a Hindu supremacist organization; as in *Farah*, "it is inconceivable that [the plaintiff] would reverse course so abruptly."  736 F.3d at 538–39 (no actionable falsity where a reader would have to "suspend virtually all that he or she knew to be true about [the plaintiff's views] . . . in order to conclude the story was reporting true facts").   In addition, the tail of Prabhudoss's tweet—"Wow! Who would have thought that!!"—presents exactly the type of "loose or hyperbolic" language that suggests that the statement was made in a "loose, figurative sense" and cannot reasonably be read as a factual assertion. *Letter Carriers v. Austin*, 418 U.S. 264, 284–86 (1974).

### B.      The Complaint Does Not Plausibly Allege That Prabhudoss's Statements Were Capable Of Defamatory Meaning

HAF has also failed to allege facts sufficient to state a claim that Prabhudoss's statements were capable of defamatory meaning.  To be capable of defamatory meaning, a statement must "injure[] the plaintiff in his trade, profession, or community standing."  *Bauman*, 377 F. Supp. 3d at 15.  That a statement might be considered offensive does not render it defamatory; instead, a statement must go beyond "mere offensiveness" to "make the plaintiff appear, odious, infamous, or ridiculous" in order to be capable of defamatory meaning.  *Id.*

A statement is not capable of defamatory meaning if it "merely conveys materially true facts from which a defamatory inference can reasonably be drawn."  *Smith v. Clinton*, 253 F. Supp. 3d 222, 241 (D.D.C. 2017).  Instead, courts will find such a statement to be actionable as "defamation by implication" only if the communication, "by the particular manner or language in

---

what those actions were; although the timing of the tweet suggests a relationship to HAF's cease-and-desist letters, an opposing party's speculation is not a substitute for a well-pleaded complaint.  "A legally deficient claim ought not to survive a motion to dismiss simply because the plaintiff did not attach a dispositive document on which it relies."  *Id.* (citing *Alston v. Johnson*, 208 F. Supp. 3d 293, 298 (D.D.C. 2016)).

which the true facts are conveyed, supplies *additional, affirmative* evidence suggesting that the defendant *intends* or *endorses* the defamatory inference." *Id.* (citing *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)) (emphasis in original).  Evidence of a defendant's intent to convey a defamatory inference is limited to the "affirmative conduct of the author or broadcaster." *White*, 909 F.2d at 520.

Neither of Prabhudoss's statements are capable of defamatory meaning against HAF.  As discussed in Part I.A, *supra*, Prabhudoss's statement in the Second Story—which does not mention HAF—does not accuse HAF of anything, let alone anything "odious, infamous, or ridiculous."  HAF also has not alleged anything to suggest that the "particular manner or language" of Prabhudoss's statement supplies any "additional, affirmative evidence" that Prabhudoss intended for his statement to apply to HAF specifically, or otherwise generate a defamatory inference concerning HAF.  *Smith*, 253 F. Supp. 3d at 240–41.

Prabhudoss's tweet is similarly not capable of defamatory meaning.  As discussed *supra*, Prabhudoss's tweet is a rhetorical hyperbole that would not be understood by a reasonable reader as a factual assertion that HAF's counsel had actually described HAF as a Hindu supremacist organization operating as a charity.  *See Farah*, 736 F.3d at 539 ("Because the reasonable reader could not understand [the statement] to be conveying 'real news'—that is, actual facts about [the plaintiff]—the [statement] was not actionable defamation.").  Moreover, even if Prabhudoss's tweet signified a connection between HAF and the Indian far-right, Prabhudoss's characterization of HAF's political orientation is plainly protected under *Ollman* as a "loosely definable, variously interpretable statement . . . made inextricably in the contest of political, social or philosophical debate . . . ."  750 F.2d at 987 (citation and internal quotation marks omitted).  None of Prabhudoss's statements directly accuse HAF of committing certain acts, or

formally joining certain groups—instead, they are at most subjective statements characterizing HAF's ideology.

## II.     HAF HAS FAILED TO ADEQUATELY ALLEGE THAT PRABHUDOSS ACTED WITH ACTUAL MALICE

HAF's claims against Prabhudoss offend the First Amendment's core protections for political speech for another reason.  Where, as here, the plaintiff in a defamation action is a public figure, it must plead facts sufficient to support an inference that the defendant published the putatively defamatory statement with "knowledge that it was false, or with reckless disregard of whether it was false or not."  *Weyrich*, 235 F.3d at 628 (citing *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1292–93 (D.C. Cir. 1988)).  Such a requirement "reflects the cornerstone First Amendment principle that speech relating to public officials and public figures, as distinct from private persons, enjoys greater protection."  *Tah v. Global Witness Pub'g*, 991 F.3d 231, 240 (D.C. Cir. 2021) (citation and internal quotation marks omitted).  Here, HAF does not come close to pleading that Prabhudoss made any statement with the requisite actual malice. Courts routinely dismiss defamation claims in such situations.  *See, e.g.*, *Arpaio*, 404 F. Supp. 3d at 84; *Deripaska*, 282 F. Supp. 3d at 149; *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 145 (D.D.C. 2016).  This Court should do the same.

### A.     HAF Is A Public Figure

As a threshold matter, there can be no doubt that HAF is a public figure.  Under the D.C. Circuit's precedent, corporations like HAF are public figures in the circumstances of this case. *See* Section IV.A.1. of the Memorandum of Points and Authorities in Support of Motion to Dismiss the Complaint by Defendants Sunita Viswanath and Raju Rajagopal ("Viswanath & Rajagopal MTD").  In any event, HAF is a "limited purpose" public figure under the three-part test that determines that question: "First, the court must identify the relevant controversy and

determine whether it is a public controversy.  Second, the plaintiff must have played a significant role in that controversy.  Third, the defamatory statement must be germane to the plaintiff's participation in the controversy."  *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 585 (D.C. Cir. 2016) (citations and internal quotation marks omitted).

The disbursement of COVID-19 funds was (and remains) a public controversy.  "A controversy is a public one when a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution."  *Id.*; *see also Waldbaum v. Fairchild Pubs., Inc.*, 627 F.2d 1287, 1296–98 (D.C. Cir. 1980)).  Here, Prabhudoss (and the other defendants) was speaking about the disbursement of COVID-19 relief funds to groups whose political views may not align with U.S. policy objectives.  This controversy plainly involves issues that would impact more than just HAF and the defendants, as it extends to both (i) the internationally salient issue of Indian nationalism and the Indian government's "alleged treatment of Muslims and other religious minorities" (Compl. ¶ 4), and (ii) to the issue of the proper distribution of federal funds tied to a public health emergency that has dominated public discourse for a year and a half.

HAF played a significant role in the controversy.  HAF is a public-facing organization.  It regularly engages in public policy debates, including debates about Indian politics and the subject of Hindu nationalism.  Indeed, the Complaint itself characterizes HAF's organizational mission as working with "policymaker and key stakeholders to champion issues of concern to Hindu Americans."  (Compl. ¶ 19.)  And of course HAF does not contest that, as a public policy advocacy and lobbying organization, it applied for, and received, COVID-19 relief funds.  Therefore, HAF is, by definition, a significant player in a controversy over whether certain advocacy groups holding certain viewpoints should receive COVID-19 relief funds disbursed by

21

the federal government, as well as the broader debate over religious politics in India.  At bottom, HAF (like the other organizations identified in the First Story) *is* the controversy.

    <u>Prabhudoss's statements were germane to HAF's role in the controversy.</u>  The germaneness requirement "ensures that publishers cannot use an individual's prominence in one area of public life to justify publishing negligent falsehoods about an unrelated aspect of the plaintiff's life." *Jankovic*, 822 F.3d at 589.  Here, however, Prabhudoss's statements regarding the disbursement of COVID-19 relief funds to Hindu nationalist groups are directly germane to HAF in its relevant capacities: a recipient of COVID-19 relief funds and an outspoken public advocate on Indian politics.  Even if HAF disagrees with the conclusion that it is a far-right group, the germaneness inquiry is "not the place to debate whether the statement is true or even well-supported." *Id.*  Indeed, HAF's own Complaint effectively concedes the germaneness of the statements to its role in the controversy.  (*See* Compl. ¶ 35.)

    Thus, because it is a public figure, HAF cannot proceed against Prabhudoss unless it has sufficiently alleged that Prabhudoss published the statements in question with actual malice.

### B.    HAF's Allegation That Defendants Should Have Reviewed Its Financial Statements Before Commenting To Al Jazeera Does Not Come Close To Pleading Actual Malice

    "The actual malice standard is famously 'daunting.'" *Tah*, 991 F.3d at 240 (citing *McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1308 (D.C. Cir. 1996)).  This is because actual malice concerns the particular defendant's subjective state of mind—it is not enough to plead that a reasonable person in the defendant's shoes "should have known better." *Zimmerman*, 246 F. Supp. 3d at 281.  Nor does it suffice to allege that a defendant had questionable motives, such as a "political or ideological animus toward the plaintiff." *Arpaio v. Cottle*, 2019 WL 11322515, at *2 (D.D.C. Dec. 3, 2019); *see also Jankovic*, 822 F.3d at 596 ("personal desire to harm the subject of the story" insufficient).  Instead, a public-figure plaintiff must plead specific facts

capable of sustaining a plausible inference that the defendant "*in fact* harbored subjective doubt" as to the truth of the statement asserted.  *Jankovic*, 822 F.3d at 589–90 (emphasis added) (citing *MacFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (D.C. Cir. 1996)).  Because the plaintiff must plausibly plead facts showing the defendant's *subjective intent* in making a given statement, actual malice poses a "high bar that public-figure plaintiffs rarely surmount." *Zimmerman*, 246 F. Supp. 3d at 280.

Thus, to plead actual malice, courts typically require that the plaintiff allege facts suggesting "evidence of fabrication, [or] evidence that the story was so inherently improbable that only a reckless man would have put it in circulation . . . ."  *Deripaska*, 282 F. Supp. 3d at 143–44 (quoting *Tavoulareas v. Piro*, 817 F.2d 762, 788–89 (D.C. Cir. 1987)).  And the law has long been clear that actual malice is not pled by asserting that a defendant failed to conduct an investigation into the truth of his claims.  *See Harte-Hanks Commcn's v. Connaughton*, 491 U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing . . . is not sufficient to establish reckless disregard."); *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968) ("Failure to investigate does not in itself establish bad faith [for purposes of the actual malice test]."); *Arpaio*, 2019 WL 11322515, at *1 ("A failure to investigate will not alone support the required degree of recklessness . . . ." (citation and internal quotation marks omitted)).

While courts have recognized a limited exception in situations where a publisher has an "obvious reason to doubt" the truth of his statement—e.g., where the statement is based entirely on an "unverified anonymous telephone call," *St. Amant*, 390 U.S. at 732—this exception is demanding.  For example, in *Lohrenz v. Donnelly*, the D.C. Circuit held it was not enough that the complaint alleged the defendant had "act[ed] on the basis of a biased source and incomplete information."  350 F.3d 1272, 1284 (D.C. Cir. 2003).  No court has held, as HAF seems to think,

that the law imposes an affirmative duty to investigate—before one may comment on a public issue—whenever the speaker could have identified some source containing facts that conceivably might undercut the statement.

Here, HAF's threadbare allegations are nowhere near enough.  As an initial matter, the Complaint does not—and could not—assert that Prabhudoss subjectively doubted the truth of his statements.  This is hardly surprising, since they were statements of opinion which did not assert or imply any facts as truth.  *See supra* Section I.A.

Nor has HAF alleged sufficient circumstantial facts to show actual malice.  In fact, the only basis HAF proffers to allege actual malice is the very same basis HAF believes supports falsity—that its publicly available financial statements, such as Form 990s, demonstrate that it did not send money to any "alleged Indian nationalist or supremacist organizations." (Compl. ¶ 37.)  According to the Complaint, these financial statements gave the Defendants "obvious reasons to doubt the accuracy" of their remarks.  (Compl. ¶ 40.)  HAF's theory of actual malice has several, insurmountable flaws.

*First*, HAF does not allege that Prabhudoss himself was actually aware of HAF's financial statements or what they contain.  This means that the information in those financials cannot have constituted "obvious reasons" for Prabhudoss to "doubt the accuracy" of his assertions—HAF alleges no reason to believe the information was even *known* by Prabhudoss.  Instead, HAF relies on its allegation that the documents are publicly available.  (*See* Compl. ¶ 39 ("HAF's Form 990s are available on its website and on GuideStar.org, a watchdog platform regarding charities.").)  In effect, therefore, HAF's theory is that Prabhudoss failed to do

sufficient due diligence before speaking.  But *St. Amant*, *Harte-Hanks*, and cases following those decisions squarely foreclose such a "failure to investigate" theory.[6]  *See supra* pp. 22–23.

*Second*, HAF does not adequately explain how its Form 990s or other financials would even disprove the statements that Prabhudoss made.  As a threshold matter, as discussed in Section I.A, *supra*, it remains entirely unclear what standard HAF would apply to determine whether a donor or donee in its financial disclosures qualifies as an "Indian nationalist or supremacist organization[]" in the first place.  *See Ollman*, 750 F.2d at 987 (politically subjective term "fascist" not subject to objective meaning) (citing *Buckley v. Littell*, 539 F.2d 882, 893 (2d Cir. 1984)).  Without such a standard, it is difficult to accept HAF's assertion that its financial disclosures were so conclusive on the question of its connections to Hindu far-right groups that to publish a statement to the contrary would be presumptively malicious.

More importantly, whatever the financials might show about groups HAF chooses to give money to, such information would not falsify Prabhudoss's statements.  Prabhudoss did not assert that HAF made donations to foreign Hindu nationalist groups; he said that "[g]overnment watchdog groups" and others "need to take serious note of the misappropriation of COVID funding by Hindu supremacist groups [in] the United States."  (Compl. ¶ 29(c); *see also* Compl. ¶ 34(a) (quoting subsequent tweet).)  In other words, whoever Prabhudoss meant by "Hindu supremacist groups in the United States," he said nothing about what they did with the COVID-19 funds they received.  Nor, for the reasons discussed in Section I.A, *supra*, can HAF make hay by taking out of context Prabhudoss's use of the word "misappropriation."  The upshot of all of

---

[6] Indeed, HAF's "failure to investigate" theory would collapse the actual malice and falsity inquiries into one.  HAF's approach would permit any defamation plaintiff to survive dismissal on actual malice grounds by simply (i) pointing to a fact, (ii) alleging that it contradicts the defendant's statement, and then (iii) claiming that the defendant should have investigated it.

this is that, even if Prabhudoss knew about the financial documents and even if they did demonstrate what HAF claims they do, they still would neither furnish "obvious reasons to doubt the accuracy" of Prabhudoss's statements nor render those statements "so inherently improbable that only a reckless man would have put [the statements] in circulation." *Deripaska*, 282 F. Supp. 3d at 143–44.

*Finally*, perhaps HAF means that the financial statements render it irresponsible for Prabhudoss to assert—if indeed he did assert—that HAF in fact has ties to Hindu supremacist organizations. But this version of HAF's theory of actual malice also fails. Again, assuming Prabhudoss knew the contents of the financial documents, HAF fails to explain how the alleged fact that it did not donate money to Hindu supremacist groups is conclusive as to whether it has ideological ties to such groups. This is especially the case given the uncontradicted facts laid out in the First Story explaining HAF's significant and open ties to RSS. *See Arpaio*, 404 F. Supp. 3d at 86 n.1 ("Contributing to the deficiency of the pleading [of actual malice] is that Plaintiff offers no factual allegations to plausibly support the falsity of any of the Article's claimed defamatory statements."); *cf. also Deripaska*, 282 F. Supp. 3d at 142 (failure to dispute facts deemed "concession"). At the time Prabhudoss made the statements now challenged, it was public information that HAF's treasurer, Rishi Bhutada, was the son of Ramesh Bhutada, the national vice-president of the "US Wing" of RSS. (Ex. 2.) It was also public information that HAF's co-founder had ties to VHPA, the American affiliate of what the CIA deemed a "religious militant organization." (*Id.*) These ties are not merely optical or familial—they are financial.

For example, HAF does not contest that it was public information that HAF received upwards of $25,000 from the Bhutada family foundation in 2018 alone.  (*Id.*)[7]

And that is not all.  Not only were all of these facts recounted in the First Story, but the *entire purpose* of the Second Story—where the quote from Prabhudoss appears—was to report the reactions of commentators like Prabhudoss and the other defendants to the facts contained in the First Story.  Thus, this is not a case against a newspaper or journalist, where the plaintiff asserts that the publisher failed to responsibly investigate and report accurate information.  Al Jazeera is not a defendant here.  Instead, HAF does not like what Prabhudoss and the other defendants had to say about the facts reported by Al Jazeera.  By definition, then, Prabhudoss cannot have acted with actual malice because he was "rely[ing] on an informed source"—Al Jazeera, a well-reputed news organization—and HAF alleges "no 'obvious reason to doubt' that source." *Deripaska*, 282 F. Supp. 3d at 144 (citing *Lohrenz*, 350 F.3d at 1285).  Again, *HAF* does not even contest the facts Al Jazeera reported.

In short, HAF has not plausibly alleged that the financial statements render it so obvious that HAF had no ties to Hindu nationalist organizations that to say it did was reckless.  In the circumstances here, given the facts of the First Story that HAF does not contest, HAF could not plausibly make such an allegation.  Its claims therefore fail as a matter of law and should be dismissed with prejudice for this reason as well.

---

[7] Section B of the Statement of Facts of the Viswanath & Rajagopal MTD sets forth additional material in the public record that make it evident that any assertion that HAF is tied to Hindu supremacist organizations amply supported.

III.   **HAF HAS FAILED TO ADEQUATELY**
       **ALLEGE EITHER SPECIAL DAMAGES OR DEFAMATION PER SE**

Special Damages.  To meet the special damages requirement, a defamation plaintiff must

allege "actual pecuniary loss, which must be specifically pleaded."  *Szymkowicz v. Frisch*, 2020

WL 4432240, at *6 n.8 (D.D.C. July 31, 2020) (quoting *FAA v. Cooper*, 566 U.S. 284, 295–96

(2012)).  In other words, a plaintiff alleging special damages must "allege actual damages with

particularity," which typically involves identifying "particular [sources of income] whose

business has been lost."  *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002) (citation and

internal quotation marks omitted).  A plaintiff's "boilerplate recitation, unaccompanied by

factual detail, that [the plaintiff] . . . ha[s] suffered pecuniary damage" cannot survive

dismissal.  *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018) (citing Fed. R. Civ. P. 9(g)).

Because special damages flow from *actual* pecuniary harm, "[s]imply asserting the risk

of future harm is insufficient."  *Xereas v. Heiss*, 933 F. Supp. 2d 1, 19 (D.D.C. 2013).  This

Court has routinely rejected plaintiffs' generalized assertions that a putatively defamatory

statement harmed their prospective financial prospects.  *See, e.g.*, *id.* at 19 (allegation that

statements harmed "future business prospects" insufficient to plead special damages);

*Szymkowicz*, 2020 WL 4432240, at *6 n.8 (allegation that statements were "injurious to

[plaintiff's] career," and that the plaintiff suffered "loss of income and loss of business

opportunity," insufficient to plead special damages); *Franklin v. Pepco Holdings, Inc. (PHI)*, 875

F. Supp. 2d 66, 75 (D.D.C. 2012) (allegation that plaintiff "risk[ed] having her credit suffer"

insufficient to plead special damages because "she [did] not say that this harm has actually

occurred").

Once again, the allegations in the Complaint come nowhere close to satisfying this

standard.  HAF's claim to special damages boils down to a naked assertion that "Defendants'

conduct has injured, and will cause further substantial injury, to HAF's reputation and ability to fundraise." (Compl. ¶ 6.) HAF does not identify any particular revenue stream that it lost (as the D.C. Circuit found necessary in *Browning*), or any harm that actually occurred (as this Court found necessary in *Franklin*). Instead, HAF's principal support for its special damages claim is a placeholder assertion—evidently made to satisfy the amount-in-controversy requirement for diversity jurisdiction—that it "has lost and/or expended and/or will lose and/or expend at least $75,000." (Compl. ¶ 16.)[8] This is precisely the type of "boilerplate recitation, unaccompanied by factual detail," that the D.C. Circuit held to be improper in *Smith*, 886 F.3d at 128—and it relies entirely on those speculative allegations of future harm that this Court plainly rejected in *Xereas*, *Szymkowicz*, and *Franklin*.

Defamation Per Se. HAF also has not alleged that Prabhudoss's statements were actionable as a matter of law, i.e., defamation per se. Defamation per se is a narrow doctrine, and courts have traditionally limited its application to statements that "impute to the subject a crime, a repugnant disease, a matter adversely affecting the person's ability to work in a profession, or gross sexual misconduct." *Franklin*, 875 F. Supp. 2d at 75. Neither of Prabhudoss's challenged statements fall into any of these categories.

## IV. HAF HAS FAILED TO ADEQUATELY ALLEGE ITS CIVIL CONSPIRACY CLAIM AGAINST PRABHUDOSS

"In the District of Columbia, civil conspiracy is not an independent tort." *Bey v. Wash. Metro. Area Transit Auth.*, 341 F. Supp. 3d 1, 22 (D.D.C. 2018) (citing *Nader v. Dem. Nat'l*

---

[8] *See also* Compl. ¶ 36 ("They have caused, or will cause substantial harm to HAF, including lost donations in excess of $75,000."); Compl. ¶¶ 44, 49 ("As a result of such statements, HAF has suffered, or will suffer, lost donations in an amount to be proven at trial, and which exceed $75,000."); Compl. ¶ 53 ("HAF has suffered, or will suffer, substantial damages, including to its reputation and ability to fundraise.").

*Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009)).  Accordingly, a claim of civil conspiracy "fails

unless the elements of the underlying tort are satisfied." *Id.*  Because HAF has failed to state a

claim as to the underlying defamation claim, HAF's civil conspiracy claim fails at the threshold.

HAF also has failed to plead the substantive elements of a conspiracy claim.  "In order to

survive a motion to dismiss for failure to state a claim of civil conspiracy under District of

Columbia law, a complaint must allege with some factual support: (1) an agreement between two

or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner;

and (3) an injury caused by an unlawful overt act performed by one of the parties to the

agreement (4) pursuant to, and in furtherance of, the common scheme." *Mattiaccio v. DHA

Grp., Inc.*, 20 F. Supp. 3d 220, 230 (D.D.C. 2014) (citing *Exes. Sandwich Shoppe, Inc. v. Carr

Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000)).

Whether a conspiracy has been adequately pleaded often turns upon the first element—

the existence of an agreement—which is the "essential element of a conspiracy claim." *Graves v.

United States,* 961 F. Supp. 314, 320 (D.D.C. 1997).  To allege that a defendant entered into a

conspiratorial agreement, HAF must plead more than "parallel conduct that could just as well be

independent action." *Twombly*, 550 U.S. at 557.  Instead, the Complaint must contain "factual

support" to show the existence of an affirmative agreement, including "when or how such an

agreement was brokered, [and] how [Prabhudoss] specifically, as opposed to all the named

defendants generally," was a party to that agreement. *Acosta Orellana v. CropLife Intern.*, 711

F. Supp. 2d 81, 113 (D.D.C. 2010).  Conclusory allegations lacking factual support do not

suffice. *See, e.g.*, *Brady v. Livingood,* 360 F. Supp. 2d 94, 104 (D.D.C.2004) (allegation that

defendants "agreed amongst themselves" to subject him to discriminatory acts insufficient to

plead conspiratorial agreement); *see also Mattiaccio*, 20 F. Supp. 3d at 230 (allegation that

defendants "entered into an agreement to commit an illegal act of defamation" insufficient to plead conspiratorial agreement).

In *Twombly*, the plaintiff attempted to plead a conspiracy without any direct evidence of an agreement between the defendants, relying instead on two types of allegations: (i) conclusory statements that the defendants had engaged in a conspiracy, and (ii) assertions that the defendants "engaged in parallel conduct" with a "compelling common motivation." 550 U.S. at 550. The Supreme Court rejected both. HAF now asks this Court to infer a conspiracy based on exactly the type of conclusory parallel-conduct pleading found insufficient in *Twombly*:

Conclusory Allegations:

- The defendants collectively "conspired with non-party Raqib Hameed Naik, and others, to publish false, defamatory, and highly damaging statements about HAF." (Compl. ¶ 2.)

- "Each of the Defendants was directly quoted in the articles, conspired to cause false and defamatory statements to be made therein, and/or republished those statements." (Compl. ¶ 3.)

- "Defendants knowingly, willfully, and intentionally conspired, agreed and coordinated amongst themselves to defame HAF, by causing false and disparaging statements about HAF to be published in the First and Second Stories, and republished thereafter." (Compl. ¶ 52.)

Parallel Conduct Allegations:

- "Defendants control, act on behalf or, and are otherwise affiliated with, one or more organizations . . . that have a documented history of attacking and/or disparaging HAF." (Compl. ¶ 2.)

- "Defendants routinely conspire to spread mistruths about HAF . . . . To further their aim, and perpetuate the conspiracy, Defendants use each other as corroborating sources." (Compl. ¶ 4.)

To find HAF's conspiracy allegations plausible as pled, this Court must accept that participants in an ongoing debate cannot historically take the same side—or use each other as corroborating sources—without raising an inference of a conspiratorial agreement. *Twombly*

forecloses such an alarming proposition.  HAF's "formulaic recitation" of the elements of its

cause of action, unmoored from any facts describing the "time, place, or person[s] involved in

the alleged conspirac[y]," cannot sustain a plausible inference against Prabhudoss.  *Acosta*

*Orellana*, 711 F. Supp. 2d at 89, 114.

For the same reason, HAF's attempts to attribute to Prabhudoss the statements of the

Coalition to Stop Genocide in India must be rejected.[9]  The only allegation in the Complaint

linking Prabhudoss to the Coalition is a statement that FIACONA was a "member[] of the

purported Coalition to Stop Genocide."  (Compl. ¶ 20.)  HAF's transitive theory of liability—a

defamation claim based solely on an individual's status as one of 17 board members of an

organization (FIACONA), which was itself a member of an umbrella group (the Coalition)

comprised of dozens of separate organizations (*see* Ex. 7)—has no precedent so far as counsel is

aware.  *Cf. Zimmerman*, 246 F. Supp. 3d at 286–87 (dismissal of defamation claim proper where

complaint did not sufficiently allege the defendant's "level of responsibility for the [statement]

that would be necessary to demonstrate that he published or knowingly participated in publishing

the defamation at issue" (citation and internal quotation marks omitted)); *Teltschik v. Williams &*

*Jensen, PLLC*, 683 F. Supp. 2d 33, 53 (D.D.C. 2010) (individual attorneys at law firm not

responsible for putatively defamatory statements made by law firm).

Moreover, HAF's unsupported assertion "upon information and belief" that all of the

organizations with which Defendants are affiliated "ha[d] a controlling interest, had approval of

the statements before publication, and are therefore liable for those statements" (Compl. ¶ 28),

does not save its deficient pleading.  The Complaint does not plead any facts in support of this

---

[9] It is unclear from the face of the Complaint whether the statements of the Coalition are alleged to support the defamation claim or the conspiracy claim.  In any case, the deficiencies in HAF's allegations regarding the link between the Coalition and Prabhudoss are equally fatal as to both.

claim, and similar speculation couched as pleading "upon information and belief" has routinely been dismissed. *See Doe v. Lee*, 2020 WL 759177, at *6 (D.D.C. Feb. 14, 2020) ("It is well-settled that such conclusory allegations supported by information and belief are insufficient to survive a motion to dismiss." (citation omitted)); *see also Baumel v. Syrian Arab Republic*, 667 F. Supp. 2d 39, 49 (D.D.C. 2009) ("information and belief" insufficient to carry "rank speculation").

In any case, for the reasons set forth in Section V.B of the Viswanath & Rajagopal MTD, the statements of the Coalition are not actionable to begin with.

Accordingly, HAF's civil conspiracy claim should dismissed with prejudice, and its attempt to otherwise attribute the statements of the Coalition to Prabhudoss should also be rejected.

<u>**CONCLUSION**</u>

For the reasons stated, the Court should dismiss the claims against Defendant John Prabhudoss in their entirety and with prejudice.

Dated:  New York, New York
        August 27, 2021

                              Respectfully submitted,

                              HOLWELL SHUSTER & GOLDBERG LLP

                              By:  */s/ Daniel M. Sullivan*_____
                                       Daniel M. Sullivan
                                       Andrew W. Chang
                                       425 Lexington Ave.
                                       New York, New York 10017
                                       Telephone:  (646) 837-5151

                                       *Attorneys for Defendant John Prabhudoss*

33

**Appendix A:**
**Statements Made By Defendant John Prabhudoss**

| Putatively Defamatory Statement | Attribution | Citation |
|---|---|---|
| "Government watchdog groups as well as human rights organisations need to take serious note of the misappropriation of COVID funding by Hindu supremacist groups [in] the United States." | Prabhudoss | Compl. ¶ 29(c) |
| "Recently realized that the @HinduAmerican just confirmed and acknowledged through its own lawyers that they are a Hindu supremacist organization in the US operating as a charity. Wow! Who would have thought that!!" | Prabhudoss | Compl. ¶ 34(a) |
| "[T]he Hindu groups that received the funds have 'existential links' with the Rashtriya Swayamsevak Sangh (RSS), the 'fountainhead of Hindu supremacist ideology' and 'ideological parent' of Prime Minister Narendra Modi's Bharatiya Janata Party (BJP)." | Coalition | Compl. ¶ 29(d)(i). |
| "[T]he five groups – Vishwa Hindu Parishad of America (VHPA), Ekal Vidyalaya Foundation, Infinity Foundation, Sewa International, and Hindu American Foundation (HAF) – are 'US-based front organisations for Hindutva, the supremacist ideology that is the driving force behind much of the persecution of Christians, Muslims, Dalits, and other minorities in India.'" | Coalition | Compl. ¶ 29(d)(ii). |
| "There are families across America still reeling from the human and economic toll of COVID-19, while groups that seem to be essentially serving as front organizations for a violent and supremacist ideology are raking in the windfall from federal COVID funding." | Coalition | Compl. ¶ 29(d)(iii). |
| "[T]he RSS has been 'directly involved in orchestrating anti-Christian and anti-Muslim pogroms and instigating terror attacks, as part of a relentless campaign to subvert India's secular moorings and turn it into a Hindu authoritarian state where minorities are relegated to the status of second class citizens.'" | Coalition | Compl. ¶ 29(d)(iv). |
| "[The RSS's] members and affiliated organisations have been implicated in countless acts of massacres, ethnic cleansing, terrorism, forced-conversions and other forms of violence against religious minorities in India." | Coalition | Compl. ¶ 29(d)(v). |
| "A comprehensive probe and corrective action is needed to ensure that hard-working American taxpayers' money is not funneled towards sponsoring hate, persecution and the slow genocide of minorities and marginalised communities in India." | Coalition | Compl. ¶ 29(d)(vi). |