## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**HINDU AMERICAN FOUNDATION**

Plaintiff,

v.

**SUNITA VISWANATH;**
**RAJU RAJAGOPAL;**
**RASHEED AHMED;**
**JOHN PRABHUDOSS;**
**AUDREY TRUSCHKE; AND**
**DOES 1-20,**

Defendants.

**Civil Action No. 1:21-cv-01268-APM**

**Honorable Amit P. Mehta**

(Oral Hearing Requested)

## OPPOSITION TO DEFENDANT JOHN PRABHUDOSS'S MOTION TO DISMISS

Ryan J. Stonerock
D.C. Bar 1632636
Dilan A. Esper (admitted *pro hac vice*)
Jordan A. Gonzales (admitted *pro hac vice*)
HARDER LLP
8383 Wilshire Blvd., Suite 526
Beverly Hills, CA 90211
Tel. (424) 203-1600
rstonerock@harderllp.com
desper@harderllp.com
jgonzales@harderllp.com

David C. Tobin
D.C. Bar 395959
TOBIN O'CONNOR & EWING
5335 Wisconsin Avenue NW, Suite 700
Washington, D.C. 20015
Tel. (202) 362-5900
dctobin@tobinoconnor.com

*Counsel for Plaintiff*
*Hindu American Foundation*

## TABLE OF CONTENTS

I.     **INTRODUCTION**.................................................................................1

II.    **SUMMARY OF FACTS ALLEGED IN COMPLAINT** ........................1

    **A.  HAF is a D.C.-based non-profit dedicated to education and advocacy** ..........1

    **B.  Defendants Ahmed, Viswanath, Rajagopal, and Prabhudoss are controlling officers of entities that work closely together with Defendant Truschke, as coalition partners, to further a shared agenda against HAF** ..........................2

        1.  Ahmed – Founder and Executive Director of IAMC .................................2

        2.  Viswanath and Rajagopal - Founders and directors of HfHR ...................2

        3.  Prabhudoss – Chairman of FIACONA ...................................................3

        4.  Close ties and partnership with Defendant Truschke ...............................3

        5.  Defendants' close ties to non-party Raqib Hameed Naik .........................3

    **C.  In retaliation for HAF's perceived involvement in reports criticizing their own acts, Defendants conspired to target, defame, and cause injury to HAF within this District** ........................................................................4

        1.  Defendants are coalition partners and close allies in their advocacy against HAF ............................................................................................4

        2.  The Conspirators Published Defamatory Stories Of And Concerning HAF ............................................................................................4

        3.  The First Story, Republications and Related Defamatory Statements ........5

        4.  The Second Story, Republications and Related Defamatory Statements ...7

    **D.  Additional Facts Which HAF Could Amend Its Complaint To Allege** ...........9

III.   **HAF STATES VALID CLAIMS FOR CONSPIRACY AND DEFAMATION** .14

    **A.  HAF Has Pleaded a Plausible Conspiracy Claim** ..............................14

    **B.  Because HAF Has Successfully Pleaded a Conspiracy, Prabhudoss Is Responsible for His Co-Conspirators' Actions** ..................................18

**C. HAF has Pleaded that the Defamatory Statements are Capable of a Defamatory Meaning** ...................................................................................18

**D. HAF has Pleaded a Plausible Claim that the Conspiracy's Statements were made with Actual Malice** ...........................................................22

**E. HAF Need Not Allege Special Damages, But Has Adequately Alleged Them** .......................................................................................................25

**IV. SHOULD THE COURT GRANT THE MOTION, LEAVE TO AMEND SHOULD BE GRANTED** .................................................................................27

**A. Leave To Amend Is Required Under the Legal Standard** ............................27

**B. HAF Has Shown It Can Add Additional Relevant Facts To the Complaint** .27

**V. CONCLUSION** .......................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Group*,
   975 F. Supp. 2d 1 (D.D.C. 2013) .......................................................................21

*Acosta Orellana v. CropLife Int'l*,
   711 F.Supp.2d 81 (D.D.C. 2010) .......................................................................16

*Armstrong v. Thompson*,
   80 A.3d 177 (D.C. 2013) ....................................................................................20

*Bauman v. Butowsky*,
   377 F.Supp.3d 1 (D.D.C. 2019) .........................................................................20

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................16

*Bindrim v. Mitchell*,
   155 Cal. Rptr. 29 (Cal. App. 1979) ....................................................................22

*Brady v. Livingood*,
   360 F.Supp.2d 94 (D.D.C.2004) ........................................................................17

*Broidy Capital Management, LLC v. Muzin*,
   2020 WL 1536350 (D.D.C. Mar. 31, 2020) .......................................................14

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ...........................................................................26

*Clemmons v. Academy for Educational Development*,
   70 F.Supp.3d 282 (D.D.C. 2014) .......................................................................20

*Covad Communications Co. v. Bell Atlantic Corp.*,
   407 F.3d 1220 (D.C. Cir. 2005) .........................................................................24

*Croixland Properties Limited Partnership v. Corcoran*,
   174 F.3d 213 (D.C. Cir. 1999) ...........................................................................22

*Deripaska v. Associated Press*,
   282 F.Supp.3d 133 (D.D.C. 2017) .....................................................................20

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
   749 A.2d 724 (D.C. 2000) ..................................................................................14

*Farah v. Esquire Magazine,*
   736 F.3d 528 (D.C. Cir. 2013) ................................................................................20

*\*Firestone v. Firestone,*
   76 F.3d 1205 (D.C. Cir. 1996) ...............................................................................27

*\*Franklin v. Pepco Holdings, Inc.,*
   875 F. Supp. 2d 66 (D.D.C. 2012) ..........................................................................26

*Graves v. United States,*
   961 F.Supp.314 (D.D.C. 1997) ..............................................................................16

*Greenbelt Cooperative Publishing Ass'n v. Bresler,*
   398 U.S. 6 (1970) ...................................................................................................20

*Harte-Hanks Communications, Inc. v. Connaughton,*
   491 U.S. 657 (1989) ...............................................................................................23

*Hearts with Haiti, Inc. v. Kendrick,*
   2015 WL 4065185 (D. Maine Jul. 2, 2015) ............................................................25

*Hutchinson v. Proxmire,*
   443 U.S. 111 (1979) ...............................................................................................19

*Jankovic v. International Crisis Group,*
   822 F.3d 576 (D.C. Cir. 2016) ...............................................................................24

*Kowal v. MCI Communications Corp.,*
   16 F.3d 1271 (D.C. Cir. 1994) ...............................................................................18

*\*Lagayan v. Odeh,*
   199 F.Supp.3d 21 (D.D.C. 2016) .......................................................................14, 15

*Lohrenz v. Donnelly,*
   350 F.3d 1272 (D.C. Cir. 2003) ..............................................................................24

*Mattiaccio v. DHA Group,*
   20 F.Supp.3d 220 (D.D.C. 2014) ............................................................................16

*Milkovich v. Lorain Journal Co.,*
   497 U.S. 1 (1990) ...............................................................................................20, 21

*New York Times v. Sullivan,*
   376 U.S. 254 (1964) ...............................................................................................23

*\*Rawlings v. District of Columbia,*
   820 F.Supp.2d 92 (D.D.C. 2011) .......................................................................14, 15

*Riddell v. Riddell Washington Corp.*,
    866 F.2d 1480 (D.C. Cir. 1989) .......................................................................18

*Rosen v. American Israel Public Affairs Committee*,
    41 A.3d 1250 (D.C. 2012) ............................................................................20

*Safex Foundation v. Safeth, Ltd.*,
    2021 WL 1167266 (D.D.C. Mar. 26, 2021).......................................................25

*Smith v. Clinton*,
    253 F.Supp.3d 222 (D.D.C. 2017) .................................................................22

*Smith v. Clinton*,
    886 F.3d 122 (D.C. Cir. 2018) ......................................................................26

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ...................................................................................22

*Szymkowicz v. Frisch*,
    2020 WL 4432240 (D.D.C. Jul. 31, 2020)......................................................26

*Teltschik v. Williams & Jensen, PLLC*,
    683 F.Supp.2d 33 (D.D.C. 2010) ..................................................................17

*United States v. Scott*,
    979 F.3d 986 (2d Cir. 2020).................................................................14, 15

*Washington Times Co. v. Bonner*,
    86 F.2d 836 (D.C. Cir. 1936) .......................................................................25

*Weyrich v. New Republic, Inc.*,
    235 F.3d 617 (D.C. Cir. 2001) ......................................................................19

*Xereas v. Heiss*,
    933 F. Supp. 2d 1 (D.D.C. 2013) ..................................................................26

*Zimmerman v. Al Jazeera America*,
    246 F.Supp.3d 257 (D.D.C. 2017) .....................................................17, 18, 19

**Statutes**

Fed. R. Evid. 201(b)(2) ......................................................................................24

**Other Authorities**

Sherman Anti-Trust Act.......................................................................................16

I.      **INTRODUCTION**

Plaintiff Hindu American Foundation ("HAF") hereby opposes Defendant John Prabhudoss' ("Prabhudoss") motion to dismiss. HAF has sued Prabhudoss and his co-defendants Sunita Viswanath ("Viswanath"), Raju Rajagopal ("Rajagopal"), Rasheed Ahmed ("Ahmed"), and Audrey Truschke ("Truschke") (collectively, "Defendants") for defamation and civil conspiracy. For the reasons stated herein, the Court should deny the motion in its entirety.

II.     **SUMMARY OF FACTS ALLEGED IN COMPLAINT**

    A.  **HAF is a D.C.-based non-profit dedicated to education and advocacy**

HAF has been registered as a non-profit corporation in the District of Columbia ("D.C." or the "District") since 2011 and is headquartered in D.C. (Complaint, ¶7). HAF's D.C. location is publicly identified and readily available on HAF's website, and in its public Form 990 Tax Forms and D.C. corporate registration. (Complaint, ¶¶37-39).

HAF is an independent, non-partisan and non-profit American organization that has no affiliation or ties to any organizations or political parties in the United States or abroad. (Complaint, ¶¶7, 19). HAF is committed to educating the public about Hindus and Hinduism and advocating for policies and practices that ensure the well-being of all people and the planet. (*Id.*). HAF works directly with educators and journalists to ensure accurate understanding of Hindus and Hinduism, and with policymakers and key stakeholders to champion issues of concern to Hindu Americans, including defending civil and human rights and protecting all living beings. (*Id.*).

As a 501(c)(3) non-profit under the Internal Revenue Code, HAF is a regulated advocacy group dedicated to a charitable purpose. (*Id.*). Information about every dollar spent by HAF is publicly available, including but not limited to, on HAF's own website, the IRS website, and on

GuideStar.org, a watchdog platform regarding charities. (*Id.*, ¶¶37-39). HAF's website has a page specifically dedicated to HAF's financials, publicly disclosing its Form 990s, Audited Financial Statements, and also offering reports on "Your Dollars in Action," a video regarding its Annual Report, more recent editions of the Semi-Annual Newsletter, and a Statement on Grants Issued ensuring compliance with the Office of Foreign Assets Control (OFAC) of the US Department of the Treasury. (*Id.*). HAF's financials have been annually reviewed by a third party controller and audited by a third party accounting firm for the past five (5) years. (*Id.*). HAF has proudly been awarded the 2021 Platinum Seal of Transparency, the highest level of recognition offered by GuideStar, for HAF's extensive reporting on contact and organizational information, in-depth financial data, qualitative metrics about goals, strategies, and capabilities, and quantitative results and progress towards achieving HAF's mission. (*Id.*, ¶39).

**B.** **Defendants Ahmed, Viswanath, Rajagopal, and Prabhudoss are controlling officers of entities that work closely together with Defendant Truschke, as coalition partners, to further a shared agenda against HAF**

1. Ahmed – Founder and Executive Director of IAMC

Defendant Ahmed is a founder and the Executive Director of Indian American Muslim Council ("IAMC"), an entity located in and organized under the laws of this District. (Complaint, ¶¶7,10). IAMC holds itself out as the largest Washington, DC based advocacy organization of its kind, with a mission and objectives to advocate and promote certain alleged values and policies. *See* https://iamc.com/about-us/.

2. Viswanath and Rajagopal - Founders and directors of HfHR

Defendants Viswanath and Rajagopal are co-founders and directors of Hindus for Human Rights ("HfHR"), an entity located in and organized under the laws of this District. (Complaint, ¶¶8-9).

### 3.   Prabhudoss – Chairman of FIACONA

Defendant Prabhudoss is the chairman of the Federation of Indian American Christian Organizations ("FIACONA"). (Complaint, ¶11). "FIACONA is a Washington DC based... voluntary, charitable organization...." *See* https://fiacona.org/about-me/.

### 4.   Close ties and partnership with Defendant Truschke

Ahmed, Viswanath, Rajagopal, and Prabhudoss are closely related and regularly work together with Defendant Truschke, an outspoken and controversial professor with whom they share beliefs and common goals (collectively, "Defendants"). Together, Ahmed, Viswanath, Rajagopal, and Prabhudoss control, operate, and/or act on behalf their affiliated D.C.-based organizations—HfHR, IAMC, and FIACONA— to further their shared agenda with Truschke, as partners and members of the purported Coalition to Stop Genocide in India (the "Coalition"). (Complaint, ¶¶2, 20).

IAMC, HfHR and FIACONA are members of the Coalition.  (Complaint, ¶20). Truschke and IAMC's Advocacy Director (Ajit Sahi) both serve on the Board of Advisors for Students Against Hindutva Ideology ("SAHI"), which is also a member of the Coalition. (Complaint, ¶21). Defendants have a controlling interest in the Coalition and had authority to cause the Coalition's acts and statements at issue in this lawsuit. (Complaint, ¶¶20, 28). In addition, Prabhudoss (FIACONA) and Rajagopal (HfHR) also serve as co-chairs for the India Working Group of the International Religious Freedom Roundtable. (Complaint, ¶20).

### 5.   Defendants' close ties to non-party Raqib Hameed Naik

Non-party Raqib Hameed Naik ("Naik") is a journalist, who also has close and ongoing connections with Defendants, speaking at public D.C. events organized by IAMC and HfHR, and serving on IAMC's executive team. (Complaint, ¶22).

C. **In retaliation for HAF's perceived involvement in reports criticizing their own acts, Defendants conspired to target, defame, and cause injury to HAF within this District**

   1. Defendants are coalition partners and close allies in their advocacy against HAF

Defendants dislike the political party currently in power in India (which is often labeled a "Hindu nationalist" party), and have political disagreements with the Indian government, especially with respect to its alleged treatment of Muslims and other religious minorities. Defendants have aligned themselves together in their outspoken criticism of groups whom they perceive to be "pro-Indian government" and "pro-Hindu", particularly HAF. (Complaint, ¶4).

Defendants are coalition partners and close allies who are publicly and inextricably intertwined and associated with one another in a common advocacy and strategy against such "pro-Hindu"/"pro-Indian government" groups. As part of this strategy, Defendants have a documented history of collectively attacking and disparaging HAF as a shared adversary. (Complaint, ¶2). Defendants have uniformly spread mistruths about HAF, attacked HAF, and accused it of being a purported Hindu supremacist group, in an effort to encourage discrimination against HAF and impede its ability to effect change in accordance with HAF's guiding principles. (*Id.*, ¶2).

   2. The Conspirators Published Defamatory Stories Of And Concerning HAF

Prabhudoss knowingly, willfully and intentionally conspired, agreed and coordinated with his co-defendants to cause non-party Naik to publish false, defamatory and highly damaging statements about HAF in two articles on www.aljazeera.com. (Complaint, ¶23). To deflect criticism from Defendants and attention away from their own acts and those of their affiliated organizations, lend credibility to those organizations, and solicit further interest and donations on

their own behalf, Defendants decided to target HAF with a campaign of lies and false statements, attempting to discredit HAF's educational and advocacy efforts. (Complaint, ¶¶2-5, 23-24, 27, 52).

Defendants conspired to cause Naik to falsely report, among other things, that HAF has alleged "ties to supremacist and religious groups", and that HAF used $833,000 it received for COVID-19 to fund hate campaigns against certain groups in India. (Complaint, ¶¶2-5, 23-24).

To further their aim, and perpetuate the conspiracy, Defendants conspired, agreed, and used each other and the Coalition as corroborating sources to bolster the false and defamatory statements about HAF. (Complaint, ¶¶3, 4). Each of the Defendants was directly quoted in the articles, conspired to cause false and defamatory statements to be made therein, and/or republished those statements. (Complaint, ¶¶4, 25-26, 29). Moreover, Defendants conspired, agreed, and engaged in strategic and coordinated efforts to amplify the false and defamatory statements about HAF in the stories, each disseminating and/or republishing the stories, along with additional false and defamatory statements about HAF, on their own platforms and/or through the platforms of their network of D.C.-based organizations. (Complaint, ¶¶3, 23, 27, 30-31, 33-34).

3.   The First Story, Republications and Related Defamatory Statements

On April 2, 2021, Defendants caused multiple false and defamatory statements to be reported "from Washington DC" in the first story, authored by Naik and entitled "*Hindu right-wing groups in US got $833,000 of federal COVID fund [:] Five groups linked to Hindu nationalist organisations [sic] in India received direct payments and loans in federal relief fund*" (the "First Story"). (Complaint, ¶24).

The First Story, appearing on [www.aljazeera.com](www.aljazeera.com), identifies HAF as a "Washington based advocacy group" and falsely refers to HAF as a "Hindu right-wing group in [the] US" that is "linked to Hindu nationalist organisations [*sic*] in India" and has "ties to Hindu supremacist and religious groups." (Complaint, ¶24). The story contains additional false and defamatory statements of and concerning HAF by co-defendant and co-conspirator, Viswanath, as "[HfHR] CO-FOUNDER", including:

a. "[Ms.] Viswanath, co-founder of Hindus for Human Rights, expressed concern that the US pandemic relief funds might end up furthering hate campaign[*sic*] against Muslims and other minorities in India";

b. "'All these organisations [including HAF] are sympathetic to the Hindu supremacist ideology. Their parent organisations continue to spread hatred in Hindu communities towards Muslims and Christians,'…"; and

c. "'Any American non-profit that perpetuates Islamophobia and other forms of hate should not receive federal relief funds in any form'".

("First Story Defamatory Statements"). (Complaint, ¶24).

Immediately thereafter, Defendants engaged in a strategic and coordinated effort to amplify the First Story Defamatory Statements by disseminating and/or republishing the First Story on their respective platforms, including by and through their network of D.C.-based organizations, along with additional false and defamatory statements about HAF. (Complaint, ¶¶26-27). Among other things, Defendants caused: (a) D.C.-based IAMC to republish and/or post the First Story on IAMC's website and Twitter account, and to publish additional false and defamatory statements about HAF; (b) D.C-based HfHR to republish and/or post the First Story on HfHR's website and HfHR's Twitter account, and to publish additional false and defamatory statements about HAF; and (c) Truschke to republish and/or post statements and quotes from the First Story on her Twitter account, along additional false and defamatory statements about HAF.

(Complaint, ¶¶26-27). On April 2, 2021, Truschke confirmed that she blamed HAF for the recent

public criticisms and student denouncements of her teachings, falsely alleging:

> "Some of the groups mentioned [in this First Story], especially HAF, have participated in a recent coordinated effort attacking me. [¶] That effort has involved targeted harassment of me and others and violent threats. [¶] This is a huge red flag for a US-based organization."

(Complaint, ¶¶26, 33(c)). All of Defendants' statements are unequivocally false, defamatory, and

highly damaging to HAF.

### 4. The Second Story, Republications and Related Defamatory Statements

On or about April 8, 2021, Defendants caused additional false and defamatory statements

to be published in the second story on www.aljazeera.com, entitled "*Call for US probe into

Hindu right-wing groups getting COVID fund [:] Following an Al Jazeera report, US-based

Coalition to Stop Genocide in India demands investigation into federal funds given to 'sponsor

hate'*" (the "Second Story"). (Complaint, ¶28).

The Second Story contains additional false and defamatory statements of and concerning

HAF ("Second Story Defamatory Statements") (collectively with the First Story Defamatory

Statements, the "Defamatory Statements") by Ahmed, as "executive director of IAMC";

Rajagopal, as director and "member" of HfHR; Prabhudoss, as "chairman of [FIACONA]"; and

the Coalition. (Complaint, ¶29). Defendants caused the Second Story to attribute numerous

statements to the Coalition. (Complaint, ¶28). Defendants' D.C.-based organizations are

members of the Coalition, have a controlling interest in the Coalition and had pre-publication

approval of the Coalition's statements in the Second Story. (Complaint, ¶¶28, 20-21).

As with their combined efforts for the First Story and in furtherance of their conspiracy,

Defendants engaged in agreed upon, strategic, and coordinated efforts to amplify the Second

Story Defamatory Statements, including by and through their network of D.C.-based

organizations. (Complaint, ¶¶30-31, 33-34). Defendants caused: (a) HfHR to post on HfHR's website a link to the Second Story; (b) Truschke to post on Twitter a link to the Second Story, and, thereafter, a series of additional false and defamatory statements about HAF on April 13, 2021 (Complaint, ¶33); (c) IAMC to republish the Second Story on IAMC's website, to make numerous posts on IAMC's Twitter about the Second Story with links to the same, and to "retweet" Truschke's Twitter posts about the First and Second Story (Complaint, ¶¶30-31); and (d) Prabhudoss to tweet that HAF allegedly "confirmed and acknowledged… that they are a Hindu supremacist organization in the US operating as a charity. Wow!" (Complaint, ¶¶30-31, 33-34).

As further confirmation of Defendants' conspiracy, on or around April 11, 2021, Ahmed arranged for Naik to appear at IAMC's virtual strategic meeting of IAMC's Executive Team to "discuss [IAMC's] advocacy strategy for the next quarter." Naik was listed on the related agenda under the designation, "News & Media Outreach". (Complaint, ¶32).

At or around the time of publication of the Al Jazeera stories at issue, Truschke tweeted that "the HAF Board member in question [Rajiv Pandit] has been going after me, along with a growing list of people, in recent days[.]" (Complaint, ¶33(c)).

The Defamatory Statements falsely allege, among other things, that HAF is a "US-based front organization [sic]" for India-based Hindu nationalist organizations, which are allegedly supremacist and highly controversial; is a subsidiary of those organizations in India which Defendants have accused of egregious human rights abuses; that HAF has "misappropriat[ed]" (a direct quote attributed to Prabhudoss) and "funneled" U.S. Government COVID relief funds to those same organizations; and of participating in a coordinated effort to attack Truschke and make violent threats against her. (Complaint, ¶35). The Defamatory Statements falsely portray

HAF as contributing to and/or perpetrating heinous and despicable crimes against humanity—acts of massacre, ethnic cleansing, terrorism, forced-conversions, and other forms of violence against, and subjugation of, religious minorities in India (*Id.*). All of these statements are unequivocally false, defamatory, and highly damaging to HAF. (Complaint, ¶¶3, 35-36).

The co-conspirators caused the Defamatory Statements to be published and made, and/or republished, with actual malice, including because there are extensive publicly available and readily accessible financials and other documents that directly contradict the Defamatory Statements and establish that no funds were provided by HAF to any alleged Indian nationalist or supremacist organizations. (Complaint, ¶¶37-40). Because there were obvious reasons to doubt the accuracy of the Defamatory Statements, Prabhudoss and his co-defendants had an obligation to verify the truth, which they failed to do so, demonstrating that they published the statements with actual malice. (Complaint, ¶40).

### D.  Additional Facts Which HAF Could Amend Its Complaint To Allege.

HAF has adduced additional evidence in support of its personal jurisdiction arguments in opposition to the other motions to dismiss filed by Defendants Ahmed, Viswanath, Rajagopal and Truschke, which HAF could add in an amended Complaint should Prabhudoss' motion to dismiss be granted.  These include, but are not limited to, the following:

In the weeks leading up to the publication of the Al Jazeera articles in April 2021, Defendants and their shared belief system were facing serious public scrutiny.

In December 2020, *Newsweek* reported in an article, entitled "COVID Relief Funds went to Violent Extremists" that "[IAMC], an anti-Hindu Islamist group with alleged ties to SIMI, a banned terrorist organization in India, was given $1,000 of taxpayers' money" and stating:

"There has to be a better system. It simply cannot be the case that the government is forced to subsidize the work of radicals committed to violence and hate." (Ex. 66-67).

In response, Ahmed authored several heated public letters, as IAMC's Executive Director, to *Newsweek*, calling the article a "defamatory and libelous piece", and effectively blaming HAF for the article. HAF had nothing to do with the article. An IAMC post accused HAF of entering "into a joint effort with [Middle East Forum ("MEF"), the employer of the author of the Newsweek article,] to target Muslim organizations in the US", attacking *Newsweek*'s citation to a 2013 report by HAF as a basis for the article, and falsely describing HAF as an alleged "US-based Islamophobic organization". (Ex. 12, 67-70).

Viswanath and HfHR were the first to comment on the *Newsweek* article, confirming that IAMC is HfHR's "closest organizational partner", proclaiming that IAMC "is not anti-Hindu", and demanding that Newsweek retract this "outrageous allegation". (Ex. 66). As IAMC's close partners and allies, these allegations directly implicate Viswanath, her co-defendants and their respective organizations—none of whom wish to be publicly linked to a "violent extremist" anti-Hindu Islamist group with ties to a terrorist organization. Such an allegation as to one member of Defendants' close-knit group affects the group and their respective entities as a whole, implicating each one of them as being either a violent extremist anti-Hindu Islamist group themselves or being a close partner to one.

On February 10, 2021, Ahmed authored a letter to *Sunday Guardian Live* ("SGL") on IAMC's website, about the purported "lies, fallacies and ludicrous distortions" in an SGL article entitled, "*Chicago's Indian American Muslim Council doth protest too much*," (the "SGL Article"). Among other things, the SGL Article includes the subheading, "*Besides IAMC's naked anti-Hinduism, there is no denying that the organization has forged allegiances with Islamists,*

10

*including extremists with ties to murderous terrorist groups*". (Ex. 12-13). In a companion piece to Ahmed's letter, a February 9, 2021 press release on IAMC's website accused HAF of "visibly collaborating with MEF" in an "attack against" Defendants, namely "IAMC and its coalition partners" and/or its "allies". (Ex. 62).

On January 7, 2021, Truschke tweeted an image of the Indian flag at the scene of the Capital Hill insurrection, and the statement: "There were a number of Hindu Right folks there [at the riot]." (Ex. 71). There were reports that the flagbearer was not Hindu, and Truschke faced intense backlash for spreading misinformation and creating a dangerous environment for Hindus by falsely linking Hindus to white supremacy and violence. (Ex. 72-74). In a January 19, 2021 open letter on www.indiafacts.org to Rutgers administrators about Truschke's Twitter post and her "provocative social media activity targeting Hindus", non-party Dr. Ramesh Rao described Truschke as someone who "has become well-known for her social media posts mocking, deriding, provoking and needling Hindus" and is "a flag-bearer for anti-Hindu activism." (Ex. 75).

In March 2021, a Hindu student group, Hindus on Campus, called Truschke out for anti-Hindu remarks, hatred, bigotry and racism against Hindus and demanded that she be prohibited from teaching courses involving materials related to Hinduism. (Ex. 76-77). Among other things, the group accused Truschke of: creating an unsafe environment for Hindu students; spreading misinformation during the Capital Riots; accusing the Bhagavad Gita (a famous and sacred Hindu text) of "[r]ationaliz[ing] mass slaughter"; comparing a gang rape case in India to "an incident in the sacred epic Mahabharata and [leading] readers to conclude that Hinduism endorses 'Rape Culture' and misogyny"; calling Hindu Gods "Misogynistic Pig[s"]; portraying Hindus as bizarre and devoid of scientific acumen; endorsing controversial burnings of sacred

11

Hindu religious texts; portraying Hindu Society as "sex obsessed" and lustful; and "brush[ing] away the trauma inflicted on Hindus and the people of India by Mughal king Aurangzeb, claiming that such numbers are exaggerated" although "[r]eputable sources have demonstrated that Aurangzeb enslaved and murdered 4.6 million Hindus." (Ex. 72, 76; *see also* Ex. 77, stating "Truschke has been receiving a lot of criticism on social media for her penchant for demonizing Hindus. Twitter users have been trending #RacistRutgers…, calling out [Truschke] for her 'hatred, bigotry and racism against Hindus.")

In response, Defendants caused HfHR and IAMC to sign a public letter to Truschke's employer in support of Truschke and aggressively advocating for their shared views. (Ex. 78-79). On or around April 16, 2021, Viswanath and Rajagopal authored an additional public declaration of support for Truschke on TheWire.in, which IAMC republished on its website on April 17, 2021. (Ex. 30, 80). HfHR's website has a "[HfHR] in the Press" page, which has a category of press items dedicated to Truschke, entitled, "SOLIDARITY WITH DR. AUDREY TRUSCHKE." (Ex. 81).

Viswanath is also a co-founder and executive board member of Sadhana: Coalition of Progressive Hindus, and has used this additional "coalition" to publicly support Truschke, lend Truschke an additional speaking platform, partner with IAMC, and disparage HAF. (Ex. 82-85). In March 2021, Viswanath caused Sadhana to publish a further statement of public support for Truschke and to host an event on March 27, 2021 for Truschke to further defend herself and discuss "reflections" on her teachings. (Ex. 83, 86).

At or around the time immediately leading up to the publication of the Al Jazeera stories at issue, HAF was being wrongly accused of an "attack against [Defendants]" and "entering into a joint effort with [MEF] to target [Defendants]" with respect to the SGL and *Newsweek* articles.

(Ex. 13, 66). Defendants falsely accused HAF of being a "US-based Islamophobic organization" that is allegedly supportive of the "persecution of India's 280 million Muslims and Christians", and blamed HAF for the *Newsweek* article as well as HAF's supposed "participat[ion] in [a] coordinated effort attacking [Truschke]...involv[ing] targeted harassment of [her] and others and violent threats." (Complaint, ¶¶26(b), 33(c); Ex. 64, 68-70).

As part of their conspiracy, Defendants further conspired to use the First Story as an alleged basis for the Coalition to file a complaint with the U.S. Small Business Administration ("SBA") to investigate the propriety of the disbursement of the funds to HAF and the others, and then cause publication of the Second Story to report the filing of the SBA complaint along with additional false and defamatory statements about HAF. (Complaint, ¶¶2-5, 23-24; Ex. 59). Defendants have previously used the Coalition to attack HAF. (Complaint, ¶33(b); *see also* Ex. 59, Second Story stating, "Following an Al Jazeera investigation [hyperlink to First Story], [the Coalition] has called on the US Small Business Administration (SBA) to probe how Hindu right-wing groups received hundreds of thousands of dollars in federal COVID-19 relief funds")).

On April 6, 2021, in furtherance of their conspiracy, Defendants caused the Coalition to issue an "immediate" press release to "call on the [SBA] to probe how US-based Hindu supremacist organizations received hundreds of thousands of dollars in federal Covid-19 relief funding". (Ex. 91, 96-99). The press release links to the First Story and states: "The coalition was responding to an expose published in Al Jazeera that five US-based organizations with ties to Hindu supremacists and religious groups in India received pandemic aid to the tune of $833,000...The organizations called out in the exposé — [including] Hindu American Foundation — are US-based front organizations for Hindutva, the supremacist ideology that is

the driving force behind much of the persecution of Christians, Muslims, Dalits and other minorities in India." (Ex. 96-96).

### III.     HAF STATES VALID CLAIMS FOR CONSPIRACY AND DEFAMATION

#### A.    HAF Has Pleaded a Plausible Conspiracy Claim

"The elements of civil conspiracy are: '(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.'" *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000). A conspiracy complaint should be construed liberally. *Id*. "Courts in this circuit have recognized that a plaintiff need not allege that an express or formal agreement was entered into. In fact, in most civil conspiracy cases, courts are required to infer an agreement from indirect evidence." *Lagayan v. Odeh*, 199 F.Supp.3d 21, 30 (D.D.C. 2016).

Lack of direct evidence of such an agreement is "neither rare nor fatal" in civil conspiracy cases. *Rawlings v. District of Columbia*, 820 F.Supp.2d 92, 106 (D.D.C. 2011). To state a claim of conspiracy, the complaint needs to contain "enough factual matter (taken as true) to **suggest** that an agreement was made." *Lagayan*, 199 F.Supp.3d at 30 (emphasis added) (held that the requisite agreement could be inferred because the defendants—all of whom were related to each other—together coordinated the plaintiff's international travel to the defendants' home in the United States); *see also United States v. Scott*, 979 F.3d 986, 988–91 (2d Cir. 2020) (Second Circuit considered a conspiracy claim arising from prison officers' group beating of an inmate and held that the evidence supported a finding of agreement despite the lack of "an extended period of premeditation or a distinct verbal agreement" where officers worked together to keep the inmate restrained, restrict his ability to protect himself, and remove potential witnesses); *Broidy Capital Management, LLC v. Muzin*, 2020 WL 1536350, at **20–21 (D.D.C. Mar. 31,

2020) ("The totality of the circumstantial evidence alleged plausibly supports a conspiracy claim.").

Under these standards, HAF has stated a claim for conspiracy. HAF has alleged that: Defendants closely and routinely work together as allies and coalition partners against HAF as a shared adversary; that they control affiliated organizations such as HfHR, IAMC and FIACONA; in order to deflect criticism from Defendants and attention away from their own acts, Defendants decided and agreed to target HAF with a campaign of lies and false statements (they wrongly blamed HAF for the *Newsweek* and SGL articles and alleged attacks on Truschke immediately leading up the Al Jazeera stories at issue); and that they caused the Coalition to publish the false and defamatory statements that were attributed to the Coalition in the stories. (Complaint, ¶¶2-5, 23-24, 27, 2852)).

In addition, HAF has alleged that the co-conspirators agreed to make and/or cause the Defamatory Statements, including but not limited to, the statements that appeared in the two stories at issue, and to disseminate, republish and/or amplify those statements on their own platforms and/or through the platforms of their network of D.C.-based organizations. (Complaint, ¶¶2-5, 23, 27, 30-31, 33-34); *Lagayan*, 199 F. Supp. 3d at 30-32; *Scott*, 979 F.3d at 988–81; *see also   Rawlings v. D.C.*, 820 F. Supp. 2d 92, 106-107 (D.D.C. 2011) (held that, though "facts may not overwhelmingly imply the existence of a conspiracy to commit assault and battery", it was a jury question "whether an unlawful agreement could be inferred from two police officers' behavior").

These allegations, construed liberally, allege or at the very least are sufficient to infer an agreement to make the Defamatory Statements. Prabhudoss responds to this by mischaracterizing the argument, arguing that HAF is asserting that Prabhudoss can be held liable solely for being

head of an organization that is one of 17 members of the Coalition to Stop Genocide.  However, that is not HAF's pleading and it is not HAF's argument here; rather, HAF contends that Prabhudoss agreed with other co-conspirators to disseminate defamatory statements of and concerning HAF and to destroy HAF's reputation.  FIACONA's membership in the Coalition is one of the many facts alleged supporting this conspiracy, but it is the totality of the allegations that shows that Defendants agreed to act in concert to defame HAF.

Prabhudoss relies on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the seminal case on the "plausibility" requirement in pleading, but *Twombly* does not even purport to say what constitutes a sufficiently plausible pleading of a state law conspiracy claim; the issue in *Twombly* was whether a complaint stated a cause of action under the Sherman Anti-Trust Act by alleging an actual contract had been formed in restraint of trade, not merely a civil conspiracy.

*Mattiaccio v. DHA Group*, 20 F.Supp.3d 220, 230-31 (D.D.C. 2014), is distinguishable because, in that case, the plaintiff alleged generically that the defendants entered into a conspiracy to defame the plaintiff but offered no factual background at all as to the alleged conspiracy. In contrast, the case at bar alleges in detail how the conspiracy worked, who was involved, and what its purposes were. Similarly, in *Acosta Orellana v. CropLife Int'l*, 711 F.Supp.2d 81, 113-14 (D.D.C. 2010), there were no allegations that the defendants were actually working together. In the case at bar, there are such allegations.

*Graves v. United States*, 961 F.Supp.314, 320-21 (D.D.C. 1997), involved a conspiracy count that did not even allege the defendants agreed to do anything.  In the case at bar, HAF explicitly alleges an agreement.   (Complaint, ¶23) ("Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves to defame HAF in two articles published on AlJazeera.com.  Defendants then caused their respective organizations to

republish and provide alleged corroboration of the defamatory statements, resulting in further harm to HAF.").

In *Brady v. Livingood*, 360 F.Supp.2d 94, 104 (D.D.C.2004), cited by Prabhudoss, the plaintiff failed to include any allegations that the defendants there were acting in concert to achieve a shared goal.  Here, again, the Complaint contains explicit allegations on that element of the claim. (Complaint, ¶20) ("Defendants Viswanath, Rajagopal, Ahmed and Prabhudoss regularly work together to further their shared agenda, and control and/or operate a group of affiliated organizations – HfHR, IAMC and FIACONA – that have a history of coordinated attacks on HAF.").

*Zimmerman v. Al Jazeera America*, 246 F.Supp.3d 257, 287-88 (D.D.C. 2017), is inapplicable as well.  *Zimmerman* rejected an allegation that a non-journalist source had editorial control over a major media outlet's story as implausible.  However, in the case at bar, HAF is accusing the Defendants of conspiring with each other to cause the publication of the statements through Al Jazeera as well as other conduits.  This conspiracy is independent of any allegation about editorial control of Al Jazeera, because had that outlet declined to publish the statements, they could have shopped the defamatory claims to other outlets; the issue is that Defendants conspired to disseminate these statements and to carry out a campaign of defamation against HAF.  *Zimmerman* does not say that this kind of conspiracy is not actionable.  Moreover, it defies logic to suggest that no conspiracy existed because Defendants were successful in causing the Defamatory Statements to be published by Al Jazeera.

*Teltschik v. Williams & Jensen, PLLC*, 683 F.Supp.2d 33, 53 (D.D.C. 2010), cited by Prabhudoss, is distinguishable as it does not concern a conspiracy claim at all.

Finally, Prabhudoss' argument that pleadings on information and belief are prohibited is supported only by an unpublished case and flies in the face of controlling D.C. Circuit precedent. "Pleadings on information and belief are permitted when the necessary information lies within defendants' control." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279 n. 3 (D.C. Cir. 1994) (cleaned up). Obviously, Defendants did not advertise their conspiracy, and have control of much of the information about the specifics of when they met and what specifically they said to each other. Thus, pleading based on information and belief is clearly permitted under controlling D.C. Circuit authority.

### B. Because HAF Has Successfully Pleaded a Conspiracy, Prabhudoss Is Responsible for His Co-Conspirators' Actions

A bedrock of conspiracy law is the principle that the acts of the conspiracy are attributable to the co-conspirators. *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989). Discovery will show Prabhudoss' precise involvement in the publication of the statements, but HAF has adequately alleged that he did, indeed, cause their publication.

Thus, if HAF has pleaded a plausible claim for defamation with respect to any statement made by Prabhudoss, or any other co-conspirator, including the Coalition, the motion to dismiss must be denied.

### C. HAF has Pleaded that the Defamatory Statements are Capable of a Defamatory Meaning

"When confronted with a motion to dismiss a defamation claim, a court must evaluate whether a statement is capable of defamatory meaning." *Zimmerman v. Al Jazeera America*, 246 F.Supp.3d 257, 273 (D.D.C. 2017) (cleaned up). "To evaluate whether a statement is capable of defamatory meaning, courts employ a two-part framework that asks: (a) whether a communication is capable of bearing a particular meaning, and (b) whether that meaning is

defamatory. The jury then determines whether the communication was in fact so understood by its recipient." *Id.* (cleaned up). "It is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous." *Id.* (cleaned up).'

Under the *Zimmerman* test, the statements made by Defendants are capable of defamatory meanings. They portray HAF as an extremist, racist, ethnocentric organization with ties to bad actors in India and which misuses American taxpayer dollars. They claim that HAF is a Hindu right wing group. Specifically, Prabhudoss personally accused HAF of misusing taxpayer funds in a direct quotation in the Second Story. Such claims, when shown to be false at trial, will constitute defamation.

Prabhudoss argues that his own statement is not verifiable. First, this ignores that he is also responsible for the statements of his co-conspirators. But even as to his own statement-- "Government watchdog groups as well as human rights organizations need to take serious note of the misappropriation of COVID funding by Hindu supremacist groups [in] the United States"—this is a direct accusation that HAF (the purported "Hindu supremacist group" he is referring to) misappropriated COVID funding. That is a verifiable claim: it either did or did not happen. *See, e.g., Hutchinson v. Proxmire*, 443 U.S. 111 (1979) (holding recipient of government grant had cause of action against politician who accused him of waste and abuse of public funds).

Prabhudoss' cases are distinguishable. *Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001), held that labeling a political consultant as paranoid is not defamatory because paranoia has a popular, colloquial meaning and does not always refer to a medical condition.

*Bauman v. Butowsky*, 377 F.Supp.3d 1, 10–11 (D.D.C. 2019), involved a crisis manager referred to as "a hired guy who will say anything". This was clearly rhetorical hyperbole. Prabhudoss' statement of and concerning HAF was not a hyperbolic statement that nobody would take literally—he accused HAF of misusing COVID funds. *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 13–14 (1970), involving the figurative use of the word "blackmail" to mean putting pressure on someone rather than committing the legal crime of blackmail, is also an inapplicable rhetorical hyperbole case. *Farah v. Esquire Magazine*, 736 F.3d 528, 531 (D.C. Cir. 2013), is also distinguishable because it relied on the conclusion that no reader would understand the defendant to have made a factual claim.

*Armstrong v. Thompson*, 80 A.3d 177, 187 (D.C. 2013), involved an accusation that the plaintiff had "serious integrity violations", which could have numerous different interpretations and is unverifiable, unlike an accusation of misuse of taxpayer funds. *Rosen v. American Israel Public Affairs Committee*, 41 A.3d 1250, 1260 (D.C. 2012), which involved a claim that plaintiff "did not comport with" defendant's "standards", where defendant actually had no standards, is similarly inapposite.  *Deripaska v. Associated Press*, 282 F.Supp.3d 133, 147 (D.D.C. 2017), where the statement was that someone is worthy of investigation, was also too imprecise and oblique to be verified.  The same can be said for the "management problems" that the defendant in *Clemmons v. Academy for Educational Development*, 70 F.Supp.3d 282, 309 (D.D.C. 2014), accused the plaintiff of.

Prabhudoss also argues his statement cannot carry defamatory meaning because it contains the words "need to".  Prabhudoss cites no case that so holds, and this argument is inconsistent with the Supreme Court's holding in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990), that merely adding some prefatory words to a factual claim does not immunize it:  "If

a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth." *Id.*

Prabhudoss also argues that the statements of the conspirators are opinions based on disclosed facts. Where the defendants in a defamation case disclose the facts on which they base their opinion in the publication, the opinion can be held to be protected speech. *Abbas v. Foreign Policy Group*, 975 F. Supp. 2d 1, 16 (D.D.C. 2013). However, Prabhudoss relies on statements made by Al Jazeera reporters, who are not alleged to be conspirators, to provide the "factual disclosure". This is improper:  the issue is not what journalists said to surround the conspirators' quotes, but what the conspirators said. There is no material in the record that may be properly considered here that would show that any **conspirator** provided the factual disclosure necessary to immunize the defamatory statements as "opinion". What Al Jazeera may have done is irrelevant.

Nonetheless, the "disclosed facts" Prabhudoss rely on are themselves disputed, and HAF makes plausible allegations in its Complaint that they are false. Specifically, the Complaint pleads "HAF has no affiliation or ties to any organizations or political parties in the U.S. or abroad, and is not a member or subsidiary of Rashtriya Swayamsevak Sangh... or any alleged Hindu nationalist or supremacist group in India. HAF does not contribute any funds, whether COVID relief or otherwise, to in any way subvert minorities and/or spread Hindu nationalism and supremacy in India. HAF does not provide money to RSS or anyone affiliated with RSS. No HAF staff or board member, or any other person authorized to speak on behalf of the organization has made or been involved in making violent threats against Defendant Truschke." (Complaint, ¶36.) These plausible statements must be taken as true in this proceeding. Thus, the

"disclosed facts" that Prabhudoss purports to rely on as the supposed basis for his opinion are in fact themselves false and defamatory.[1]

Prabhudoss also argues that HAF is not entitled to plead that it did not misappropriate taxpayer funds because it did not attach its tax forms to its Complaint.  However, Prabhudoss provides no authority whatsoever that this is a pleading requirement in a defamation case.

Prabhudoss also says that his statement may have been true with respect to other US based Hindu organizations even if it was false as to HAF.  He cites no authority in support of this argument either, and it appears to simply be an attempt to repackage an "of and concerning" argument.  However, a statement can be "of and concerning" the plaintiff even if it does not mention the plaintiff specifically.  "To satisfy the 'of and concerning' element, it suffices that the statements at issue lead the listener to conclude that the speaker is referring to the plaintiff by description, even if the plaintiff is never named or is misnamed." *Croixland Properties Limited Partnership v. Corcoran*, 174 F.3d 213, 216 (D.C. Cir. 1999); *see, e.g., Bindrim v. Mitchell*, 155 Cal. Rptr. 29 (Cal. App. 1979) (affirming defamation judgment based on novel that never named plaintiff but was clearly about him).

### D. HAF has Pleaded a Plausible Claim that the Conspiracy's Statements were made with Actual Malice.

Assuming arguendo HAF is at least a limited purpose public figure, HAF has pleaded actual malice.  Actual malice is pleaded where the Complaint alleges that the defendants entertained serious doubts at the time the defamatory statements were made. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  Further, because HAF has alleged a conspiracy, Prabhudoss is not only responsible for any statements he made with actual malice, but also any

---

[1] Thus, *Smith v. Clinton*, 253 F.Supp.3d 222, 241 (D.D.C. 2017), which holds that a statement may lack defamatory meaning when its underlying factual premises are true, does not apply here.

defamatory statements made by any other member of the conspiracy which were made with actual malice.   Publicly available tax statements, which Prabhudoss' co-conspirators Ahmed, Viswanath and Rajagopal, the heads of 501(c)(3) organizations themselves (IAMC and HfHR), surely had knowledge of, show that HAF was not misusing taxpayer funds.   Thus, there were "obvious reasons to doubt", which amply satisfies the actual malice requirement. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).[2]

Prabhudoss misstates the actual malice standard as turning on subjective "intent". However, that is nowhere in the standard of *New York Times v. Sullivan*, 376 U.S. 254 (1964). An intentional falsehood is not required; all that is required is that the defendants had obvious reasons to doubt their statements when they made them.

Prabhudoss analyzes the actual malice issue as imposing an absurdly high requirement for plaintiffs:  essentially, Prabhudoss is arguing that it does not matter how readily available and publicized the information is that shows defendants' statements to be false, and it does not matter even if the defendants knew of its existence prior to publication. Merely clicking on a link on the Internet, Prabhudoss apparently claims, is "investigation" sufficient to overcome actual malice. That argument is directly contrary to the "obvious reasons to doubt" standard mandated by the U.S. Supreme Court in *Connaughton*.

While it is true that a mere failure to investigate does not by itself constitute reckless disregard of the truth, Prabhudoss does not cite to any case that endorses his extraordinary claim that speakers do not even have to consult published sources they are fully aware of before deciding to lie publicly about someone and destroy their reputation.   Clicking a link is obviously not conducting an investigation.

---

[2] Prabhudoss creatively argues that the "obvious reasons to doubt" rule is a "limited exception" to the governing standard.   This is incorrect:  it is the standard.

This is confirmed by one of the cases cited by Prabhudoss, *Jankovic v. International Crisis Group*, 822 F.3d 576, 590 (D.C. Cir. 2016).  In *Jankovic*, the D.C. Circuit discusses the "failure to investigate" rule, but then contrasts it with the following situation, which the court indicates **would** be sufficient to show actual malice:  "utter failure to examine evidence within easy reach or to make obvious contacts in an effort to confirm a story".  *Id.*  Thus, under controlling D.C. Circuit law, which Prabhudoss ignores, where evidence is "within easy reach" or contacts are "obvious", failure to consult such evidence or contacts **is** evidence of reckless disregard of the truth.  That, of course, is exactly what HAF alleges here:  that the information showing that HAF did not misuse taxpayer funds and did not have formal relationships with bad actors in India were within easy reach of Prabhudoss and his co-conspirators, especially Ahmed, Viswanath and Rajagopal (who run organizations that have to comply with the same legal disclosure requirements as HAF), and they deliberately disregarded the information.  That is a plausible pleading of actual malice.

The law cited by Prabhudoss is inapplicable.  *Lohrenz v. Donnelly*, 350 F.3d 1272, 1284 (D.C. Cir. 2003), holds that alleging generally that the defendant relied on a biased source and incomplete information is not sufficient, but that is not comparable to HAF's very specific theory of actual malice alleged here.

Next, Prabhudoss claims that HAF's financial disclosures are not sufficiently "conclusive" to negate the statements of Defendants.  However, that is a factual issue and ultimately, a jury question.  A motion to dismiss may only consider facts that are judicially noticeable, *i.e.,* that are entirely outside reasonable dispute. *Covad Communications Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005); Fed. R. Evid. 201(b)(2).  Prabhudoss cannot litigate this issue on a motion to dismiss.

**E.  HAF Need Not Allege Special Damages, But Has Adequately Alleged Them.**

Prabhudoss' arguments on damages fail for two reasons:  HAF has pleaded defamation *per se*, which is actionable without an allegation of special damages, and HAF has also pleaded loss of donations, which are cognizable as special damages.

"Defamation per se occurs when a defendant makes a statement so likely to cause degrading injury to the subject's reputation that proof of harm is not required to recover compensation." *Safex Foundation v. Safeth, Ltd.*, 2021 WL 1167266 at *12 (D.D.C. Mar. 26, 2021) (cleaned up).  "The essence of defamation per se is the publication of false statements imputing to a person a criminal offense; a loathsome disease; matter affecting adversely a person's fitness for trade, business, or profession; or serious sexual misconduct." *Id*. (citing *Carey v. Piphus*, 435 U.S. 247, 262 n. 18 (1978)).  In this case, the defamatory statements clearly impugn HAF's fitness for its trade, business, or profession- they smear HAF's reputation and portray HAF as an extremist organization that has formal relationships with bad actors in India and which misuses taxpayer funds.  Such accusations are poisonous for any organization that subsists on donations.  Thus, no allegation of special damages is required. *Washington Times Co. v. Bonner*, 86 F.2d 836, 844 (D.C. Cir. 1936).

Prabhudoss does not have an answer to this except to claim that defamation *per se* is a narrow doctrine.  That argument, however, does not provide any analysis as to why it does not apply to the facts alleged by HAF.  Prabhudoss should not be permitted to raise a new argument on this point in his reply papers.

Independently, even if there were a special damages pleading requirement, HAF has pleaded them. HAF has pleaded lost donations. (Complaint ¶¶ 6, 35, 44.)  Lost donations are cognizable damages for a non-profit plaintiff in a defamation case. *See, e.g., Hearts with Haiti,*

*Inc. v. Kendrick*, 2015 WL 4065185 at *3 (D. Maine Jul. 2, 2015) ("As a result of Mr. Kendrick's alleged defamatory statements, however, it claims that it has lost donations.  HWH may present evidence at trial to prove this allegation.").

Prabhudoss' arguments to the contrary are unavailing. *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002), is a product disparagement case that relies on a specific legal rule that holds that plaintiffs in that specific type of case must identify the contracts they lost.  *Id.* (stating the law "expressly requires that disparagement of property claims set forth 'the precise nature of the losses as well as the way in which the special damages resulted from the allegedly false publication'").  There is no case applying *Browning* to a defamation case brought by a nonprofit.

*Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018), was a classic case involving a boilerplate allegation in a complaint:  "[a]s a direct and proximate result of Defendant Clinton's statements, [Smith and Woods] have suffered pecuniary damage, as well as injury to reputation, impairment to standing in their community, personal humiliation, pain and suffering, and emotional distress". This was held to be insufficient.   However, HAF has not done this:  it alleges it lost donations. *Xereas v. Heiss*, 933 F. Supp. 2d 1, 19 (D.D.C. 2013), is distinguishable for the same reason:  the allegation there was that defendant "harmed Plaintiff, his personal and professional reputation and his future business prospects".  Again, in contrast, HAF has alleged specifically that it lost donations. *Szymkowicz v. Frisch*, 2020 WL 4432240, at *6 n.8 (D.D.C. Jul. 31, 2020), and *Franklin v. Pepco Holdings, Inc.* (PHI), 875 F. Supp. 2d 66, 75 (D.D.C. 2012), also involved generic allegations.  *Franklin* is further distinguishable in that the plaintiff there only alleged the risk of future harm, whereas HAF has alleged it has already lost donations.

**IV.** **SHOULD THE COURT GRANT THE MOTION, LEAVE TO AMEND SHOULD BE GRANTED**

    **A.** **Leave To Amend Is Required Under the Legal Standard**

Prabhudoss asks that his motion be granted with prejudice. This argument is highly improper and meritless under controlling D.C. Circuit precedent. Under *Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996), courts may deny leave to amend only under extremely limited circumstances. "It is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments or futility of amendment." *Id.* at 1208 (cleaned up). Prabhudoss has not even tried to make such a showing. Obviously, there has been no undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies. Nor is amendment futile. Many of Prabhudoss' claims involve failure to plead facts with specificity, the exact sort of alleged defect that was at issue in *Firestone*. The Court there held that such defects did not establish futility of amendment.

    **B.** **HAF Has Shown It Can Add Additional Relevant Facts To the Complaint**

Additionally, there is extensive additional evidence supporting the conspiracy allegations, which HAF has adduced in connection with the jurisdictional arguments in opposition to the other motions to dismiss. *See supra* Section II.D. HAF therefore clearly has additional facts that it may allege should the Court grant leave to amend. Amendment is in no sense futile. Leave to amend should, and must, be granted should the Court grant the motion to dismiss.

///

///

27

## V.   **CONCLUSION**

For the reasons stated herein, the Court should deny Prabhudoss' motion in its entirety.


Dated: October 22, 2021

Respectfully submitted,

By:    /s/ Ryan J. Stonerock

Ryan J. Stonerock
D.C. Bar 1632636
Dilan A. Esper
(admitted *pro hac vice*)
Jordan A. Gonzales
(admitted *pro hac vice*)
HARDER LLP
8383 Wilshire Blvd., Suite 526
Beverly Hills, CA 90211
Tel. (424) 203-1600
rstonerock@harderllp.com
desper@harderllp.com
jgonzales@harderllp.com

David C. Tobin
D.C. Bar 395959
TOBIN O'CONNOR & EWING
5335 Wisconsin Avenue NW, Suite 700
Washington, D.C. 20015
Tel. (202) 362-5900
dctobin@tobinoconnor.com