**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HINDU AMERICAN FOUNDATION,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| | : Case No. 1:21-cv-01268-APM |
| | : |
| **v.** | : Honorable Amit P. Mehta |
| | : |
| **SUNITA VISWANATH,** *et al.* | : |
| | : |
| **Defendants.** | : |
| | : |
| | : |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT BY**
**DEFENDANTS SUNITA VISWANATH AND RAJU RAJAGOPAL**

David A. Schulz
Thomas B. Sullivan
Jacquelyn N. Schell (admitted *pro hac vice*)
Joseph Slaughter
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Phone:  (212) 223-0200
Fax:  (212) 223-1942
schulzd@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com
slaughterj@ballardspahr.com

*Attorneys for Defendants Sunita Viswanath and*
*Raju Rajagopal*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.     HAF HAS FAILED TO ESTABLISH THAT THIS COURT HAS
       PERSONAL JURISDICTION OVER EITHER VISWANATH OR
       RAJAGOPAL ........................................................................................................ 2

       A.     The "More Than an Employee" Doctrine Does Not Establish Specific
              Jurisdiction over Viswanath or Rajagopal ............................................... 3

       B.     HAF Has Not Alleged Conspiracy Jurisdiction ...................................... 5

       C.     HAF Has Not Established Jurisdiction under Subsections (3) or (4) of
              the Long Arm Statute ............................................................................... 6

       D.     HAF Is Not Entitled to Jurisdictional Discovery .................................... 8

II.    HAF HAS FAILED TO STATE A CLAIM FOR DEFAMATION .................... 9

       A.     The Complaint Fails to Plausibly Allege Actual Malice ......................... 9

       B.     The Allegedly Defamatory Statements Are Non-Actionable Opinion ... 13

       C.     Viswanath's Alleged Statements Are Not Of and Concerning HAF ...... 18

       D.     HAF Has Failed to Allege Material Falsity ............................................. 19

       E.     HAF Has Not Alleged Special Damages .................................................. 19

III.   THE COMPLAINT FAILS TO ALLEGE AN ACTIONABLE
       CONSPIRACY ...................................................................................................... 20

IV.    HAF SHOULD NOT BE GRANTED LEAVE TO AMEND ............................. 24

CONCLUSION ................................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*3M Co. v. Boulter,*
   842 F. Supp. 2d 85 (D.D.C. 2012) ................................................................................6

*\*Arpaio v. Cottle,*
   No. 18-cv-02387 (APM), 2019 U.S. Dist. LEXIS 236331 (D.D.C. Dec. 3,
   2019) ..........................................................................................................................11

*\*Barr v. Clinton,*
   370 F.3d 1196 (D.C. Cir. 2004) ..........................................................................10, 22

*Bell Atl. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................................22

*Carter v. Carson,*
   241 F. Supp. 3d 191 (D.D.C. 2017) ..........................................................................21

*City of Harper Woods Emps. Ret. Sys. v. Olver,*
   589 F.3d 1292 (D.C. Cir. 2009) .................................................................................24

*Cockrum v. Donald J. Trump for President, Inc.,*
   319 F. Supp. 3d 158 (D.D.C. 2018) ............................................................................6

*Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.,*
   640 F.3d 369 (D.C. Cir. 2011) ...............................................................................5, 6

*Covington & Burling v. Int'l Mktg. & Rsch., Inc.,*
   No. 01-0004360, 2003 D.C. Super. LEXIS 29 (D.C. Super. Ct. Apr. 17, 2003) ......4

*Crane v. N.Y. Zoological Soc'y,*
   894 F.2d 454 (D.C. Cir. 1990) ....................................................................................2

*Croixland Props. Ltd. P'ship v. Corcoran,*
   174 F.3d 213 (D.C. Cir. 1999) ..................................................................................19

*Devincci Salah Hourani v. Mirtchev,*
   796 F.3d 1 (D.C. Cir. 2015) .......................................................................................23

*Dooley v. United Tech. Corp.,*
   786 F. Supp. 65 (D.D.C. 1992) ...................................................................................5

*\*Dowd v. Calabrese,*
   589 F. Supp. 1206 (D.D.C. 1984) .......................................................................22, 23

*DSMC, Inc. v. Convera Corp.,*
   479 F. Supp. 2d 68 (D.D.C. 2007) ............................................................................21

*Egiazaryan v. Zalmayev*,
    880 F. Supp. 2d 494 (S.D.N.Y. 2012).............................................................15

*EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*,
    246 F. Supp. 3d 52 (D.D.C. 2017) ..............................................................5, 6

*Erwin-Simpson v. Berhad*,
    985 F.3d 883 (D.C. Cir. 2021) .......................................................................8

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) .....................................................................16

*FC Inv. Grp. LC v. IFX Mkts., Ltd.*,
    529 F.3d 1087 (D.C. Cir. 2008).................................................................5, 8

*Fiorentine v. Sarton P.R., LLC*,
    486 F. Supp. 3d 377 (D.D.C. 2020) ...............................................................4

*Geier v. Conway, Homer & Chin-Caplan, P.C.*,
    983 F. Supp. 2d 22 (D.D.C. 2013) ................................................................23

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989).......................................................................................11

*Hearts with Haiti, Inc. v. Kendrick*,
    2:13-cv-00039-JAW, 2015 U.S. Dist. LEXIS 86213 (D. Me. July 2, 2015)...........................20

*Hoffman v. Wash. Post Co.*,
    433 F. Supp. 600 (D.D.C. 1977) .....................................................................9

*Howell v. Enter. Publ'g Co.*,
    920 N.E.2d 1 (Mass. 2010) ...........................................................................15

*Hustler Magazine v. Falwell*,
    485 U.S. 46 (1988)..................................................................................10, 22

*IMAPizza, LLC v. At Pizza Ltd.*,
    334 F. Supp. 3d 95 (D.D.C. 2018) ..................................................................4

*Jacobson v. Hofgard*,
    168 F. Supp. 3d 187 (D.D.C. 2016) ................................................................9

*Johnson v. Metro. Direct Prop. & Cas. Ins. Co.*,
    No. 18-1715 (JEB), 2019 U.S. Dist. LEXIS 5364 (D.D.C. Jan. 11, 2019) .................22, 23

*Khodorkovskaya v. Gay*,
    5 F.4th 80 (D.C. Cir. 2021) ..........................................................................16

*Klayman v. Segal*,
    783 A.2d 607 (D.C. 2001) ...................................................................................17

*\*Kopff v. Battaglia*,
    425 F. Supp. 2d 76 (D.D.C. 2006) ...............................................................3, 4, 5, 7

*Lewy v. S. Poverty Law Ctr., Inc.*,
    723 F. Supp. 2d 116 (D.D.C. 2010) .......................................................................3

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017) .................................................................................5

*McFarlane v. Esquire Magazine*,
    No. 92-0711 TAF, 1994 U.S. Dist. LEXIS 9497 (D.D.C. June 8, 1994) .................9

*Moldea v. N.Y. Times Co.*,
    22 F.3d 310 (D.C. Cir. 1994) ...............................................................................16

*Molock v. Whole Foods Mkt., Inc.*,
    297 F. Supp. 3d 114 (D.D.C. 2018) .......................................................................8

*Montes v. Janitorial Partners, Inc.*,
    128 F. Supp. 3d 188 (D.D.C. 2015) .......................................................................4

*Myers v. Plan Takoma, Inc.*,
    472 A.2d 44 (D.C. 1983) .....................................................................................14

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)............................................................................................12

*Nader v. de Toledano*,
    408 A.2d 31 (D.C. 1979) ..................................................................................9, 10

*Nanavati v. Burdette Tomlin Mem. Hosp.*,
    857 F.2d 96 (3d Cir. 1988)..................................................................................16

*\*Nunes v. WP Co.*,
    513 F. Supp. 3d 1 (D.D.C. 2020) .....................................................................21, 23

*Ogi Grp. Corp. v. Oil Projects Co. of the Ministry of Oil, Baghdad, Iraq (SCOP)*,
    No. 19-cv-2619 (APM), 2020 U.S. Dist. LEXIS 201480 (D.D.C. Oct. 29,
    2020) ...................................................................................................................2

*\*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984) ...................................................................16, 17, 18

*Peroutka v. Streng*,
    116 Md. App. 301 (Ct. Spec. App. 1997) ..........................................................15, 16

*Piccone v. Bartels*,
   785 F.3d 766 (1st Cir. 2015) ................................................................15

*Rishikoff v. Mortada*,
   70 F. Supp. 3d 8 (D.D.C. 2014) ............................................................14

*Second Amendment Found. v. U.S. Conf. of Mayors*,
   274 F.3d 521 (D.C. Cir. 2001) ..............................................................23

*\*Secord v. Cockburn*,
   747 F. Supp. 779 (D.D.C. 1990) .........................................................9, 10

*Triple Up, Ltd. v. Youku Tudou, Inc.*,
   No. 17-7033, 2018 U.S. App. LEXIS 19699 (D.C. Cir. July 17, 2018) ................7

*Walden v. Fiore*,
   571 U.S. 277 (2014) ..............................................................................5

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
   389 F.3d 1251 (D.C. Cir. 2004) .............................................................24

## Statutes

28 U.S.C. § 1332 ...........................................................................................3

D.C. Code § 13-423 ...............................................................................3, 5, 6, 7

## Other Authorities

Local Rule 15.1 ...........................................................................................24

Restatement (Second) of Torts § 566 ................................................................15

## PRELIMINARY STATEMENT

As defendants Sunita Viswanath and Raju Rajagopal (collectively, the "HfHR Defendants") demonstrated in their opening memorandum (the "HfHR Mem.", ECF No. 35), the Complaint of Plaintiff Hindu American Foundation ("HAF") should be dismissed for multiple, independent reasons:  (1) this Court lacks personal jurisdiction over Viswanath and Rajagopal, (2) HAF has not plausibly alleged that Viswanath and Rajagopal made any of the challenged statements with knowledge of their falsity, (3) their challenged statements constitute inactionable opinions and/or are not alleged to be substantially false, (4) some are not "of and concerning" HAF, and (5) HAF has not adequately alleged damages.

HAF's opposition ("Opp.", ECF No. 40), fails to rebut these arguments for two fundamental reasons.  First, it largely avoids engaging with the actual substance of the statements allegedly made by the HfHR Defendants.  HAF instead attempts to bootstrap broad allegations of "conspiracy" into a basis for treating 14 discrete statements made by five different individuals and organizations as spoken with one voice, to an unchanging audience, and conveying the same defamatory implications.  This is entirely improper.

Second, to the extent HAF attempts to defend its specific claims of defamation against Viswanath and Rajagopal, it fundamentally mischaracterizes the statements they are each alleged to have made.  HAF insists that statements by Viswanath and Rajagopal accuse it "of misusing taxpayer funds and having formal relationships with highly controversial, ostensibly anti-Muslim organizations in India."  Opp. at 36.  But their alleged statements say no such thing.  Nor, for that matter, do the alleged statements of other defendants.

These two errors permeate all of the arguments advanced in the Opposition, and once they are recognized and corrected, HAF's substantive defense of its Complaint readily falls

away.  HAF has no real answer to the multiple ways that its Complaint against the HfHR

Defendants is insufficient as a matter of law.  Moreover, notwithstanding the 100+ exhibits HAF

has submitted, it fails to demonstrate that personal jurisdiction exists over Viswanath and

Rajagopal, whose ties to the District are minimal and unrelated to the allegations in this case.

For all these reasons, as explained below, the Complaint should be dismissed against

Viswanath and Rajagopal.

## ARGUMENT

### I.   HAF HAS FAILED TO ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER EITHER VISWANATH OR RAJAGOPAL

HAF does not deny its burden to establish "a factual basis for the exercise of personal

jurisdiction over the defendant," *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir.

1990), and that, to do so, it "must allege specific facts on which personal jurisdiction can be

based; it cannot rely on conclusory allegations," *Ogi Grp. Corp. v. Oil Projects Co. of the

Ministry of Oil, Baghdad, Iraq (SCOP)*, No. 19-cv-2619 (APM), 2020 U.S. Dist. LEXIS 201480,

at *5 (D.D.C. Oct. 29, 2020); *see* Opp. at 15-16.  HAF concedes that this Court lacks general

jurisdiction over Viswanath or Rajagopal, but argues that specific jurisdiction exists under the

D.C. long-arm statute.  *See* Opp. at 15-16.  It does not.

HAF advances two theories for specific jurisdiction, but neither is supported by the facts

alleged.  First, HAF contends that Viswanath and Rajagopal are subject to jurisdiction based on

their roles at Hindus for Human Rights ("HfHR"), but HAF's claim arises out of statements

made by Viswanath and Rajagopal in their individual capacities, not out of any corporate speech

or action.  Alternately, HAF argues for conspiracy jurisdiction but, as explained below, it has not

alleged a cognizable conspiracy, much less personal jurisdiction arising out of such a conspiracy.

Ultimately, HAF fails to allege facts that would support the exercise of personal jurisdiction over either Viswanath or Rajagopal.  The Complaint includes but one conclusory allegation about all Defendants collectively, *see* Compl.  (ECF No. 1) ¶ 17, and the Opposition does not add a single allegation about activities in this District by Rajagopal or Viswanath individually, only about activities of HfHR, a non-party.  *See* Opp. at 2-3, 12, 14.  Tellingly, the Opposition makes clear that Plaintiff's real dispute is with the political advocacy of HfHR, but HAF has not sued HfHR for strategic reasons.[1]  It should not be allowed to omit HfHR from this lawsuit to maintain diversity and then rely on the contacts of HfHR with this District to claim personal jurisdiction over individuals who have no relevant connection to this District themselves.

### A.   The "More Than an Employee" Doctrine Does Not Establish Specific Jurisdiction over Viswanath or Rajagopal

HAF argues that this Court may exercise jurisdiction over Viswanath and Rajagopal under D.C. Code § 13-423(a)(1) because they are "more than employees" of HfHR and HfHR is "transacting business" in the District.  *See* Opp. 16-21.  Even if HAF were permitted to amend its Complaint to include these allegations, the theory fails because HAF's specific claims do not arise out of the transaction of business in the District by HfHR—or out of any alleged actions by HfHR itself.  Rather, the Complaint objects only to statements Viswanath and Rajagopal allegedly made in their individual capacity outside of the District of Columbia.

"'[A]s a general rule, courts cannot exert jurisdiction over individual corporate officers or employees just because the court has jurisdiction over the corporation.'"  *Lewy v. S. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 129 (D.D.C. 2010) (quoting *Kopff v. Battaglia*, 425 F. Supp. 2d

---

[1] HfHR is organized under the laws of the District.  If Plaintiff named HfHR as a defendant, it would destroy diversity jurisdiction.  28 U.S.C. § 1332.

76, 84 (D.D.C. 2006)).  A limited exception allows courts to exercise jurisdiction over corporate officers or executives (1) who are "more than mere employees," (2) who directed the activity at issue, and (3) where that activity is the subject of the claim at issue.  *See Covington & Burling v. Int'l Mktg. & Rsch., Inc.*, No. 01-0004360, 2003 D.C. Super. LEXIS 29, at *17 (D.C. Super. Ct. Apr. 17, 2003); *Montes v. Janitorial Partners, Inc.*, 128 F. Supp. 3d 188, 191 (D.D.C. 2015), *rev'd on other grounds*, 859 F.3d 1079 (D.C. Cir. 2017).  Plaintiffs asserting this exception must satisfy subsection (1) of the D.C. long-arm statute by showing that the officer, through the company he or she directs, "has purposefully engaged in some type of commercial or business-related activity directed at District residents" and that the claims "arose from" that activity.  *See, e.g.*, *Fiorentine v. Sarton P.R., LLC*, 486 F. Supp. 3d 377, 384 (D.D.C. 2020); *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 112 (D.D.C. 2018).  HAF makes no such showing.

HAF does contend that Viswanath and Rajagopal are "more than employees" of HfHR, but its claims for defamation do not arise out of any actions allegedly taken by HfHR.  The Complaint points only to statements made by Viswanath and Rajagopal individually.  The only acts alleged in the Complaint even arguably attributable to HfHR are the posting of links to the First and Second Reports on HfHR's website and twitter page.  Compl. ¶¶ 27, 31.  But as already explained, HfHR Mem. (ECF No. 35) at 38, the posting of a hyperlink is not republication for the purposes of defamation law, and HAF makes no allegation that the posting occurred in this District.  It is therefore irrelevant for purposes of personal jurisdiction whether Viswanath and Rajagopal are "more than employees" of HfHR.  There is no dispute that their statements were made outside of the District, and there is thus no basis for jurisdiction under subsection (1) regardless.  *See Kopff*, 425 F. Supp. 2d at 82 (in tort claim where "alleged conduct occurred

solely outside the borders of the District, the only potentially applicable long-arm provision is section 13-423(a)(4)" (citing D.C. Code § 13-423)).

Plaintiff asks the Court to exercise jurisdiction over Viswanath and Rajagopal based on statements made outside of the District, simply because they have roles in an organization with a presence in the District.  There is no authority for such jurisdiction under the long-arm statute, and haling Viswanath and Rajagopal into Court based on such attenuated contacts would surely offend due process.  *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 56 (D.C. Cir. 2017) (specific jurisdiction "requires an 'affiliation between the forum and the underlying controversy.'" (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014))).

### B.   HAF Has Not Alleged Conspiracy Jurisdiction

HAF alternatively argues that "conspiracy jurisdiction" lies in this District, but offers no answer to the explanation previously provided in Viswanath and Rajagopal's motion why this is not so.  *See* HfHR Mem. at 15.  To allege conspiracy jurisdiction, Plaintiff must allege facts—not simply "bald speculation" or "conclusory statement[s]"—sufficient to show "1) the existence of a civil conspiracy . . . , 2) the defendant's participation in the conspiracy, and 3) an overt act by a co-conspirator within the forum, subject to the long-arm statute, and in furtherance of the conspiracy."  *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1096-97 (D.C. Cir. 2008).

As this Court has previously explained, courts in this District "appl[y] the test for co-conspirator jurisdiction 'warily' in order 'to prevent a broad extension of long-arm jurisdiction.'" *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 90 (D.D.C. 2017) (quoting *Dooley v. United Tech. Corp.*, 786 F. Supp. 65, 78 (D.D.C. 1992), *abrogated on other grounds by FC Inv. Grp. LC*, 529 F.3d 1087).  Therefore, to establish conspiracy jurisdiction a plaintiff must "'plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.'"  *Id.* (quoting *Companhia Brasileira Carbureto de*

*Calicio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011)).  "This

particularity requirement is strictly enforced."  *Id*.  Moreover, to be consistent with due process

requirements, "a plaintiff who seeks to establish jurisdiction over a defendant based on a co-

conspirator's contacts must plead, at a minimum, that the defendant knew his co-conspirator was

carrying out acts in furtherance of the conspiracy in the forum."  *Id.* at 91; *accord Cockrum v.*

*Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 185-86 (D.D.C. 2018).

HAF has not alleged any of these required elements with particularity.  As discussed

below, pp. 20-23, it has not alleged the existence of a civil conspiracy.  This alone dooms

Plaintiff's efforts.  *See EIG*, 246 F. Supp. at 90 ("conspiracy jurisdiction . . . cannot exist unless

the Amended Complaint actually states a plausible claim of civil conspiracy").  Moreover,

despite insisting that it "has alleged and/or shown overt acts within the forum," Opp. at 21, HAF

does not actually allege any specific act by any Defendant that took place within the forum,

much less that Viswanath and Rajagopal had knowledge of that activity.  Instead, HAF alleges

that various non-party organizations and the non-party reporter who wrote the news stories at

issue are based in the District and points to "inter-connected relationships and [a] common

history," between the named defendants.  *See id.* at 20-21.  This is not enough to satisfy the

exacting standard for conspiracy jurisdiction.  *See, e.g.*, *3M Co. v. Boulter*, 842 F. Supp. 2d 85,

112 (D.D.C. 2012) (rejecting conclusory allegations of conspiracy jurisdiction).

### C.  HAF Has Not Established Jurisdiction under Subsections (3) or (4) of the Long Arm Statute

HAF incorrectly argues that the Court has jurisdiction under subsection (3), which creates

jurisdiction for claims "causing tortious injury in the District of Columbia by an act or omission

in the District of Columbia."  D.C. Code § 13-423(a)(3).  As Plaintiff has not alleged any act by

Viswanath or Rajagopal, or indeed an act by any Defendant, in the District, it cannot allege

jurisdiction under this subsection.  *See also Kopff*, 425 F. Supp. 2d at 81-82 (explaining that only

subsection (4) can provide a basis for tort claims arising out of actions outside the District).

HAF also contends that the Court has jurisdiction under subsection (4), which extends

jurisdiction based on tortious acts outside the District, causing harm inside the District, where the

defendant also "regularly does or solicits business, engages in any other persistent course of

conduct, or derives substantial revenue from goods used or consumed, or services rendered, in

the District of Columbia."  D.C. Code § 13-423(a)(4).  The requirement under subsection (4) that

a defendant "regularly" do or solicit business or engage in a "persistent course of conduct" is a

"plus factor" more restrictive than the constitutional floor.  *See Kopff*, 425 F. Supp. 2d at 82.

Here, HAF has not alleged any "persistent course of conduct" by either Viswanath or

Rajagopal that would allow the exercise of jurisdiction under this rule.  Instead, HAF again

points to HfHR, arguing that "as controlling officers of D.C.-based HfHR" Viswanath and

Rajagopal "'regularly do[]…business' and/or engage in a 'persistent course of conduct'" in the

District.  Opp. at 23-24.  These purely conclusory assertions are insufficient to establish personal

jurisdiction.  Plaintiff has not identified any actions by Viswanath and Rajagopal in the District,

explained why those actions amount to a "persistent course of conduct," or shown how actions

taken as corporate officers and unrelated to the claim at issue gives rise to jurisdiction.[2]  *See*

*Triple Up, Ltd. v. Youku Tudou, Inc.*, No. 17-7033, 2018 U.S. App. LEXIS 19699, at *4-6 (D.C.

Cir. July 17, 2018).

HAF ultimately attempts once again to save its claims by relying on its conspiracy

theory. Opp. at 25-26.  As noted above, conspiracy jurisdiction requires pleading with

---

[2] To the extent Plaintiff is attempting to rely on the "more than an employee" doctrine, it has not
identified any case in which this was extended to jurisdiction under subsection (4) or applied
where the individuals' corporate acts were unrelated to the claims at issue.

particularity the existence of a conspiracy, an overt act within the forum, and the out-of-forum co-conspirators' knowledge that that act would occur within the forum, which Plaintiff has not done. *See,* pp. 20-23 *infra.*

Simply put, HAF has not alleged any basis for the Court to exercise personal jurisdiction over Viswanath or Rajagopal.

### D.   HAF Is Not Entitled to Jurisdictional Discovery

HAF has not even articulated a valid basis for it to be permitted to proceed with jurisdictional discovery.  Courts have broad discretion to determine the scope of discovery and properly deny jurisdictional discovery where a plaintiff cannot show "what facts additional discovery could produce that would affect [the Court's] jurisdictional analysis." *Erwin-Simpson v. Berhad*, 985 F.3d 883, 892 (D.C. Cir. 2021).  A "request for jurisdictional discovery cannot be based on mere conjecture or speculation." *FC Inv. Grp.*, 529 F.3d at 1094. "Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, it [is] inappropriate to subject [defendants] to the burden and expense of discovery." *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 128 (D.D.C. 2018) (internal marks omitted).

HAF has neither articulated any viable theory of personal jurisdiction nor identified any specific information that could be generated through discovery that would support such a theory. Its proposed discovery seeks information about the organizations involved in the Coalition, their officers, their activities, and their interaction and is plainly a fishing expedition designed to harass these organizations.  The request for discovery should be denied, and Viswanath and Rajagopal's motion to dismiss for lack of personal jurisdiction granted.

II.     **HAF HAS FAILED TO STATE A CLAIM FOR DEFAMATION**

A.   **The Complaint Fails to Plausibly Allege Actual Malice**

In moving to dismiss Viswanath and Rajagopal demonstrated that: (1) HAF is a public figure for purposes of this libel litigation and must thus plausibly allege publication with actual malice to state a claim for defamation; and (2) the Complaint fails to meet this burden and must therefore be dismissed.  HfHR Mem. at 32-34.  HAF's Opposition offers no meaningful response, relying instead on a theory of actual malice that is both legally flawed and unsupported by the facts alleged.  *See generally* Opp. at 37-39.

First, HAF does not dispute that it is a public figure in this context and has thus conceded the point.  *See Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 208 (D.D.C. 2016) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.").

Second, HAF argues – without citation to any authority – that it need not allege actual malice with respect to Viswanath and Rajagopal individually because its Complaint "pleads a conspiracy and that each co-conspirator is responsible for the other co-conspirators' acts."  Opp. at 38.  This is flatly incorrect.  The law is clear that a public figure defamation plaintiff must plead and prove actual malice separately with respect to each named defendant.  *See, e.g.*, *Secord v. Cockburn*, 747 F. Supp. 779, 787 (D.D.C. 1990) ("Actual malice must be proved separately with respect to each defendant and cannot be imputed from one defendant to another absent an employer-employee relationship . . . ." (citations omitted)); *McFarlane v. Esquire Magazine*, No. 92-0711 TAF, 1994 U.S. Dist. LEXIS 9497, at *36 (D.D.C. June 8, 1994) (same), *aff'd*, 74 F.3d 1296 (D.C. Cir. 1996); *Hoffman v. Wash. Post Co.*, 433 F. Supp. 600, 604-05 (D.D.C. 1977) ("It is also clear that actual malice must be proven with regard to each defendant."), *aff'd without op.*, 578 F.2d 442 (D.C. Cir. 1978); *Nader v. de Toledano*, 408 A.2d 31, 41 (D.C. 1979) ("Publication

with actual malice may never be presumed but is a matter of proof as to each defendant by 'clear and convincing' evidence." (citations omitted)).  Based on this rule, this Court has rejected an argument that one defendant could be held "strictly liable as an aider and abettor for any actual malice possessed by" another defendant.  *Secord*, 747 F. Supp. at 788.

The law is also clear that a public figure plaintiff alleging injury from publication of a newsworthy matter may not avoid the obligation to plead knowledge of falsity by pleading a claim other than one for defamation.  *See, e.g. Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988); *Barr v. Clinton*, 370 F.3d 1196, 1202-03 (D.C. Cir. 2004).  Whether titled a claim for defamation or a civil conspiracy to defame, HAF must plausibly allege that Viswanath and Rajagopal knowingly made false statements, or at least had serious doubts about their truth.  *See* HfHR Mem. at 27-34.  The Complaint contains no such allegation.  It makes no factual allegation regarding Viswanath or Rajagopal's knowledge of the truth or falsity of the statements they are alleged to have made or to have been personally responsible for.[3]

Third, the theory offered by HAF that actual malice may nonetheless be inferred does not withstand scrutiny.  HAF argues that it is required as a non-profit corporation to file publicly accessible tax returns (IRS Form 990) that include information about its "actual finances and the fact that it was not misusing taxpayer funds and did not have the alleged connections to controversial organizations in India that he alleged at the time they made defamatory statements."  Opp. at 38.  HAF then postulates that, because Viswanath and Rajagopal sit on the

---

[3] Even if the other Defendants' intent could somehow be imputed to Viswanath and Rajagopal – and, for the reasons discussed above, it cannot – the Complaint makes no effort to plausibly plead actual malice with respect to any other specific named Defendant either, but rather relies on broad conclusory allegations directed to all of the Defendants as a group.  On this point and the other grounds for dismissal discussed below, Viswanath and Rajagopal  respectively incorporate by reference those arguments made in their co-Defendants' briefs with respect to the statements attributed to those Defendants.

board of a non-profit, and are thus theoretically familiar with the tax reporting requirements for such entities, "it is plausible that [they] were personally aware of the information" allegedly contained in Plaintiff's Form 990. *Id.*

This theory of actual malice fails on multiple levels. For one, the Complaint contains no allegation that Viswanath or Rajagopal (or any defendant) was *actually* aware of anything contained in HAF's 990s. *See* Compl. ¶¶ 37-40. Absent such an allegation, Plaintiff's theory amounts to nothing more than an attenuated claim that Viswanath and Rajagopal "fail[ed] to investigate," which HAF itself concedes is insufficient to establish actual malice. Opp. at 38; *see also Arpaio v. Cottle*, No. 18-cv-02387 (APM), 2019 U.S. Dist. LEXIS 236331, at *3-4 (D.D.C. Dec. 3, 2019) ("A 'failure to investigate will not alone support' the required degree of recklessness . . . ." (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989)).

Worse, HAF nowhere explains what information in the Form 990s contradicts any statement made by Viswanath or Rajagopal. Nor could it. Even if some of the statements at issue could be construed as implying that HAF had misused COVID relief funds, the 990s do not reveal information about its activities in the relevant time period. HAF points to its Form 990s "available on its website and on guidestar.org," but even a cursory examination of those resources shows that the most recent 990s available are only through the tax year ending on June 30, 2020.[4]  HAF received the PPP loans on May 1, 2020 and February 19, 2021.[5]  Therefore, its

---

[4] *See Financials*, HAF, https://www.hinduamerican.org/financials; HAF's 2019 IRS Form 990 (Feb. 15, 2021), https://bit.ly/3GNni5H.  Because they are specifically referred to in the Complaint, these websites are incorporated by reference therein and are therefore properly before the Court on a motion to dismiss.

[5] Alyssa Flowers et al., *Explore updated SBA data in businesses that received PPP loans*, Wash. Post (Oct. 4, 2021), https://www.washingtonpost.com/graphics/2020/business/sba-ppp-data/.

public 990s would reflect, at most, two months' worth of activity after receiving the first loan and no activity after receiving the second loan. Similarly, the 990s would not show whether HAF had ties to Hindu nationalist groups over the period immediately before the challenged statements were made.[6]

And even if the Complaint alleged that Viswanath and Rajagopal had actual knowledge of the content of its historical 990s (which it does not), and even if there was any information in the 990s to support Plaintiff's theory of how it has been defamed (and there is not), HAF *still* would not have plausibly alleged actual malice because, as explained in Section II.B below, it mischaracterizes what Viswanath and Rajagopal are alleged to have said – specifically, neither Viswanath nor Rajagopal accuse HAF of "misusing" PPP Funds or having "formal connections" to specific groups in India. *See* Compl. ¶¶ 25(a), 29(b); *see also* Opp. Ex. 2 (ECF No. 39-5) (Chart created by Plaintiff specifically identifying the alleged statements made by Viswanath and Rajagopal).

Finally, HAF argues that Viswanath and Rajagopal's alleged "ill will" towards it, "in conjunction with other evidence," can form the basis for a finding of actual malice. Opp. at 39. In so arguing, HAF (1) misconstrues its own allegations, which make no claim of "ill will" by Viswanath and Rajagopal, only that they have "political disagreements" with Plaintiff and with the current Indian government,[7] Compl. ¶ 4; (2) ignores the case law that such ill will, even if alleged, would not plausibly establish actual malice, *see* HfHR Mem. at 34; and (3) also ignores

---

[6] For this same reason, Plaintiff's argument that the Form 990s cannot be construed at "mere denials of the truth" because they are "government filings" is a non-sequitur. Opp. at 38-39.

[7] There is no legal basis for the proposition that allegations of "political differences" can support a finding of actual malice. Indeed, such a rule would direct undermine the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open" that underpins the actual malice rule itself. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

that there is actually no "other evidence" to conjoin with any argument about ill will, as explained above in this Section.

For all these reasons, HAF does not plausibly allege actual malice and its claims against Viswanath and Rajagopal must therefore be dismissed.

### B.   The Allegedly Defamatory Statements Are Non-Actionable Opinion

HAF's claims also fail because the statements allegedly made by Viswanath and Rajagopal are plainly opinion and therefore cannot ground a claim of defamation.  *See* HfHR Mem. at 17-24; 36-37.  HAF's opposition does not even attempt to analyze the individual statements it alleges Viswanath and Rajagopal to have made.  Instead, it addresses as a whole statements made by all Defendants in two separate articles and various social media posts, and claims they collectively convey two facts, that HAF (1) "misus[ed] taxpayer funds" and (2) has "formal relationships with highly controversial, ostensibly anti-Muslim organizations in India." Opp. at 36.  Viswanath and Rajagopal's statements cannot reasonably be construed to make either assertion and none of the opinion statements they offered are capable of being proven true or false.  *See* HfHR Mem. 16-24.

The Complaint alleges Rajagopal to have said that the "rise of HAF and other organisations linked with Hindutva has emboldened Hindu supremacist organizations in India, while also stifling the moderate Hindu voices here in the US."  Compl. ¶ 29(b)(i).  Nowhere does that statement say anything about the use of government funds or accuse HAF of having "formal ties" to controversial Indian organizations.  HAF does not contest that statements describing its links to or sympathy for the *ideologies* of Hindu supremacy or Islamophobia are nonactionable opinion.  *See* Opp. at 32; HfHR Mem. at 19-20.  The alleged statement by Rajagopal says nothing more, and thus should be dismissed.

The Complaint similarly fails to allege that Viswanath ever said that HAF was misusing government funds.  Viswanath was cited in the First Article as expressing *concern* that, in some undefined way, taxpayer funds *might* "end up furthering hate campaigns" and stating her opinion that organizations that perpetuate Islamophobia should not receive federal funds.  Opp at 11. HAF's opposition oddly contends that the words "concern" and "might" in her statement "were apparently inserted by a news reporter not alleged to be part of the conspiracy, to characterize Viswanath's statements," and therefore should not be considered in this analysis.  *Id.* at 34 n.3. HAF asks the Court to speculate on what Viswanath might have said and ignore the statement that both the First Article and the Complaint attribute to her.  *See* Compl. ¶ 25(a); *see also* Opp. at 11 (referring to this statement as one "by Viswanath").  The effort is entirely off base.  HAF cannot salvage a claim by disputing its own Complaint.  *See Rishikoff v. Mortada*, 70 F. Supp. 3d 8, 14 (D.D.C. 2014).  Moreover, in considering whether a challenged statement is actionable, the full context must be considered.  *See Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 47 (D.C. 1983). Even if the description of Viswanath expressing concern is the reporter's paraphrase, that context, provided as the introduction to all of Viswanath's statements at issue, still demonstrates that she was expressing an opinion.

The Complaint similarly fails to allege that Viswanath accused HAF of having a formal relationship with any Indian organization.[8]  Rather, it alleges that she spoke rhetorically about links between HAF and Hindutva groups.  As already demonstrated, HfHR Mem. at 19-21, statements characterizing Plaintiff's connections to such groups are unverifiable in at least two separate ways.  First, terms describing a group as hateful are inherently subjective.  *See* HfHR

---

[8] Plaintiff only contends that whether "HAF has connections to hate groups in India" is verifiable, again not arguing that Viswanath may be held liable for statements merely talking about HAF's own views on Hindutva.  Opp. at 32.

Mem. at 19-20.  Second, "terms of relation and association" have loose, debatable meanings and "render[] the relationships they describe insusceptible of proof of truth or falsity."  *See id.* at 21 (quoting *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 512 (S.D.N.Y. 2012)).  Plaintiff has no real response to either defect in its claim and, in fact, ignores the second error completely.

As demonstrated, the alleged statements by Viswanath and Rajagopal are also nonactionable as opinions based on disclosed facts.  *See* HfHR Mem. at 22-24.  Plaintiff claims that Viswanath and Rajagopal cannot rely on the doctrine of an opinion based on disclosed facts because the facts in the article were not disclosed by them, but rather by the reporter who wrote the article.  *See* Opp. at 32-33.[9]  HAF notably cites no cases for this proposition.[10]  The law is to the contrary.  A statement may be nonactionable opinion even when "the maker of the comment *does not himself express the alleged facts* on which he bases the expression of opinion." Restatement (Second) of Torts § 566 cmt. b (emphasis added).  As the Restatement explains:

> This happens when both parties to the communication know the facts or assume their existence and the comment is clearly based on those assumed facts and does not imply the existence of other facts in order to justify the comment.  The assumption of the facts may come about *because someone else has stated them* or because they were assumed by both parties as a result of their notoriety or otherwise.

*Id.* (emphasis added).  Courts have repeatedly granted judgment for the defendant in cases involving opinions based on disclosed facts where those facts were disclosed by someone other than the defendant.  *See, e.g.*, *Peroutka v. Streng*, 116 Md. App. 301, 325-26 (Ct. Spec. App.

---

[9] While the reporter, Raqib Hammed Naik, is not a named defendant in this case, HAF asserts that the "Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves *and with non-party Naik* to defame" them.  Opp. at 10 (emphasis added).

[10] The only case cited by HAF in this section of its brief, *Piccone v. Bartels*, 785 F.3d 766 (1st Cir. 2015), merely states that the speaker himself can be the source of the disclosed facts.  It does not support that proposition that facts disclosed by others are insufficient.  Indeed, the case cited by *Piccone* for this point, *Howell v. Enter. Publ'g Co.*, 920 N.E.2d 1 (Mass. 2010), states that the court is "guided by the Restatement (Second) of Torts § 566," *id.* at 27.

1997) (persons to whom allegedly defamatory statement were directed "knew the underlying

facts . . . giving rise to [the speaker's] opinion"); *Nanavati v. Burdette Tomlin Mem. Hosp.*, 857

F.2d 96, 107 (3d Cir. 1988) (reporters already "knew of the facts" underlying source's

statements).

        Nor are the disclosed facts genuinely in dispute, despite HAF's objections.  *See* Opp. at

33.  As shown in Viswanath and Rajagopal's moving papers, the First Report (and the Second

Report via a hyperlink) presents the following facts:

> (1)  HAF received significant federal loans;
>
> (2)  HAF was co-founded by a former activist with the American counterpart of an Indian group affiliated with a Hindu nationalist organization;
>
> (3)  HAF's board of directors includes the son of an executive of a Hindu nationalist organization;
>
> (4)  HAF received funding from a group that also funds groups tied to Hindu supremacism;, and
>
> (5)  HAF has lobbied to deflect criticism of Prime Minister Modi.

*See* HfHR Mem. at 22, 24.  In purporting to dispute these facts, HAF points to a paragraph in its

Complaint that does not actually address any of them; it disputes only the conclusions the

Reports draw from these facts.  *See* Opp. at 33 (citing Compl. ¶ 36).  HAF is entitled to its

opinion, but Viswanath and Rajagopal are also entitled to theirs.

        Finally, HAF argues that the *Ollman* test is "likely outdated" because it "predates the

U.S. Supreme Court's decision in *Milkovich*."  Opp. at 34.  The D.C. Circuit has repeatedly

confirmed, however, that *Milkovich* did not "abandon[] the principle of looking to the context in

which speech appears."  *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 314 (D.C. Cir. 1994); *see, e.g.*,

*Khodorkovskaya v. Gay*, 5 F.4th 80, 85 (D.C. Cir. 2021); *Farah v. Esquire Magazine*, 736 F.3d

528, 535 (D.C. Cir. 2013).  Whether or not this Court must conduct a specific analysis of the

*Ollman* factors, it must still consider both the context in which the statements at issue appeared and the larger social context.  *See* HfHR Mem. at 21-24.

In this respect, HAF argues that the immediate context in which the statements appear "makes the impact of their defamatory content stronger" because they are not presented with mitigating information or information that "make clear that these statements are just contested beliefs."  Opp. at 34.  As with many other arguments, HAF cites no case law in support of its claim that a person expressing an opinion must also state that others disagree.

HAF's claim that mitigating information was not presented is also untrue.  The First Report discloses that the reporter asked each of the organizations cited "for their comments on receiving the US federal fund for COVID relief."  *See* Decl. of Thomas B. Sullivan (ECF No. 35-3), Ex. 1 at 4.  Spokespeople for two of the organizations are then quoted, giving their explanation that they would spend funds only as allowed by federal law, would not allocate them to any activity outside of the United States, and would use the money to pay their employees. These statements appear immediately before Viswanath's concerns were outlined.  *Id.*  Notably, HAF was also asked to comment and declined to do so.  *Id.*  It cannot now be heard to complain that its view was not included.

More broadly, HAF argues, again without citation to any authority, that the "context" here must be provided by "statements of the conspirators," not that "factual context of the entire news articles."  Opp. at 34 n.3.  In fact, "the concept of context requires that the court examine the statement in its totality in the context in which it was uttered or published.  The court must consider all the words used, not merely a particular phrase or sentence."  *Klayman v. Segal*, 783 A.2d 607, 614 (D.C. 2001) (internal marks omitted).  Indeed, the court was clear in *Ollman* that context is specifically not about "the challenged language itself" but rather "the full context of

the statement -- the entire article or column, for example -- inasmuch as other, unchallenged

language surrounding the allegedly defamatory statement will influence the average reader's

readiness to infer that a particular statement has factual content." *Ollman v. Evans*, 750 F.2d

970, 979 (D.C. Cir. 1984); *see id.* at 982 ("the degree to which a statement is 'laden with factual

content' or can be read to imply facts depends upon the article or column, taken as a whole, of

which the statement is a part").

Moreover, HAF's claims against Viswanath and Rajagopal still amount to nonactionable

opinion even if they could somehow be held responsible for the statements allegedly made by

others. *See* HfHR Mem. at 36-37.  Like portions of Viswanath's statements, many of the

statements allegedly made by others are clearly phrased as expressions of concern about what

might occur in the future with respect to HAF's use of COVID funding. *See* Compl.

¶¶ 26(a)(i)(1), 28, 29(a)(i), 29(c)(i), 29(d)(vi), 31(a).  Others contain indefinite and unverifiable

language about the extent of HAF's ideological ties to Hindu supremacist groups. *See id.* ¶¶ 24,

26(a)(i), 29(a)(i), 29(c)(i), 29(d)(i), 29(d)(ii), 29(d)(iii), 30, 31(a), 34.

In sum, the statements at issue in this action all constitute non-actionable opinion and

HAF's claims should be dismissed for this reason.

### C.  Viswanath's Alleged Statements Are Not Of and Concerning HAF

In disputing Viswanath's showing that the statements allegedly attributable to her are not

"of and concerning" HAF, *see* HfHR Mem. at 25-26, Plaintiff fails to engage with the actual

substance of either the alleged statements or Viswanath's legal argument.  HAF instead attacks a

straw man by arguing that "the 'of and concerning' requirement does not require that a

defamatory statement [to] mention the plaintiff, but merely needs to be discussing the plaintiff."

Opp. at 36.  That is completely beside the point.  Viswanath did not contend that HAF has no

claim because she did not specifically name it, but rather that her alleged statements fail to

satisfy the requirement that the statements must "lead the listener to conclude that the speaker is referring to the plaintiff by description." *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 216 (D.C. Cir. 1999). The motion by the HfHR Defendants demonstrates that Viswanath's alleged statements cannot reasonably be construed as "of and concerning" HAF. HfHR Mem. at 26. HAF has no real response.

### D. HAF Has Failed to Allege Material Falsity

HAF similarly has no meaningful response to the showing by Viswanath and Rajagopal that the Complaint fails to allege that their statements are materially false. HfHR Mem. at 24-25. HAF makes no argument and cites no legal authority to establish the sufficiency of its pleading in this regard. HAF simply repeats that Viswanath and Rajagopal accused it of "misus[ing] taxpayer funds" and having "formal relationships with highly controversial . . . organizations in India," Opp. at 36, which is not what they are alleged to have said. *See* HfHR Mem. at 25; *supra* pp 13-14. HAF does not deny that it is sympathetic to and shares connections with groups accused of promoting Hindu supremacy in India, the concern expressed in the challenged statements.

### E. HAF Has Not Alleged Special Damages

HAF attempts to rebut Viswanath and Rajagopal's demonstration that damages are not adequately alleged, HfHR Mem. at 39-40, by asserting that it alleges defamation *per se*, and thus need not plead damages, and in any event has plead damages in the form of lost donations. Opp. at 39-40. Both arguments are incorrect.

HAF's defamation *per se* argument is that "the defamatory statements clearly impugn HAF's fitness for its trade, business, or profession" because the statements claim it has "formal relationships with bad actors in India" and "misuses taxpayer funds." Opp. at 40. But, as noted above, pp. 13-14, that is not what the Defendants are alleged to have said. Further, HAF's

"donations" argument does nothing to explain how the Complaint's supporting allegations are anything other than conclusions bereft of any actual factual basis.[11]  HAF cites a case for the ostensible proposition that lost donations can be a cognizable form of defamation injury, Opp. at 40 (citing *Hearts with Haiti, Inc. v. Kendrick*, 2:13-cv-00039-JAW, 2015 U.S. Dist. LEXIS 86213, at *3 (D. Me. July 2, 2015)), but that case addressed a motion *in limine*, had nothing to do with the pleading standards for defamation, and was not construing D.C. law.  It also *does not contain* the language HAF attributes to it, nor make any other holding regarding the viability of lost donations as defamation damages.

## III.    THE COMPLAINT FAILS TO ALLEGE AN ACTIONABLE CONSPIRACY

HAF spills much ink in its Opposition attempting to establish a conspiracy between all the Defendants based on purported evidence that they "routinely work together as allies and coalition partners against HAF as a shared adversary."  Opp. at 29.  Its theory of conspiracy is entirely misdirected.  HAF appears to hope that, by focusing on the alleged conspiracy, it can amalgamate all of the Defendants and all of the allegedly defamatory statements into one overarching claim, and thereby absolve itself of the need to satisfy the elements of a defamation claim with respect to each statement and each Defendant.  *See, e.g.*, Opp. at 30 (arguing that "if [HAF] has pleaded a plausible claim for defamation with respect to any statement made by [any Defendant], the motion to dismiss must be denied" with respect to *all* Defendants).  As previously shown, that is not how the law of defamation works.  *See* HfHR Mem. at 40-41.

---

[11] Not only has HAF failed to identify any specific damages resulting from the allegedly defamatory statements, its recent public statements indicate that it views this entire lawsuit as a fundraising and promotional opportunity for the organization's benefit.  *See HAF Year End Event*, HAF https://www.hinduamerican.org/events/year-end-event-2021 (HAF webpage promoting its "year-end event" entitled "How to Sue Your Haters").

As an initial matter, HAF attempts to bolster its case for conspiracy with dozens of exhibits that purportedly demonstrate the existence of and motivations behind Defendants' alleged conspiracy.  *See generally* Opp. at 5-11, 28-30.  None of this material appears in the Complaint, and it could thus be disregarded on this motion to dismiss.[12]  It is well settled that "a plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss." *Carter v. Carson*, 241 F. Supp. 3d 191, 197 (D.D.C. 2017).

Regardless, HAF puts the cart before the horse in trying to establish a conspiracy claim, and then using the alleged conspiracy in an attempt to salvage its deficient defamation claims against Viswanath and Rajagopal.  Opp. at 30 (arguing that, because of the alleged conspiracy, "Viswanath and Rajagopal are not only responsible for the statements that they personally published, but for the publications made by their co-conspirators as well.").  This gets the law exactly backwards.  As Viswanath and Rajagopal established in their motion, there can be no conspiracy without an underlying defamation claim.  HfHR Mem. at 40; *see also Nunes v. WP Co.*, 513 F. Supp. 3d 1, 9 (D.D.C. 2020) ("Because Plaintiff's underlying defamation claim fails, so does his other tort claim based upon the same allegedly defamatory speech." (internal marks omitted)), *appeal dismissed*, No. 20-7121, slip op. (D.C. Cir. Sept. 22, 2021).

As discussed above, the law is well-settled that a plaintiff cannot circumvent the First Amendment-based safeguards that limit the reach of the defamation tort simply by including "tag along" claims based on the same underlying conduct.  To the contrary, those protections apply to *any* claim seeking to recover damages for reputational injury arising from protected speech,

---

[12] Plaintiff correctly points out that it may properly submit affidavits and documentary evidence to support its position regarding the Court's personal jurisdiction over Viswanath and Rajagopal. Opp. at 15-16.  It cannot do so to bolster its substantive conspiracy claim.  *See, e.g.*, *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (rejecting plaintiff's attempt to broaden basis of conspiracy claims and thereby amend its complaint in opposition briefing).

regardless of how those claims are styled.  *See, e.g.*, *Falwell*, 485 U.S. at 51-57 (1988); *cf. Barr*, 370 F.3d at 1203 (First Amendment protections applied to claim for conspiracy under Section 1985 of the Civil Rights Act because holding otherwise "would allow public officials to recast defamation claims . . . as section 1985(1) conspiracies, thus choking off the breathing space necessary to safeguard the freedoms protected by the First Amendment." (internal marks omitted)).  Simply alleging that Viswanath and Rajagopal were members of a conspiracy does not absolve HAF of its obligation to allege the elements of a defamation claim against them.  It has not and cannot do so.

Finally, even setting aside these threshold issues with HAF's conspiracy claim, the Complaint fails to adequately allege a conspiracy of any kind.  It alleges only that Defendants "regularly work together to further their shared agenda," and that the Defendants all engaged in a "strategic and coordinated effort" by posting links to the Al-Jazeera Reports on their Twitter pages or organizational websites.  Compl. ¶¶ 20, 23, 27, 28, 30-33; *see also* Opp. at 29.  Even if the allegations newly included in the Opposition are considered, HAF cannot meet its burden. Identifying similar behavior amongst a group of Defendants does not, as a matter of law, suffice to allege an actionable conspiracy.  *See, e.g.*, *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007) ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Johnson v. Metro. Direct Prop. & Cas. Ins. Co.*, No. 18-1715 (JEB), 2019 U.S. Dist. LEXIS 5364, at *10-12 (D.D.C. Jan. 11, 2019) (dismissing "conspiracy to defame" claim based on allegations of "parallel conduct").  This is particularly true in the context of an alleged conspiracy to defame, where "sensitive First Amendment" considerations require "proof not

merely of a joint purpose to publish, but specific evidence of a joint purpose to defame." *Dowd v. Calabrese*, 589 F. Supp. 1206, 1214 (D.D.C. 1984).

Beneath its rhetoric of conspiracy, HAF's Complaint fails to allege any *actual facts* pointing to an agreement between Defendants to defame HAF.  At most, it alleges that Defendants share similar political views, interact with one another on account of those views, and were all quoted in and/or posted links to two Al-Jazeera Reports concerning COVID relief funding.  Compl. ¶¶ 4, 23.  There are no allegations regarding "any event, conversation, or document showing that there was an agreement" to defame HAF.  *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 42-43 (D.D.C. 2013); *cf. Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524-25 (D.C. Cir. 2001) (finding conspiracy allegations inadequate though plaintiff was able to point to a specific meeting among mayors where strategies for suing gun manufacturers were discussed).  Conclusory allegations that "Defendants knowingly, willfully and intentionally conspired, agreed and coordinated amongst themselves to defame" HAF via the Al-Jazeera Reports, Compl. ¶ 23, are insufficient.[13]  Courts in this Circuit regularly dismiss conspiracy claims, based on defamation or otherwise, premised on such conclusory allegations.  *See, e.g.*, *Devincci Salah Hourani v. Mirtchev*, 796 F.3d 1, 16-17 (D.C. Cir. 2015) (no conspiracy to defame where complaint failed to allege an agreement to do so); *Nunes*, 513 F. Supp. 3d at 9; *Johnson*, 2019 U.S. Dist. LEXIS 5364, at *10-12.  This Court should do the same.

---

[13] Notably, neither the Complaint nor the Opposition provide any explanation of how Defendants exercised editorial control over the Al-Jazeera Reports such that they could effectuate the alleged "conspiracy," or why, if HAF was the target of the conspiracy, four other organizations are mentioned before it in the First Report, *see* T. Sullivan Decl., Ex. 1 at 1-3.  Nor do they explain why, if Al-Jazeera or the author of the Reports, Mr. Naik, were a part of the conspiracy, they have not been included among the Defendants.  *See* footnote 1, *supra*.

## IV.     HAF SHOULD NOT BE GRANTED LEAVE TO AMEND

Apparently recognizing errors in its position, HAF argues that it should be given leave to amend if this motion is granted.  *See* Opp. at 40-41.  Of course, "'a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute' a motion to amend."[14]  *City of Harper Woods Emps. Ret. Sys. v. Olver*, 589 F.3d 1292, 1304 (D.C. Cir. 2009) (quoting *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004)).  HAF has attempted to identify the additional facts it would include in an amended complaint on the issues of personal jurisdiction and the alleged conspiracy, but for the reasons stated above and in Viswanath and Rajagopal's initial motion papers these are insufficient to establish jurisdiction or to salvage a claim that could survive dismissal.  Notably, HAF has not suggested that any additional facts exist that would support an argument that Viswanath and Rajagopal made the statements at issue with actual malice or that their statements were verifiable.  This Court should deny the request for leave to amend.

## **CONCLUSION**

For the foregoing reasons and those in Viswanath and Rajagopal's opening brief, the Court should dismiss the Complaint, with prejudice, and grant such other relief as it finds just and proper.

Dated:  November 12, 2021

---

[14] Under Local Rule 15.1, a motion for leave to amend must attached the proposed amended pleading.

Respectfully submitted,

**BALLARD SPAHR LLP**

    */s/ Thomas B. Sullivan*
David A. Schulz
Thomas B. Sullivan
Jacquelyn N. Schell (admitted *pro hac vice*)
Joseph Slaughter
1675 Broadway, 19th Floor
New York, NY 10019
Phone:  (212) 223-0200
Fax:  (212) 223-1942
schulzd@ballardspahr.com
sullivant@ballardspahr.com
schellj@ballardspahr.com
slaughterj@ballardspahr.com

*Attorneys for Defendants Sunita Viswanath and
Raju Rajagopal*