# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HINDU AMERICAN FOUNDATION,

                  Plaintiff,

          v.

SUNITA VISWANATH, RAJU RAJAGOPAL,
RASHEED AHMED, JOHN PRABHUDOSS, AND
AUDREY TRUSCHKE,

                  Defendants.

Civ. No. 21-cv-01268 (APM)

**Oral Argument Requested**

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# MOTION OF DEFENDANT JOHN PRABHUDOSS TO DISMISS
# THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, New York 10019
Telephone: (646) 837-5151

Dated: New York, New York
      November 12, 2021

*Attorneys for Defendant John Prabhudoss*

## TABLE OF CONTENTS

**INTRODUCTION**.............................................................................................................1

**ARGUMENT**....................................................................................................................3

I.     HAF HAS FAILED TO ALLEGE A CIVIL CONSPIRACY.............................3

II.    HAF HAS FAILED TO ALLEGE A DEFAMATION CLAIM .......................8

     A.     HAF Has Failed to Allege Falsity...........................................................8

     B.     HAF Has Failed to Allege Actual Malice............................................13

     C.     HAF Has Failed to Allege Special Damages or Defamation Per Se ....18

III.    LEAVE TO AMEND SHOULD BE DENIED .................................................20

**CONCLUSION** ................................................................................................................21

## **TABLE OF AUTHORITIES**

**Cases**

*Abbas v. Foreign Policy Grp.*,
   975 F. Supp. 2d 1 (D.D.C. 2013) ............................................................................. 12

*Acosta Orellana v. CropLife Intern.*,
   711 F. Supp. 2d 81 (D.D.C. 2010) ................................................................... *passim*

*Arpaio v. Cottle*,
   404 F. Supp. 3d 80 (D.D.C. 2019) ........................................................................... 17

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 6

*Black Lives Matter D.C. v. Trump*,
   2021 WL 2530722 (D.D.C. June 21, 2021) ............................................................... 5

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ................................................................................. 19

*Bush v. Butler*,
   521 F. Supp. 2d 63 (D.D.C. 2007) ............................................................................. 3

*BYD Company, Ltd. v. Alliance for Am. Mfg.*,
   2021 WL 3472386 (D.D.C. Aug. 6, 2021) ................................................... 14, 15, 17

*Croixland Properties Ltd. P'ship v. Corcoran*,
   174 F.3d 213 (D.C. Cir. 1999) ................................................................................... 9

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
   749 A.2d 724 (D.C. 2000) ......................................................................................... 3

*Francis v. Perez*,
   256 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................. 20

*Freedom Watch, Inc. v. Google, Inc.*,
   368 F. Supp. 3d 30 (D.D.C. 2019) ............................................................................. 5

*Greenbelt Coop. Publ'g Assn. v. Bresler*,
   398 U.S. 6 (1970) ...................................................................................................... 11

*Harte-Hanks Commcn's v. Connaughton*,
   491 U.S. 657 (1989) .................................................................................................. 15

*Hearts with Haiti, Inc. v. Kendrick*,
    2015 WL 4065185 (D. Me. July 2, 2015)................................................................. 18

*Hourani v. Mirtchev*,
    796 F.3d 1 (D.C. Cir. 2015 ........................................................................................ 6

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979).................................................................................................. 11

*Jankovic v. Int'l Crisis Grp.*,
    822 F.3d 576 (D.C. Cir. 2016) ........................................................................... 15, 16

*Johnson v. Metropolitan Direct Prop. & Casualty Ins. Co.*,
    2019 WL 176851 (D.D.C. Jan. 11, 2009) .......................................................... 4, 5, 6

*Knowlton v. United States*,
    111 F. Supp. 2d 1 (D.D.C. 1999) ............................................................................... 5

*Kurd v. Republic of Turkey*,
    374 F. Supp. 3d 37 (D.D.C. 2019) .......................................................................... 5, 6

*Lohrenz v. Donnelly*,
    350 F.3d 1272 (D.C. Cir. 2003) ........................................................................... 14, 15

*Mattiaccio v. DHA Group, Inc.*,
    20 F. Supp. 3d 220 (D.D.C. 2014) ............................................................................. 3

*McBryde v. Amoco Oil Co.*,
    404 A.2d 200 (D.C. 1979) .......................................................................................... 3

*McFarlane v. Sheridan Square Press, Inc.*,
    91 F.3d 1501 (D.C. Cir. 1996) ............................................................................ 13, 16

*McMullen v. Synchrony Bank.*,
    164 F. Supp. 3d 77, 97 (D.D.C. 2016) ........................................................................ 4

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)...................................................................................................... 10

*Moldea v. N.Y. Times Co..*,
    22 F.3d 310 (D.C. Cir. 1994) .................................................................................... 12

*NAACP v. USPS*,
    496 F. Supp. 3d 1 (D.D.C. 2020) .............................................................................. 18

*Nunes v. WP Company LLC*,
   513 F. Supp. 3d 1 (D.D.C. 2020) ............................................................................ 20

*Ollman v. Evans*,
   750 F.2d 970 (D.C. Cir. 1984) ................................................................................ 12

*Safex Foundation v. Safeth, Ltd.*,
   2021 WL 1167266 (D.D.C. Mar. 26, 2021) ............................................................. 19

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ................................................................................................ 13

*Tah v. Global Witness Publ'g*,
   991 F.3d 231 (D.C. Cir. 2021) ................................................................................ 17

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) ................................................................................ 13

*Trudeau v. FTC*,
   456 F.3d 178 (D.C. Cir. 2006) .................................................................................. 5

*Weyrich v. New Republic, Inc.*,
   235 F.3d 617 (D.C. Cir. 2001) ................................................................................ 11

*White v. United States*,
   791 F. Supp. 2d 156 (D.D.C. 2011) .......................................................................... 3

*Zimmerman v. Al Jazeera Am.*,
   246 F. Supp. 3d 257 (D.D.C. 2017) ...................................................................... 7, 8

## **Other Authorities**

Fed. R. Civ. P. 15 .......................................................................................................... 20

## INTRODUCTION

Plaintiff Hindu American Foundation's (HAF's) opposition brief (ECF No. 41) ("Opp. Br.") fails to rehabilitate the core deficiencies in its claims against Defendant John Prabhudoss. Despite introducing over 5 pages of additional facts not included in its Complaint, along with 100 new exhibits that it asserts should be subject to judicial notice, HAF's core argument remains the same.  It asks this Court to find that Prabhudoss's expression of his viewpoint that federal COVID-19 relief funds should not go to Hindu supremacist organizations—a commentary on published facts, which HAF does not dispute—was actually a factual assertion specific to HAF capable of being defamatory.  And it asks this Court to conclude HAF has plausibly alleged Prabhudoss spoke with actual malice because certain tax documents showing HAF's financial contributions were linked on HAF's website.

HAF's opposition brief relies on *ipse dixit* assertions that it has met its pleading burden, but it fails to identify any support in law or in fact.  At bottom, HAF cannot escape the reality that Prabhudoss's statements were exactly the type of value-laden opinion statements that this Court has held to be beyond the purview of a defamation claim.  Nor, try as it might, can HAF evade the black letter law that the actual malice requirement cannot be supplanted by a bare assertion that Prabhudoss should have investigated before speaking.  HAF's tax documents, attached for the first time to its opposition brief, do not prove otherwise, and are insufficient as a matter of law to disprove or raise an inference of recklessness with respect to Prabhudoss's statements.

Recognizing that its minimal allegations about Prabhudoss do not state a claim, HAF strains to leverage its unsubstantiated civil conspiracy claim to impute to Prabhudoss the statements of HAF's *other* long-time ideological opponents.  But the allegations HAF proffers to plead a conspiracy are even less plausible.  Rather than presenting any evidence of a

conspiratorial agreement, HAF asks this Court to infer an agreement based solely on the history of public political disagreement between HAF, Prabhudoss, and other of HAF's adversaries. Worse still, the vast majority of HAF's conspiracy allegations are not even targeted at Prabhudoss himself.  The only facts specific to Prabhudoss are his role at FIACONA and his work with the India Working Group of the International Religious Freedom Roundtable.  Rather than alleging anything remotely probative about Prabhudoss personally, HAF instead relies on a daisy-chain theory based on Prabhudoss's involvement on the board of FIACONA, which according to HAF is a "member" of the Coalition to Stop Genocide in some unalleged and unspecified capacity.  But HAF's naked insistence that any and all statements made by its political detractors were the result of a conspiracy has long been foreclosed by this Court.

The deficiencies in HAF's Complaint cannot be remedied through amendment.  By their nature, Prabhudoss's statements are not actionable in defamation as a matter of law; no additional factual allegations could change what he said.  In any event, the allegations HAF proffers certainly would not rescue its defective claims against Prabhudoss.  Indeed, the fatal weaknesses in HAF's pleading—both the new facts on which it now seeks to rely and the original Complaint—make clear that its lawsuit is a transparent attempt to enlist the courts to punish HAF's ideological adversaries for criticizing it in public.  Defamation law is not so capacious as to accommodate this dangerous ploy.

The Complaint should be dismissed with prejudice.

## ARGUMENT

### I.   HAF HAS FAILED TO ALLEGE A CIVIL CONSPIRACY

HAF bears the burden of alleging "factual support" sufficient to infer the existence of a conspiratorial agreement: "the essential element of a conspiracy claim." *Acosta Orellana v. CropLife Intern.*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010).  Instead of attempting to meet that burden, HAF seeks to circumvent it—first, by erroneously asserting that its conspiracy claim "should be construed liberally" (Opp. Br. 14), and second, by reframing its conclusory allegations as "indirect evidence" of a conspiracy to survive dismissal (Opp. Br. 14–16).  Neither argument has merit, and HAF's conspiracy claim should be dismissed.

Neither this Court nor the D.C. Court of Appeals has ever held that civil conspiracy claims must be held to a "liberal[]" pleading standard.  HAF cites *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000), but that case is inapposite.  The decision, applying D.C. procedural law, merely applies the broad principle that motions to dismiss are construed in the light most favorable to the plaintiff.  *See id.* (citing *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C. 1979)).  The D.C. Court of Appeals did not hold in *Executive Sandwich Shoppe* that civil conspiracy claims are subject to a relaxed pleading standard, and Prabhudoss is not aware of any case that has.

To the contrary, courts interpreting D.C. law have consistently held that plaintiffs bringing such claims must allege the existence of "events, conversations, or documents indicating there was an agreement between the defendants."  *Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007); *see also, e.g.*, *Mattiaccio v. DHA Group, Inc.*, 20 F. Supp. 3d 220, 230 (D.D.C. 2014) (same); *White v. United States*, 791 F. Supp. 2d 156, 162 (D.D.C. 2011) (same).  Moreover, the factual content of a conspiracy claim must explain "when or how such an agreement was brokered, [and] *how the [particular defendant] specifically, as opposed to all the*

*named defendants generally, were parties to an agreement.*"  *Acosta Orellana*, 711 F. Supp. 2d at 113–14 (emphasis added).  Where a conspiracy claim fails to meet these requirements, well-established precedent dictates the proper outcome: "[M]ere allegations that Defendants agreed amongst themselves . . . will not defeat a motion to dismiss."  *Johnson v. Metropolitan Direct Prop. & Casualty Ins. Co.*, 2019 WL 176851, at *4 (D.D.C. Jan. 11, 2009) (quoting *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 97 (D.D.C. 2016)) (internal quotation marks omitted).

Here, HAF effectively concedes that it has not proffered direct evidence of a conspiratorial agreement.  It asserts that, instead, it has alleged or can allege (through amendment) sufficient *indirect* evidence to support an inference of conspiracy.  (Opp. Br. 14.)  The particular "indirect evidence" that HAF apparently has in mind, however, falls far short of pleading a claim.

HAF's "indirect evidence" cited in its complaint and identified in its opposition brief boils down to the following: (i) Defendants—lumped together, without distinguishing Prabhudoss specifically—"closely and routinely work together as allies and coalition partners against HAF as a shared adversary"; and (ii) Defendants control "affiliated organizations" such as "HfHR, IAMC, and FIACONA."  (Opp. Br. 15 (citing Compl. ¶¶ 2–5, 23–24, 27, 28–52).)  These allegations are exactly the kind that courts routinely regard as insufficient to state a conspiracy claim.[1]

---

[1] HAF also identifies a number of conclusory allegations that do not even purport to be "facts." *See, e.g.*, Opp. Br. 15 ("HAF has alleged that the co-conspirators agreed to make and/or cause the Defamatory Statements, including but not limited to, the statements that appeared in the two stories at issue, and to disseminate, republish, and/or amplify those statements on their own platforms and/or through the platforms of their network of D.C.-based organizations."); Opp. Br. 15 (Defendants "caused the Coalition to publish the false and defamatory statements that were attributed to the Coalition in the stories"); Opp. Br. 16 ("HAF contends that Prabhudoss agreed with other co-conspirators to disseminate defamatory statements of and concerning HAF and to destroy HAF's reputation."). It goes without saying that this Court "need not accept as

Start with HAF's allegation that Defendants (either personally or through the organizations with which they are associated) "routinely work together" to further their shared political and ideological viewpoints.  (Opp. Br. 15.)  By HAF's logic, *any* time a group of people communicated to advance shared political or ideological viewpoints, they could be accused of entering into a conspiracy.  This Court has foreclosed such an expansive understanding of what constitutes indirect proof of a conspiracy.  *See, e.g.*, *Black Lives Matter D.C. v. Trump*, 2021 WL 2530722, at *12 (D.D.C. June 21, 2021) ("[m]erely alleging that the [defendants] communicated, without alleging any details of those communications that suggest an unlawful agreement," insufficient to state a claim of conspiratorial agreement); *cf. also Knowlton v. United States*, 111 F. Supp. 2d 1, 9 (D.D.C. 1999) ("mere fact" that defendants worked together "not sufficient to raise a triable issue of agreement").

HAF adds that Defendants regarded HAF as a "shared adversary," and (reading the complaint and opposition charitably) had a common goal of criticizing HAF.  (Opp. Br. 15.)  So what?  Even if a plaintiff pleads that each alleged co-conspirator acted similarly, dismissal is warranted if that plaintiff "fail[s] to show how the [defendants'] purportedly parallel actions *stem from a conspiracy*."  *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 37 (D.D.C. 2019) (emphasis added).

That putative conspirators could have had a "common goal" is not enough.  *See Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 52, 62 (D.D.C. 2019).  In *Kurd*, for example, this Court dismissed a claim of civil conspiracy based on "indirect evidence" comprised of significantly stronger facts:  There, in an attempt to plead that Turkish security forces and American civilians

---

true . . . legal conclusion[s], even if couched as a factual allegation."  *Johnson*, 2019 WL 176851, at *4 (citing *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)) (internal quotation marks omitted).

conspired to attack them, a group of protester plaintiffs alleged that the defendants "broke through the police cordon in a coordinated fashion, that Defendants stood together shouting similar slurs, that [one of the Turkish security officers] called on the [civilian] group to line up in the street, and that Defendants had the same goal in attacking the protesters." *Id.* at 52 (internal quotation marks omitted).  Although these acts were directed against the same plaintiff at the same time, this Court declined to find indirect evidence of a conspiracy, holding that "Plaintiffs merely pled 'parallel conduct that could just as well be independent action.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

So too here.  The actual facts that HAF alleges are entirely consistent with—and just as plausibly explained by—the fact (which HAF also alleges) that each Defendant has a long-standing political disagreement with HAF.  Indeed, HAF's conspiracy claim runs headlong into the bedrock principle articulated in *Twombly* that pleading an agreement requires more than "parallel conduct that could just as well be independent action." 550 U.S. at 557.  HAF asserts that *Twombly* was limited to the antitrust context (Opp. Br. 16), but *Twombly* has consistently been cited by this Court to dismiss civil conspiracy allegations, including alleged conspiracies to defame.  *See, e.g.*, *Hourani v. Mirtchev*, 796 F.3d 1, 16 (D.C. Cir. 2015); *Johnson*, 2019 WL 176851, at *5; *see also Acosta Orellana*, 711 F. Supp. 2d at 114 ("Under *Twombly*, a plaintiff asserting conspiracy liability is required to plead more than mere parallel conduct that could just as well be independent action, but must make allegations placed in a context that raise a suggestion of a preceding agreement.") (quotation marks and alteration omitted)).[2]

---

[2] HAF also attempts to distinguish the other precedent cited in Prabhudoss's opening brief, but does so by assuming the conclusion it has the burden to prove, which is that the Complaint contains factual allegations in support of a conspiratorial agreement.  (*See* Opp. Br. 16–17.)

Even more fundamentally, HAF declines to address its failure to allege that *Prabhudoss in particular* entered into the alleged conspiracy to defame HAF. *See Acosta Orellana*, 711 F. Supp. 2d at 113. Instead, HAF's Complaint—and indeed, its opposition to Prabhudoss's motion to dismiss—recycles the same group-pleading arguments, which treat all Defendants as effectively interchangeable. (*See* Opp. Br. 15.) Nowhere does HAF actually provide "any indication of when or how such an agreement was brokered" with Prabhudoss specifically. *Acosta Orellana*, 711 F. Supp. 2d at 113. This flaw is fatal. *See id.* at 114 (citing cases rejecting conspiracy claim at pleading stage for failure to plead such facts).

As HAF does not deny, the only facts in its Complaint that actually pertain to Prabhudoss simply reflect his political advocacy work—specifically, that he is a co-chair of the India Working Group of the International Religious Freedom Roundtable (Compl. ¶ 20), and the chairman of FIACONA (Compl. ¶ 11). Based on these facts alone, HAF asks this Court to entertain the attenuated inference that because FIACONA is "affiliated with" IAMC and HfHR, and a member of the Coalition to Stop Genocide in India (Compl. ¶ 20), Prabhudoss should *personally* be liable for any statements made by any of those organizations.[3] The converse, according to HAF's logic, would also be true—not only those organizations, but anyone affiliated with those organizations, would be accountable for Prabhudoss's statements, including

---

[3] Notably, HAF abandons any suggestion that Prabhudoss was liable for the Al Jazeera articles themselves. In response to Prabhudoss's argument that he did not have any "level of responsibility" over the writing, editing, or publication of the Al Jazeera articles, *Zimmerman v. Al Jazeera Am.*, 246 F. Supp. 3d 257, 286 (D.D.C. 2017), HAF suggests that the object of the conspiracy was merely to publish Defendants' statements *within* the Al Jazeera articles. *See* Opp. Br. 17 (arguing that Defendants "could have shopped the defamatory claims to other outlets"). Thus, there is no dispute in this case as to whether Defendants can be held responsible for the Al Jazeera articles themselves, as distinguished from Defendants' quoted statements.

his tweets.  The implications of such a broad reading of conspiracy law on legitimate political

discourse are troubling and far-reaching.  Given that there are *zero* factual allegations that

Prabhudoss had any control over such organizations or vice versa, *see Zimmerman*, 246 F. Supp.

3d at 286, this Court should decline to adopt such an alarming proposition.

HAF's conspiracy claim against Prabhudoss should be dismissed.

## II.   HAF HAS FAILED TO ALLEGE A DEFAMATION CLAIM

Because its civil conspiracy claim must be dismissed, HAF's common law defamation

claim against Prabhudoss can only rely on Prabhudoss's own statements, specifically his tweet

and his statement in the Second Story.  HAF does not contest that Prabhudoss's satirical tweet

conveyed a subjective belief that could not be falsified and was not capable of defamatory

meaning.  (*See* Memorandum of Law in Support of Defendant John Prabhudoss's Motion to

Dismiss (ECF No. 34) ("Opening Br.") 17–20.)  With respect to Prabhudoss's statement in the

Second Story—the lone statement that HAF actually contends supports its claims against

Prabhudoss—HAF's opposition fails to rebut several fatal pleading deficiencies in its Complaint,

each of which independently warrants dismissal.

### A.   HAF Has Failed to Allege Falsity

HAF's Complaint contains no explanation as to what was "provably false" about

Prabhudoss's statement in the Second Story—*i.e.*, whether the allegedly false implication was

that HAF had connections to Hindu supremacist organizations, or that HAF received COVID-19

relief funds but shouldn't have, or that *other* organizations with connections to the Indian far-

right received COVID-19 relief funds.  (*See* Opening Br. 14–16.)  In its opposition brief, HAF

narrows its nebulous allegations into a single theory of falsity: Prabhudoss supposedly made a

"direct accusation" that HAF "misappropriated COVID funding." (Opp. Br. 19.) That theory of falsity fails for five reasons.

 *First*, HAF has yet to provide any basis for believing that Prabhudoss's statement in the Second Story was "of or concerning" HAF specifically, rather than being a general statement about the disbursement of COVID funds to Hindu supremacist groups writ large. (*See* Opening Br. A-1 ("Government watchdog groups as well as human rights organisations need to take serious note of the misappropriation of COVID funding by Hindu supremacist groups [in] the United States.").) HAF largely ignores this issue, repeating the conclusory assertion that Prabhudoss "personally accused HAF of misusing taxpayer funds in a direct quotation in the Second Story." (Opp. Br. 19–20.) In one remarkable example, HAF quotes Prabhudoss's statement in the Second Story—which refers to "Hindu supremacist groups in the United States"—but inserts *its own parenthetical* that HAF was the "Hindu supremacist group" that Prabhudoss meant. (*See* Opp. Br. 19.) The actual language Prabhudoss used does not support such an inference.

 Undeterred, HAF cites *Croixland Properties Ltd. P'ship v. Corcoran*, 174 F.3d 213, 216 (D.C. Cir. 1999), for the proposition that "[t]o satisfy the 'of and concerning' element, it suffices that the statements at issue lead the listener to conclude that the speaker is referring to the plaintiff by description." (Opp. Br. 22.) In *Croixland*, the D.C. Circuit held that a statement that referred to the "owners" of a racetrack could be defamatory as to the unspecified owners because there was "no ambiguity that a particular entity owns the track." 174 F.3d at 217. But whereas the defendant in *Croixland* unambiguously referred to the owners, rendering immaterial whether the speaker *named* those owners, here nothing in Prabhudoss's statement even points to HAF

specifically, as opposed to the several other organizations discussed in the Al Jazeera article. *Croixland* is therefore inapposite.

**Second**, the opposition fails to grapple with the fact that Prabhudoss's statement regarding what government monitoring agencies "need to" do is an unfalsifiable, and therefore non-actionable, opinion.  HAF's only response is that the words "need to" are merely "prefatory words" that do not immunize Prabhudoss's statement from liability.  (Opp. Br. 20–21.)  But HAF's citation of *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990), proves why this is a non-response.  In *Milkovich*, the Supreme Court explained that a speaker may not simply add the phrase, "in my opinion," to an assertion of fact ("Jones is a liar") in order to render the entire statement an opinion.  497 U.S. at 18–19.  But here, unlike the example given in *Milkovich*, the core assertion of Prabhudoss's statement is a subjective assessment of government monitoring priorities; the assertion about what federal agencies "need to" do is the *thesis* of his statement, not a tack-on.  There is no expression or implication of underlying fact that could be provably false.

**Third**, and relatedly, HAF's attempt to identify a verifiably false fact lurking in Prabhudoss's political statement fails.  HAF claims that Prabhudoss asserted HAF "misappropriated COVID funding," which HAF argues is a "verifiable claim: it either did or did not happen."  (Opp. Br. 19.)  Putting aside that Prabhudoss never mentioned HAF in his statement, HAF fails to rebut the fact that, in the context here, the reference to "misappropriat[ion]" signified nothing more than a value judgment about whichever organizations Prabhudoss had in mind.  (*See* Opening Br. 15–16.)  While the term "misappropriate" can refer to theft or embezzlement under the law, Prabhudoss was not accusing any COVID-19 relief fund recipient of literally stealing money from the U.S. Small Business

Administration.  Rather, like the defendant in *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624–

25 (D.C. Cir. 2001), who called the plaintiff "paranoid" to describe his political dogmatism, and

the defendant in *Greenbelt Coop. Publ'g Ass'n. v. Bresler*, 398 U.S. 6, 13–14 (1970), who used

the term "blackmail" to describe the plaintiff's negotiating tactics, Prabhudoss used the term

"misappropriate" to state his opinion that it was wrong as a matter of policy for organizations

like HAF to receive COVID-19 relief funds.[4]  That assertion is not, as HAF contends, a fact that

this Court can verify "either did or did not happen."  (Opp. Br. 19.)

> HAF attempts to dismiss *Greenbelt* as a "rhetorical hyperbole" case, but *Greenbelt* is not

so limited.  Its requirement that words be evaluated in "the context in which [they are] used"

directly controls here, and undercuts HAF's hyper-literal reading of Prabhudoss's verbiage.  398

U.S. at 13–14.  HAF also argues that *Weyrich* is distinguishable, but rather than explaining why

that is so, it simply describes the facts of the case in a single sentence.  (*See* Opp. Br. 19.)  In any

event, HAF's characterization of *Weyrich* as holding that courts should consider the "colloquial

meaning" of a sentence in evaluating a defamation claim is exactly why Prabhudoss's statement

regarding "misappropriation" cannot and should not be read in a technical, legal sense.  (*See*

Opp. Br. 19.)

> ***Fourth***, to the extent Prabhudoss's statement implied any factual content at all, that

content consisted of the ties between the organizations discussed in the Al-Jazeera article and

Hindu supremacist groups (however "Hindu supremacism" might be defined).  Yet, as discussed

*infra* at p.16, HAF does not contest the numerous factual bases for concluding that it had ties to

---

[4] HAF cites *Hutchinson v. Proxmire*, 443 U.S. 111 (1979), for the proposition that accusations of "waste" and "abuse of public funds" are actionable in defamation.  (Opp. Br. 19.)  Its omission of a pincite is telling: *Hutchinson* concerned only whether defamatory statements were protected under the Speech and Debate Clause, and did not contain any discussion of falsity.  See 443 U.S. at 133.

RSS, or that *other* COVID relief fund recipients could have had financial or ideological ties to Hindu supremacist groups.  (*See also* Opening Br. 4–5.)  HAF restricts itself to disputing particular points—such as whether it gave money to a given organization—while ignoring the other ties that the Al Jazeera articles detailed.  Thus, whatever facts Prabhudoss's statement could possibly be found to imply are not facts HAF disputes.  Indeed, and tellingly, HAF has not sued Al Jazeera for defamation despite the ties between HAF and Hindu nationalism that it reported.

*Fifth*, Prabhudoss's statement in the Second Story was based on disclosed facts—statements made by Al Jazeera reporters—and are thus protected under *Abbas v. Foreign Policy Grp.*, 975 F. Supp. 2d 1, 16 (D.D.C. 2013).  *See also Moldea v. N.Y. Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994).  HAF's response is a complete non-sequitur: it suggests that because the Al Jazeera reporters "are not alleged to be conspirators," the fact that Prabhudoss's statement reflected his interpretation of the facts reported in the First Story is "irrelevant."  (Opp. Br. 21.)  Neither the language nor logic of *Abbas* suggests that the disclosed facts upon which an opinion is based must be facts stated by conspirators.

As *Abbas* makes clear, the reason why statements based on disclosed facts are immunized from defamation suits is because the availability of the "source material . . . puts the reader on notice that the [statement] is one of opinion."  975 F. Supp. 2d at 16 (citing *Ollman v. Evans*, 750 F.2d 970, 987–88 (D.C. Cir. 1984)).  That is true regardless of whether the disclosed facts were presented by the defendant himself, as in *Abbas*, or by a non-conspirator publication as the basis for Prabhudoss's commentary, as here.  Prabhudoss's statement is a reaction on what the proper response *should* be in light of a set of facts presented in the First Story.  If anything, the fact that

an objective non-party not alleged to be a conspirator—an international news organization—provided the basis for Prabhudoss's statement cuts against HAF's position.

For all these reasons and those stated in Prabhudoss's opening brief, HAF has failed to properly plead that Prabhudoss's statements are false or capable of defamatory meaning.

### B.      HAF Has Failed to Allege Actual Malice

HAF does not contest that it should be considered a public figure for purposes of evaluating its defamation claim, and thus concedes that it is required to plead actual malice in order to survive dismissal.  (Opp. Br. 22.)  Nevertheless, HAF argues that it has met this requirement because "[p]ublicly available tax statements, which Prabhudoss's co-conspirators Ahmed, Viswanath, and Rajagopal, the heads of 503(c)(3) organizations themselves (IAMC and HfFR) surely had knowledge of, show that HAF was not misusing taxpayer funds."  (Opp. Br. 23.)  According to HAF, this fact standing alone "amply satisfies the actual malice requirement." (Opp. Br. 23.)

Not so.  As discussed in Prabhudoss's opening brief, this Court has consistently required defamation plaintiffs to allege facts sufficient to infer that the defendant *subjectively* entertained doubts about the truth of their statements prior to publication.  *See* Opening Br. 22–23; *see also, e.g.*, *Tavoulareas v. Piro*, 817 F.2d 762, 789 (D.C. Cir. 1987) ("It is well established that the 'serious doubt' standard requires a showing of subjective doubt by the defendant." (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968))).  HAF attempts to lower the bar by arguing that the "actual malice" standard is not a question of subjective intent (Opp. Br. 23), but that proposition directly contradicts controlling precedent.  *See Tavoulareas*, 817 F.2d at 789; *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (D.C. Cir. 1996) ("The actual malice standard is subjective; the plaintiff must prove that the defendant actually entertained a serious doubt.").  Here, HAF does not even attempt to allege facts that Prabhudoss had

13

knowledge of these "publicly available tax statements," arguing instead that *other Defendants*, specifically Ahmed, Viswanath, and Rajagopal, should have known about these statements because they were "heads of 503(c)(3) organizations."[5]  (Opp. Br. 22.)  That assertion, which would not even satisfy the subjective inquiry as to the others, is plainly deficient as to Prabhudoss.

Instead of attempting to proffer any direct evidence of subjective intent, HAF hinges the viability of its Complaint on a narrow exception to the general rule of pleading actual malice, according to which a court will infer actual malice if a publisher has "obvious reason to doubt" the truth of his statement.  (Opp. Br. 23–24.)  HAF argues that because its financial statements were publicly available, and because Prabhudoss would merely have to "click[] on a link on the Internet" to access its financial statements, his "failure to consult such evidence is . . . reckless disregard of the truth."  (Opp. Br. 23.)  Crucially, HAF does not allege that at the time he commented to the Al Jazeera reporter for the Second Story, Prabhudoss was given any reason to doubt the truth of what he was saying.  HAF's argument thus boils down to an assertion that the *mere existence* of its financial statements, which putatively contradict Prabhudoss's statement in the Second Story, should give rise to an inference of actual malice.

---

[5] Despite not alleging any facts to support the implication, HAF implies that Prabhudoss knew about HAF's financial statements prior to making his statement in the Second Story.  *See* Opp. Br. at 23 (asserting that Prabhudoss "knew of [the financial statements'] existence prior to publication"); Opp. Br. at 23 ("Prabhudoss does not cite to any case that endorses his extraordinary claim that speakers do not have to consult published sources they are fully aware of because deciding to lie publicly about someone and destroy their reputation.").  These glib assertions are not pleaded in the Complaint and entirely unsupported in fact.  They should be ignored.  *See BYD Company, Ltd. v. Alliance for Am. Mfg.*, 2021 WL 3472386, at *7 (D.D.C. Aug. 6, 2021) ("baldly assert[ing]" that defendant had knowledge of information that putatively undercut his statement insufficient to state actual malice claim in the absence of "*facts* showing [the plaintiff's] awareness" (emphasis added)).

The D.C. Circuit squarely rejected such an argument in *Lohrenz v. Donnelly*, 350 F.3d 1272, 1284 (D.C. Cir. 2003).  In *Lohrenz*, the plaintiff brought a defamation suit against a defendant who called her an "unqualified," "substandard," and "incompetent" combat pilot.  *Id.* at 1277, 1284.  Like HAF, the plaintiff in *Lohrenz* asserted that in light of the existence of "credible evidence" that she was *not* an incompetent combat pilot, the court should infer actual malice on the part of the defendants.  *Id.* at 1284.  The D.C. Circuit disagreed, holding that the "mere proffering of purportedly credible evidence that contradicts a publisher's story" is not sufficient to give rise to an inference of actual malice.  *Id.*; *see also BYD Company*, 2021 WL 3472386, at *7 (statement that company was "controlled by the Chinese government" not made with actual malice, despite "extensive information online that establishes that [the company] has private ownership and is not state-owned," because plaintiff "alleges no facts showing the [defendant's] awareness of [the company]'s purported private ownership").

HAF next attempts to cobble together a theory through which Prabhudoss was obligated to *search* for HAF's tax documents.  But HAF's novel theory has long been foreclosed by the Supreme Court's explicit admonition in *Harte-Hanks Commcn's v. Connaughton*, 491 U.S. 657, 688 (1989), that "failure to investigate before publishing . . . is not sufficient to establish reckless disregard."  (*See also* Opening Br. at 23 (collecting similar cases).)  HAF cites *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 590 (D.C. Cir. 2016), for the proposition that "utter failure to examine evidence within easy reach or to make obvious contacts in an effort to confirm a story" constitutes reckless behavior rising to the level of actual malice.  But HAF omits key language from that quotation in *Jankovic*.  The full language from that opinion articulates the opposite: "*[I]t is only when a plaintiff offers evidence that a defendant has reason to doubt the veracity of its source* [that] its utter failure to examine evidence within easy reach or to make obvious

contacts in an effort to confirm a story demonstrate reckless disregard." *Id.* (quoting *McFarlane*, 91 F.3d at 1509 (emphasis added)).  HAF has not met that antecedent requirement.  Nothing in the Complaint suggests that Prabhudoss had a reason to doubt the facts reported in the Al Jazeera stories—or his subjective belief that the organizations discussed in them are unworthy recipients of federal funds—triggering an obligation to investigate HAF's financial statements.  *Jankovic* thus undercuts HAF's position: "Absent such concerns, the defendant has no duty to corroborate the defamatory allegation."  822 F.3d at 590.

Moreover, even if Prabhudoss *did* have knowledge of HAF's financial statements, those financial statements are not enough to raise a plausible inference of actual malice.  For instance, HAF's financial statements do not give "obvious reasons to doubt" HAF's connections to Hindu far-right organizations.  They do not disprove or contradict that HAF's treasurer, Rishi Bhutada, is the son of the national vice-president of the U.S. wing of RSS; they do not change the fact that the Bhutada family donated a significant sum of money to HAF in 2018; they do not impugn the documented relationship between HAF's co-founder and an affiliate of RSS; and they do not contradict that HAF has defended multiple political positions that were criticized by the United Nations as "fundamentally discriminatory" to religious minorities in India.  (*See* Opening Br. 4–5.)  And HAF of course cannot dispute that its financial statements do not raise "obvious reasons to doubt" whether *other* recipients of COVID-19 relief funds had any financial or ideological relationship with Hindu supremacist groups.

All of the above suffices to conclude that HAF has failed to plead actual malice.  It is worth noting however, that HAF's tax documents do not even provide "obvious reasons to doubt" that HAF sent COVID-19 relief money to Indian nationalist or supremacist organizations (assuming Prabhudoss said HAF did so, which he did not).  For one, the documents provided by

HAF and available on its public website only go as far as HAF's 2020 financials detailing its financial activity through June 30, 2020.  (*See* Ex. 6, Declaration of Ryan J. Stonerock (ECF No. 39) ("Stonerock Decl.")).  Thus, these publicly-available Form 990s could not comprehensively speak to the HAF's use of COVID-19 relief funds.  Moreover, the statements attached by HAF are opaque, including expense line items of over $60,000 marked as "Other" without further elaboration.  (*See* Ex. 6, Stonerock Decl. at 10.)  Beyond these glaring issues of timing and content, HAF has yet to explain how someone viewing its financial statements could objectively determine whether its expenditures were related to "Hindu supremacy" in the first place, given the inherently subjective nature of that term.  (*See* Opening Br. 26.)  The actual content of these financial disclosures stands in stark contrast to HAF's characterization of those documents as being so conclusive as to render Prabhudoss's statements presumptively malicious.  That disparity is fatal to HAF's claim.

Faced with the above-described deficiencies, HAF responds by glibly asserting that actual malice "is a factual issue and ultimately, a jury question."  (Opp. Br. 24.)  But HAF cannot wave away its pleading burden.  Whether HAF's financial statements could plausibly show actual malice is squarely within this Court's province on a motion to dismiss, and courts have routinely dismissed defamation claims on the basis that the purported evidence of actual malice stated in a complaint did not rise to the level required to state a claim.  *See, e.g.*, *Tah v. Global Witness Publ'g*, 991 F.3d 231, 241–42 (D.C. Cir. 2021) (subject of publication's denial not sufficient to give rise to inference of actual malice by publisher); *BYD Company Ltd.*, 2021 WL 3472386, at *7 (analyzing on motion to dismiss posture whether evidence putatively contradicting defendant's statement "reasonably could have led" defendant to entertain subjective doubt); *see also Arpaio v. Cottle*, 404 F. Supp. 3d 80, 84 (D.D.C. 2019) ("Plaintiff

argues that the issue of malice is a question of fact that cannot properly be resolved on a motion to dismiss.  Not so." (internal quotation marks and citation omitted)).

**C.**     **HAF Has Failed to Allege Special Damages or Defamation Per Se**

HAF does not contest that it must allege either special damages or defamation *per se* in order to state a defamation claim against Prabhudoss, but asserts that it has alleged facts sufficient to satisfy both requirements.  (Opp. Br. 25.)  HAF's opposition overstates what it actually pleaded in its Complaint, which fails to satisfy either requirement.

As for special damages, HAF claims that it has "pleaded lost donations," which are "cognizable damages for a non-profit plaintiff in a defamation case."  (Opp. Br. 25.)[6]  As an initial matter, HAF's claim that Prabhudoss's statements caused it to incur serious financial harm is somewhat curious in light of HAF's continuous advertisement of this litigation to its financial and ideological supporters, including trumpeting an event titled "How to Sue Your Haters and Other Legal Tools."[7]

Moreover, even assuming that HAF is correct that lost donations may *theoretically* constitute special damages, HAF not adequately pleaded such lost donations.  HAF's opposition brief cites Paragraphs 6 and 35 of its Complaint as its allegations meeting that standard, but those allegations assert only that HAF's *ability* to fundraise has suffered as a result of Prabhudoss's statements; they do not point to any *actual* loss of donations.  (*See* Compl. ¶ 6 ("Defendants'

---

[6] HAF's citation to *Hearts with Haiti, Inc. v. Kendrick*, 2015 WL 4065185, at *3 (D. Me. July 2, 2015), is misleading.  *Hearts with Haiti* was an out-of-circuit case that dealt with a motion in limine to exclude evidence of lost donations, not a case on a motion-to-dismiss posture.  *Id. Hearts with Haiti* did not say anything about the extent to which lost donations must be pleaded in order to survive a motion to dismiss.

[7] *See* Hindu American Foundation, *How to Sue Your Haters and Other Legal Tools*, available at https://www.hinduamerican.org/events/year-end-event-2021.  This Court may take judicial notice of HAF's public advertisement on its website.  *See NAACP v. USPS*, 496 F. Supp. 3d 1, 6 n.1 (D.D.C. 2020) (judicial notice of private website proper).

conduct has injured, and will cause further substantial injury, to HAF's reputation and ability to fundraise."); Compl. ¶ 35 ("Defendants' coordinated attacks on HAF are intended to damage, and in fact caused substantial damage, to HAF's reputation and its ability to raise funds.").)

The only time HAF suggests that it has lost donations is in Paragraph 44 of its Complaint, where it alleges that it has met the amount-in-controversy requirement because it "has suffered, or will suffer, lost donations in an amount to be proven at trial, and which exceed $75,000." (Compl. ¶ 44.)  That threadbare allegation is a far cry from the standard required by this Court. *See Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002) ("A plaintiff can satisfy this pleading obligation by identifying either particular customers whose business has been lost or facts showing an established before and after the disparaging publication, along with evidence of causation.").  HAF attempts in vain to distinguish *Browning* as a "product disparagement case." (Opp. Br. 26.)  But as the D.C. Circuit made clear in *Browning*, the requirement that special damages be "specifically stated" arises from Federal Rule of Civil Procedure 9(g), and applies equally in the defamation context.  *See* 292 F.3d at 245.

HAF tacks on an assertion that Prabhudoss's statements are defamation *per se*, thus exempting it altogether from the requirement of alleging special damages.  But HAF's argument—that Prabhudoss's statements are defamation *per se* because they portray HAF as an "extremist organization," which would be "poisonous for any organization that subsists on donations" (Opp. Br. 25)—could be said of *any* political criticism against a nonprofit organization.  Because any allegedly defamatory statement could be argued to have some type of effect on a nonprofit organization's bottom line,  HAF's attempt to liken Prabhudoss's statements to a statement that "affects adversely a person's fitness for its trade, business, or profession," *Safex Foundation v. Safeth, Ltd.*, 2021 WL 1167266, at *12 (D.D.C. Mar. 26, 2021),

effectively eliminates the distinction between defamation and defamation *per se*, as long as the putatively defamed party is a nonprofit organization that receives donations.  HAF has not identified a single case where this Court has construed this doctrine so broadly, and this Court should decline to be the first.

## III.   <u>LEAVE TO AMEND SHOULD BE DENIED</u>

HAF's pleading failures are fatal, and its Complaint should be dismissed with prejudice. Although Rule 15 generally instructs courts to "freely give leave when justice so requires," Fed. R. Civ. P. 15, "the grant or denial of leave to amend is committed to a district court's discretion," *Francis v. Perez*, 256 F. Supp. 3d 1, 4 (D.D.C. 2017).  Where a plaintiff's proposed amendments "would not survive a motion to dismiss," denial of leave to amend is proper.  *Nunes v. WP Company LLC*, 513 F. Supp. 3d 1, 9 (D.D.C. 2020).

Aware that its Complaint is inadequate, HAF has proffered the facts it would add to an amended complaint.  Those proposed amendments would not survive a motion to dismiss.  Even assuming HAF were permitted to proffer these new facts and the 100 exhibits described in a 29-page attorney declaration, HAF still would fail to state a defamation claim against Prabhudoss. Across the laundry list of new facts HAF asserts it could allege, *HAF does not mention Prabhudoss or FIACONA a single time.*  (*See* Opp. Br. 9–14.)  And only two of HAF's new exhibits pertain to Prabhudoss: (i) his public LinkedIn page (*see* Ex. 40, Stonerock Decl.), and (ii) the public "About Us" page on FIACONA's website (*see* Ex. 41, Stonerock Decl.).  Thus, nothing in HAF's proposed amended complaint would ameliorate the deficiencies in its common law defamation claim against Prabhudoss.

Even if HAF were permitted to go beyond the panoply of new facts set forth in its opposition brief, any amended complaint would still fail as to Prabhudoss.  The fundamental nature of Prabhudoss's statements—*i.e.*, the fact they are unverifiable and subjective statements

of opinion—independently renders then non-actionable as a matter of law, and no additional allegations would change that.

HAF's proposed additions also fail to generate a conspiracy claim against Prabhudoss. The nature of HAF's additional allegations highlights the fundamental flaw with its Complaint: HAF continually conflates public disagreements with actionable collusive conduct.  From Pages 9 through 12, HAF recites a panoply of public grievances between itself and the other Defendants.  (*See* Opp. Br. 9–12.)  But all that these new facts demonstrate is that HAF and the other Defendants are political adversaries.  There is no suggestion that any of these facts are evidence, direct or indirect, of a conspiratorial agreement to defame HAF through Prabhudoss's statements.  On Pages 13 and 14, HAF suggests that Defendants filed a complaint with the Small Business Administration to investigate the disbursement of COVID relief funds—but the filing of an entirely legal complaint says nothing about a conspiracy to commit an illegal act of defamation.  (*See* Opp. Br. 13–14.)  Regardless of whether HAF is granted the benefit of these new facts, or any reasonable inferences drawn therefrom, it has not stated a plausible conspiracy claim against Prabhudoss.

## **CONCLUSION**

For the reasons stated, the Court should dismiss the claims against Defendant John Prabhudoss in their entirety and with prejudice, and deny leave to amend as futile.

Dated: New York, New York
November 12, 2021

Respectfully submitted,

HOLWELL SHUSTER & GOLDBERG LLP

By:  /s/ Daniel M. Sullivan
Daniel M. Sullivan
Andrew W. Chang
425 Lexington Ave.
New York, New York 10017
Telephone:  (646) 837-5151

*Attorneys for Defendant John Prabhudoss*