**REDACTED VERSION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Hindu American Foundation,** )<br>)<br>    **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**Sunita Viswanath, Raju Rajagopal,** )<br>**Rasheed Ahmed, John Prabhudoss, &** )<br>**Audrey Truschke,** )<br>)<br>    **Defendants.** ) | **CASE NUMBER 1:21-CV-01268-APM** |

**DEFENDANTS' CONSOLIDATED SUPPLEMENTAL BRIEF
IN SUPPORT OF MOTIONS TO DISMISS**

**REDACTED VERSION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................................... ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 3

    I.    LEGAL STANDARD ............................................................................................... 3

    II.    PLAINTIFF HAS NOT SHOWN IT SUFFERED ANY DAMAGES FROM THE CHALLENGED STATEMENTS ....................................................... 4

        A.    There Is No Evidence Any Donor Reduced Contributions Due to the Challenged Statements ................................................................................ 5

        B.    There Is No Evidence Any Donor Ceased Making Contributions Due to the Challenged Statements ................................................................ 6

        C.    There Is No Evidence HAF Suffered Damages in Connection with "Lost Grants and/or Opportunities" Due to the Challenged Statements ..................................................................................................... 8

        D.    There Is No Evidence HAF Lost Funds from Family Foundations Due to the Challenged Statements. ........................................................... 11

        E.    There Is No Evidence HAF Lost Prospective New Donors Due to the Challenged Statements ............................................................................... 12

        F.    There Is No Evidence HAF Suffered Damages Because Staff Allegedly Sought to Mitigate Harm Caused by the Challenged Statements ................................................................................................... 13

        G.    There Is No Evidence HAF Suffered Damages to Repair Its Reputation ................................................................................................... 13

CONCLUSION ................................................................................................................................. 14

**REDACTED VERSION**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Broida v. First Union Visa Corp.*,
    1999 U.S. App. LEXIS 32761 (D.C. Cir. 1999) (unpublished) ............................................. 4, 5

*Bronner v. Duggan*,
    962 F.3d 596 (D.C. Cir. 2020) ............................................................................................. 3, 4

*BYD Co. v. All. for Am. Mfg.*,
    2021 U.S. Dist. LEXIS 76425 (D.D.C. Apr. 21, 2021) ........................................................... 3

*Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*,
    909 F.3d 446 (D.C. Cir. 2018) ................................................................................................ 3

*King v. Morton*,
    520 F.2d 1140 (D.C. Cir. 1975) .............................................................................................. 3

*Martin v. Gibson*,
    723 F.2d 989 (D.C. Cir. 1983) ................................................................................................ 3

*McNutt v. Gen. Motors Acceptance Corp.*,
    298 U.S. 178 (1936) ................................................................................................................ 3

*Moore v. Bush*,
    535 F. Supp. 2d 46 (D.D.C. 2008) .......................................................................................... 3

*NetworkIP, LLC v. FCC*,
    548 F.3d 116 (D.C. Cir. 2008) ................................................................................................ 2

*Rosenboro v. Kim*,
    994 F.2d 13 (D.C. Cir. 1993) .................................................................................................. 4

*Ruhrgas Ag v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ................................................................................................................ 3

*Sharpe v. Bair*,
    580 F. Supp. 2d 123 (D.D.C. 2008) ........................................................................................ 3

*Szymkowicz v. Frisch*,
    2020 U.S. Dist. LEXIS 136537 (D.D.C. July 31, 2020) ................................................. 3, 8, 9

Defendants respectfully submit this consolidated supplemental brief in further support of their motions to dismiss, pursuant to the Court's March 15, 2022 Order (ECF 48).

## INTRODUCTION

In putative support of its position that subject-matter jurisdiction exists, Plaintiff Hindu American Foundation ("HAF") alleged in its complaint that it "has lost and/or expended *and/or will lose and/or expend* at least $75,000" due to Defendants' wrongful conduct.  Complaint for Damages (ECF 1) (emphasis added) ¶ 16; *see also id.* ¶¶ 6, 36, 44, 49, 53.  Given the speculative nature of these allegations, Defendant Rasheed Ahmed moved to dismiss, arguing (among other things) that the Court lacked subject matter jurisdiction over HAF's claims because HAF could not satisfy the "amount in controversy" requirement. *See* ECF 37 at 13-15.  In response, HAF continued alleging only that it "has lost or *will lose* donations." *See* ECF 39 at 28 (emphasis added); *see also id.* at 29 (speaking to a possibility that "HAF can prove an *eventual* loss of more than $75,000") (emphasis added).

Based on this, the Court found that "[n]either the complaint nor the opposition contains further factual development as to actual losses, or even potential losses" and that "Plaintiff has not, for instance, alleged that at the time Plaintiff filed this action any donors had threatened to pull their financial support for the organization because of the allegedly defamatory statements." ECF 48 at 2 (March 15, 2022 Order).  The Court stated it was "left questioning whether Plaintiff has lost anything at all, much less an amount in excess of $75,000." *Id.* at 3.  "[R]ather than dismiss the complaint outright," the Court stayed the motions to dismiss to allow for jurisdictional discovery and ordered supplemental briefing on this issue. *Id.* at 4.

That discovery is now complete and it confirms the Court's suspicions:  Plaintiff is unable to identify *any* evidence of economic harm, let alone damages meeting the jurisdictional minimum.  Indeed, discovery has established that not a single existing or potential donor ever

told HAF it was reducing, eliminating, or not making initial contributions due to the challenged statements. In fact, HAF did not even ask any existing or potential donor whether the challenged statements had an effect on their giving practices. And there is no evidence any existing or potential donor even knew of the challenged statements (except when HAF published those statements to donors in order to fundraise off them).

HAF's assertion of jurisdiction is thus entirely speculative. HAF postulates that every single donor who gave it money in 2020, but did not give or gave less in 2021 or 2022, must have made those choices because of the challenged statements – without evidence that any particular donor even knew of the statements. HAF further speculates in exactly the same way that potential new donors who have yet to contribute must have been swayed by the statements – again, without evidence that a single potential donor knew of them.[1] It is black letter law that such speculation is insufficient.



For all these reasons, this matter should be dismissed for lack of subject-matter jurisdiction.[2]

---

[1] HAF argues it has lost grants and other "opportunities" on this same flawed basis, as addressed below. It further claims it has suffered damages in connection with efforts to repair its reputation with the help of public relations and Online Reputation Management specialists. However, HAF admits it has not retained such specialists.

[2] This Court should dismiss Plaintiff's claims against all Defendants on subject matter jurisdiction grounds (and, in the alternative, any other grounds on which dismissal is warranted), even though only Defendant Ahmed raised this issue in the initial briefing. "It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte*." *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) (internal marks omitted);

## ARGUMENT

### I. LEGAL STANDARD

The burden of establishing the amount in controversy rests solely on the person claiming jurisdiction. *Martin v. Gibson*, 723 F.2d 989, 991 (D.C. Cir. 1983); *King v. Morton*, 520 F.2d 1140, 1145 (D.C. Cir. 1975). A plaintiff must establish that the amount in controversy is at least $75,000 by a preponderance of the evidence. *See Sharpe v. Bair*, 580 F. Supp. 2d 123, 128 (D.D.C. 2008); *Moore v. Bush*, 535 F. Supp. 2d 46, 47 (D.D.C. 2008). Once a defendant challenges the plaintiff's allegations of jurisdictional facts, a plaintiff must support them by "competent proof." *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

A corporate plaintiff is limited in the damages it may seek to satisfy the $75,000 jurisdictional threshold. In particular, a corporate plaintiff may not "rely on reputational damages to establish jurisdiction," but instead is limited to "actual damages in the form of lost profits." *BYD Co. v. All. for Am. Mfg.*, 2021 U.S. Dist. LEXIS 76425, at *5 (D.D.C. Apr. 21, 2021); *accord Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 461-62 (D.C. Cir. 2018). Where a plaintiff shows, at best, "a *de minimis* amount of compensatory and presumed damages potentially at issue," even if it also claims punitive damages, it "still falls short of satisfying the amount-in-controversy requirement." *Szymkowicz v. Frisch,* 2020 U.S. Dist. LEXIS 136537, at *24 (D.D.C. July 31, 2020).

A plaintiff that "provide[s] nothing beyond a bare-bones assertion…that the monetary damages arising from [its] direct claims" satisfies the jurisdictional requirement fails to carry its burden; such assertions are entirely "inadequate to satisfy the amount-in-controversy requirement." *Bronner v. Duggan*, 962 F.3d 596, 610 (D.C. Cir. 2020); *accord Szymkowicz,*

---

*accord Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("subject-matter delineations must be policed by the courts on their own initiative even at the highest level").

2020 U.S. Dist. LEXIS 136537, at *16.  Simply put, a plaintiff's speculation about an injury it has suffered without evidence of actual damage does not suffice to meet its burden. *See Rosenboro v. Kim*, 994 F.2d 13, 19 (D.C. Cir. 1993). (legal certainty standard does "not mean that diversity suits backed only by purely speculative or unsupported allegations of injury cannot be ousted from federal court"); *see also Broida v. First Union Visa Corp.*, 1999 U.S. App. LEXIS 32761, at *2 (D.C. Cir. 1999) (unpublished) (motion to amend was properly denied "because the proposed complaint is 'backed only by purely speculative or unsupported allegations of injury'") (quoting *Rosenboro*, 994 F.2d at 19); *accord Bronner*, 962 F.3d at 610 ("any unsupported claim" will not suffice).  Similarly, a speculative future injury cannot establish the amount-in-controversy, as subject matter jurisdiction is measured at the time of filing.  *See Bronner*, 962 F.3d at 603.

## II. PLAINTIFF HAS NOT SHOWN IT SUFFERED ANY DAMAGES FROM THE CHALLENGED STATEMENTS

HAF claims the challenged statements caused damages in seven categories: (i) reduced donations in connection with donors who decreased their contributions in 2021 and/or 2022; (ii) lost donations in connection with donors who did not contribute in 2021 and/or 2022; (iii) lost grants and other "opportunities"; (iv) lost contributions from family foundations; (v) lost contributions from prospective donors; (vi) damages resulting from time spent by staff mitigating the alleged harm caused by the challenged statements; and (vii) reputational damage. Ex. A[3] (HAF's Responses to Jurisdictional Interrogatories) at 13.

---

[3] Exhibits labeled alphabetically are attached to the Declaration of Joshua Colangelo-Bryan. Exhibits labeled numerically are attached to the Declaration of Thomas B. Sullivan.

A. **There Is No Evidence Any Donor Reduced Contributions Due to the Challenged Statements**

According to HAF, the challenged statements caused "Reduced Donations" in the amount of $84,991.98 in 2021 and $72,632.90 in 2022, for a total of $157,623.90. Ex. A at 13. In support, HAF cites HAF000001-3, a spreadsheet entitled ▌ ▌ *Id*. at 14, 6-7; Ex. B (Deposition of Suhag Shukla ("Shukla Dep.") 60:11-15); Ex. D (Shukla Dep. Ex. 8 (HAF00001-3)). The spreadsheet also identifies contributions HAF claims to have been reduced in 2022, based on the assumption that donors who gave less in 2021 than 2020, and have not contributed yet in 2022, will give the same amount this year as in 2021. Ex. C (Deposition of HAF ("HAF Dep.") 41:10-20, 42:6-14). In other words, HAF's entire theory of "Reduced Donations" is based on comparing its individual donors' year-over-year contributions and hypothesizing that the challenged statements solely and directly caused all reductions in donations.

But HAF's admissions in discovery contradict its fanciful theory of damages. Most critically, HAF admitted it is "unaware of any written or oral communications in which a donor specifically told [HAF] that the donor would *reduce* the donor's donations because of one or more of the alleged defamatory statements as described in the Complaint." Ex. A at 7 (emphasis added). Reinforcing this admission, HAF's Executive Director, Suhag Shukla ("Shukla"), testified that HAF does not know "the reason for reducing" contributions as to any donor identified on HAF000001-3. Ex. B (Shukla Dep. 60:11-61:7). Indeed, Shukla specifically disavowed any knowledge that donors had reduced contributions because of the challenged

---

[4] HAF refused to provide the names of its donors – even under an "attorneys-eyes-only" designation – and therefore it identified donors by "Account ID." HAF also cites HAF000004-57 (*see* Ex. A at 14, 6-7) on the reduced-donation point, but those documents are referenced by HAF as the support for other categories of claimed damages. To the extent these documents are relevant, they are addressed in the sections below relating to the other alleged damages.

statements, demurring that it is not HAF's "practice to call donors to ask why they have reduced contributions." *Id.* (Shukla Dep. 61:4-24); Ex. C (HAF Dep. 25:16-23). These admissions are by themselves fatal.

Moreover, Shukla had to admit that any number of reasons could lead a donor to reduce contributions, including changes in a donor's resources or priorities for charitable giving. Ex. B (Shukla Dep. 62:5-7; 69:5-70:9). As Shukla further confirmed, it is not unusual for donors' contributions to vary year-to-year. *Id.* (Shukla Dep. 70:17-72:7).

Given these admissions, it is beyond legitimate dispute that the "Reduced Donations" claimed by HAF are *entirely* speculative. Indeed, HAF asks the Court to find that every single donation reduction resulted from the challenged statements, without any evidence that this was true for any single reduction, let all of them. The law precludes such a finding, which also would be contrary to the facts that, ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████.[5]

Declaration of Thomas B. Sullivan ("Sullivan Decl.") ¶¶ 7-11; *id.* Ex. 3.

**B.  There Is No Evidence Any Donor Ceased Making Contributions Due to the Challenged Statements**

In addition to its speculation about "Reduced Donations," HAF alleges it has suffered $1,212,508 in "Lost Donations" in connection with donors who contributed in 2020, but did not in 2021 and/or 2022. Ex. A at 14. Specifically, HAF claims $648,061 in such damages for 2021 and $564,447 for 2022. *Id.* In support, HAF cites HAF000004-20, a spreadsheet entitled ███

███████████████████████████████████████████████████

---

[5] Highlighting the speculative nature of HAF's position, it asks the Court to assume donors who gave less in 2021 than 2020, and have not contributed yet in 2022, will eventually give the exact same amount in 2022 as in 2021.

▓▓▓▓▓ *Id*. at 14, 6-7; Ex. B (Shukla Dep. 62:22-63:2); Ex. E (Shukla Dep. Ex. 9 (HAF000004-20)). HAF's theory rests on the assumption that anyone who gave money in 2020, but failed to donate in 2021 or 2022, did so because of the challenged statements. This assumption is not only without factual foundation, it is vitiated by the evidence.

Just as with its position on "Reduced Donations," HAF admits it is "unaware of any written or oral communications in which a donor specifically told [HAF] that the donor would *cease* the donor's donations because of one or more of the alleged defamatory statements as described in the Complaint." Ex. A at 8-9 (emphasis added). Consistent with this admission, Shukla conceded in her deposition that she does not know if any donor who failed to contribute in 2021 and/or 2022 (to date) did so because of the challenged statements. Ex. B (Shukla Dep. 63:8-22). She also made clear she was *not* testifying that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*. (Shukla Dep. 64:1-7). Moreover, Shukla admitted that HAF000004-20 identifies ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ undercutting any idea that such donors simply decided to stop contributing. *Id*. (Shukla Dep. 64:12-65:11).

Shukla also admitted that it is not HAF's "practice to call donors to ask why they have…ceased their donations." Ex. B (Shukla Dep. 61:7-9); Ex. C (HAF Dep. 25:16-23). She conceded further that "there might be a variety of reasons as to why [donors] have…ceased their donations," including changes in donors' resources or charitable-giving priorities. Ex. B (Shukla Dep. 62:5-7; 69:5-70:9). Shukla acknowledged that, even prior to the challenged statements,

---

[6] In connection with Lost Donations," HAF also cites HAF000001-3 and HAF0000021-57. Ex. A at 8, 14. HAF offers HAF0000021-57 to support other categories of alleged damages, and those documents will be addressed below, if relevant. Defendants addressed HAF000001-3 above.

there were donors who had contributed in one year and not the next for a variety of reasons. *Id*. (Shukla Dep. 72:24-73:2).

Emphasizing that HAF's "Lost Donations" argument arises from guesswork, Shukla had to admit that 2022 is far from over, and prior donors who have not contributed yet this year still might.[7] Ex. B (Shukla Dep. 78:5-12; 79:15-20). Therefore, there is no conceivable basis for HAF to claim definitively that it has lost any donations in 2022. Any potential losses that might be ascertainable by year's end would irrelevant, as the amount in controversy is determined when an action is commenced. *See Szymkowicz*, 2020 U.S. Dist. LEXIS 136537, at *22 n.11.

Ultimately, HAF cannot legitimately contend that the challenged statements caused "Lost Donations" based solely on the fact that some donors did not contribute in 2021, without any causal evidence. Also, HAF's speculation is undercut by the data showing ███████████ ███████████████████████████████████.

### C.   There Is No Evidence HAF Suffered Damages in Connection with "Lost Grants and/or Opportunities" Due to the Challenged Statements

HAF's claim to have suffered $186,000 in damages in connection with "Lost Grants and/or Opportunities" also is purely speculative. *See* Ex. A at 14-15.[8] Specifically, HAF alleges that, due to the challenged statements: (1) the Oak Foundation rejected its application for a $143,000 grant, (2) the Allstate Foundation rejected its pre-application for a $35,000 grant, and (3) it lost the opportunity to present a "Hinduism 101" course at a Fortune 500 Company,[9]

---

[7] HAF even admitted that most of its donations come during "fundraising season," *i.e.,* November and December. HAF Dep. 127:4-17.

[8] In this context, HAF cites HAF000021-57, HAF000001-3, and HAF000004-20. Ex. A at 16. However, only HAF000021-24 and HAF000025-33 actually relate to lost grants and "opportunities." Defendants address the other documents in the sections to which they are relevant, if any.

[9] HAF has designated information about the identity of the company as "attorneys-eyes-only," pursuant to the Protective Order. The identity of the company is immaterial for present purposes. Defendants will thus refer to the company as the "Fortune 500 Company."

thereby losing a payment of $4,000 and the opportunity to receive a $4,000 "diversity budget grant." *Id*. at 15-16.

HAF has no evidence that the decision of any grant maker or provider of "opportunities" had anything to do with the challenged statements. On June 21, 2021, HAF submitted the Oak Foundation request for funding, which was rejected. Ex. B (Shukla Dep. 29:2-4); Ex. F (Shukla Dep. Ex. 5. (HAF000031-33)). The Oak Foundation did not provide a reason for the rejection, expressly stating, ███████████████████████ Ex. B (Shukla Dep. 29:10-22); Ex. F at 1. HAF does not even know whether the Oak Foundation was aware of the challenged statements when it rejected HAF's application. Ex. B (Shukla Dep. 29:5-9, 29:17-22). Thus, there is no evidence that the Oak Foundation rejected HAF's request due to the statements. Ex. B (Shukla Dep. 29:5-22).

As to the Allstate Foundation, Shukla testified that HAF had received "an invitation to apply" for a racial equity grant. Ex. B (Shukla Dep. 19:2-8). In reality, ███████████████████████████████████████████████████████████ Ex. G (HAF000425-426). In response, ███████████████████████████. Ex. B (Shukla Dep. 20:22-21:2); Ex. H (HAF000427-430).

███████████████████████████████████████████████████████████. Ex. I (Shukla Dep. Ex. 3 (HAF000023-24)). ███████████████████████████████ Ex. I; Ex. B (Shukla Dep. 23:14-22). HAF did not communicate with anyone at Allstate regarding the challenged statements and does not even know whether Allstate was aware of the statements when it rejected HAF's pre-application. Ex. B (Shukla Dep. 21:3-14, 23:2-6, 23:23-24:14); Ex. C (HAF Dep. 14:13-18). In fact, Shukla

9

conceded she knows of no evidence that Allstate rejected HAF's pre-application because of the challenged statements. Ex. B (Shukla Dep. 22:23-23:14). Rather, she merely speculates that it is "possible." *Id*. (Shukla Dep. 24:4-12). Such speculation is insufficient. Moreover, even if HAF's pre-application had been approved, that would not have guaranteed funding; rather, HAF then would have had to submit an application as to which the prospects of success would have been entirely uncertain. *Id*. (Shukla Dep. 24:15-26:9).

Finally, HAF's claim that it lost the opportunity to make a presentation at a Fortune 500 Company is misleading at best.  Ex. J (HAF000433); Ex. B (Shukla Dep. 54:8-15, 124:9-125:14). Ex. B (Shukla Dep. 55:6-10, 55:16-56:3).

HAF has not provided any evidence of the reasons for the alleged rejection. Ex. B (Shukla Dep. 56:21-57:17). HAF also has not provided any evidence that it would have received compensation for the event or been eligible for additional funding. Ex. B (Shukla Dep. 57:18-23).

In sum, HAF asks the Court to speculate – in the absence of any evidence – that HAF met the criteria for the Oak Foundation and Allstate Foundation grants and that it actually was being considered by someone with authority to provide a presentation at the Fortune 500 Company.

10

More egregiously, HAF asks the Court simply to presume that but for the challenged statements, (1) HAF would have been awarded both grants (despite being one among thousands of applicants), (2) HAF would have received $4,000 for its "Hinduism 101" presentation (despite the absence of evidence that any compensation was offered), and (3) HAF would have potentially received another $4,000 from the Fortune 500 Company's "diversity budget grant" (despite the absence of evidence that such an award was ever discussed). The Court should reject HAF's unsupported speculation.

> **D.** **There Is No Evidence HAF Lost Funds from Family Foundations Due to the Challenged Statements.**

HAF claims it lost approximately $150,000 in potential donations from a direct mail campaign aimed at family foundations, which it defines as charitable trusts set up by individual families. Ex. A at 16; Ex. C (HAF Dep. 43:11–17). According to HAF, it did not receive any donations in response to its campaign. *Id.* (HAF Dep. 46:5–7). HAF initially asserted that this campaign had targeted 40 foundations, but claimed later to have targeted only 30. *Compare* Ex. A at 16 *with* Ex. C (HAF Dep. 45:14–19).

Regardless of the number, HAF offers absolutely no evidence of a causal link between the decision of any family foundation not to donate and any of the challenged statements. In fact, HAF admits it does not know why any of the foundations declined to contribute. Ex. C (HAF Dep. 48:2–15). Moreover, HAF does not know if the foundations were even aware of the challenged statements. *Id.* (HAF Dep. 48:16–49:3). As such, there is no legitimate basis to conclude the statements had any effect on the actions of the family foundations.

Underscoring this point, HAF had no preexisting relationship with any of the foundations; rather, it identified them through Guidestar.com, a charitable watchdog organization. Ex. C (HAF Dep. 47:18–23, 44:2–9, 47:8–17, 53:17–54:3). Additionally, HAF

11

derives its $150,000 loss estimate from a 14.4 percent anticipated success rate for its campaign, without explaining the basis for that rate. Ex. A at 17. Moreover, the 14.4 percent rate relates to average gifts made by the family foundations to *other* organizations in 2019. *Id*. HAF does not explain how it would be similarly situated to receive such gifts. *Id*. Finally, HAF claims that "[r]esearch shows that when a non-profit combines direct mail with digital methods, response rates climb from between 5-9% to 28%." Ex. A at 17. Yet, HAF's "research" consists of a single blog post from the Ballantine Corporation—a company that sells its print and digital marketing services to nonprofit fundraisers. Ex. K (HAF000038–39).

> **E.   There Is No Evidence HAF Lost Prospective New Donors Due to the Challenged Statements**

HAF claims it lost donations from 668 prospective new donors, *i.e,* people who HAF had "obtained" as potential donors between January 1, 2021 and April 2, 2021, but who never donated. Ex. A at 17. However, by "obtained," HAF means only that it had identified these individuals through their social media presence, attendance at events, or consent to receive mail from HAF. Ex. B (Shukla Dep. 81:9–82:2). None of these 668 prospective donors had given before or made a promise to donate at any time. *Id.* (Shukla Dep. 83:11–20). Most importantly, Shukla has no idea why these 668 prospects elected not to contribute and was not able to identify anyone at HAF who would have such knowledge. *Id.* (Shukla Dep. 84:15–20). For these reasons, HAF cannot legitimately complain it has "lost" anything from any prospective donors. And, even if it could, HAF does not quantify such damages, which would render them irrelevant at this posture. Ex. A at 17.

Beyond these points, the evidence actually shows HAF acquired new donors in *response* to its legal action against Defendants. ███████████████████████████████████████████████████████████████████████. Ex. B (Shukla Dep. 85:23–88:4)███

12

████████████████████████████████████████. Ex. L (HAF Dep. Ex. 10 (HAF000058–88)); Ex. A at 5. Such gains are inconsistent with HAF's contention that the challenged statements deterred potential new donors. Indeed, these ████ documented new donors vastly outnumber the alleged 668 prospective donors HAF claims to have lost.

F.   **There Is No Evidence HAF Suffered Damages Because Staff Allegedly Sought to Mitigate Harm Caused by the Challenged Statements**

HAF claims it suffered damages in the form of lost staff time and resources that it diverted away from HAF business to focus on mitigating alleged harm caused by the challenged statements. Ex. A at 18. However, HAF does not even claim a specific amount in damages in this context, which precludes any finding that these supposed damages are relevant to analyzing the jurisdictional threshold. *See id*.

Moreover, HAF has not carried its burden of establishing its contention that staff spent 135 hours addressing the challenged statements. *Id*. at 18-19. HAF has not produced time sheets, calendars, or meeting notes to support these assertions. *See Id.* (simply asserting, for example, that the Senior Director of Communications spent 51 hours and the Executive Director spent 45 hours). In fact, HAF concedes it does not track staff time, except as required by the IRS for work on legislation, which does not bear here. Ex. C (HAF Dep. 65:2-18).

G.   **There Is No Evidence HAF Suffered Damages to Repair Its Reputation**

HAF contends it has suffered at least $485,000 in damages for costs necessary to repair the reputational harm caused by the challenged statements. Ex. A at 19. In particular, it argues that these damages include $60,000 a year for a public relations firm, $180,000 for an Online Reputation Management ("ORM") specialist for a year, and $245,000 for unidentified advertising. *Id*. at 20. It is dispositive, however, that HAF has not retained a public relations firm, an ORM specialist, or an advertising agency. Ex. C (HAF Dep. 60:8-17, 63:13-14, 63:21-64:21).

13

As such, HAF does not claim to have incurred these damages, but rather simply asserts that it might spend these amounts *in the future*. As addressed, future damages are irrelevant legally. Further, more than fourteen months have passed since the challenged statements, rendering incredible the notion that HAF actually believes it is a critical matter of reputation management to retain these experts.

Finally, HAF claims it has suffered reputational damages (of an unspecified amount) because it was expelled from the Alliance Against Genocide due to the challenged statements. Ex. A at 19; Ex. B (Shukla Dep. 31:23-32:4); Ex. N (Shukla Dep. Ex. 6 (HAF000053)). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[10] Thus, HAF has no one but itself to blame for its expulsion. Even if its expulsion were somehow attributable to the challenged statements (it is not), HAF never received any funding from the Alliance Against Genocide and cannot claim monetary damages in this context. Ex. B (Shukla Dep. 43:14-16).

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' earlier briefs in support of their respective motions to dismiss, Defendants respectfully request that this Court grant their motions and enter an order dismissing the Complaint, with prejudice, and grant such other and further relief as the Court deems just and proper.

---

[10] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4895-1143-9140\

Dated: June 10, 2022                                Respectfully submitted,


/s/Joshua Colangelo-Bryan
Joshua Colangelo-Bryan
Daniel Goldberger
Briana Al Taqatqa
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
Attorneys for Defendant Rasheed Ahmed


/s/Thomas B. Sullivan
David A. Schulz, Esq.
Thomas B. Sullivan, Esq.
Jacquelyn N. Schell, Esq.
Joseph Slaughter, Esq.
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Attorneys for Defendants Sunita Viswanath and Raju Rajagopal


/s/Eric J. Feder
Eric J. Feder, Esq.
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW
Suite 500 East
Washington, D.C. 20005-3317

Jared Carter (admitted pro hac vice)
Christina Neitzey (pro hac vice application forthcoming)
CORNELL LAW SCHOOL FIRST AMENDMENT CLINIC
Myron Taylor Hall
Ithaca, NY 14853
Attorneys for Defendant Audrey Truschke


/s/ Daniel M. Sullivan
Daniel M. Sullivan, Esq.
Andrew W. Chang, Esq.
HOLWELL SHUSTER & GEORGE LLP
425 Lexington Ave.
New York, New York 10017
Attorneys for Defendant John Prabhudoss

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2022, I served the foregoing Supplemental Brief via this Court's Electronic Case Filing (ECF) system to all counsel of record who have made an appearance in this case.

/s/ Joshua Colangelo-Bryan
Joshua Colangelo-Bryan
