# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HINDU AMERICAN FOUNDATION,** | |
| Plaintiff, | |
| v. | **Civil Action No. 1:21-cv-01268-APM** |
| **SUNITA VISWANATH; RAJU RAJAGOPAL; RASHEED AHMED; JOHN PRABHUDOSS; AUDREY TRUSCHKE; AND DOES 1–20,** | **Honorable Amit P. Mehta** (Oral Hearing Requested) |
| Defendants. | |

## SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTIONS TO DISMISS RE: AMOUNT IN CONTROVERSY

Ryan J. Stonerock
D.C. Bar 1632636
Dilan A. Esper (admitted *pro hac vice*)
Lan P. Vu (admitted *pro hac vice*)
HARDER LLP
8383 Wilshire Blvd., Suite 526
Beverly Hills, CA 90211
Tel. (424) 203-1600
rstonerock@harderllp.com
desper@harderllp.com
lvu@harderllp.com

David C. Tobin
D.C. Bar 395959
TOBIN O'CONNOR & EWING
5335 Wisconsin Avenue NW, Suite 700
Washington, D.C. 20015
Tel. (202) 362-5900
dctobin@tobinoconnor.com

*Counsel for Plaintiff*
*Hindu American Foundation*

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................................1

II.    STATEMENT OF FACTS ....................................................................................1

III.   THE AMOUNT IN CONTROVERSY REQUIREMENT IS MET ....................3

   A.  The Legal Standard Limits This Court Solely To a Consideration of Whether the
       Amount in Controversy Requirement Is Plausibly Met; HAF Is Not Required To
       Prove Its Damages Claims at This Stage ...........................................................3

   B.  The Evidence Establishes That The Amount In Controversy Requirement Is Met............6

      1.  HAF has demonstrated that over $1.3 million in lost donations are in
          controversy......................................................................................................6

      2.  HAF Has Shown That $186,000 in Lost Grants And Opportunities Are in
          Controversy.....................................................................................................9

      3.  HAF Has Shown That $150,000 in Grants From Family Foundations Are In
          Controversy...................................................................................................11

      4.  This Court must consider the lost potential new donors even if the losses
          have not yet been quantified .........................................................................12

      5.  Moneys raised after or as a result of this litigation are not cognizable to
          reduce the amount in controversy .................................................................12

      6.  The Expulsion of HAF from the Alliance Against Genocide Must Be
          Considered in the Amount in Controversy ...................................................13

      7.  HAF's Expert Testimony of the Cost of Repairing Its Reputation Establishes
          the Amount in Controversy As Well ............................................................14

      8.  Reporting of Jury Verdicts In Other Cases Confirms the Amount in
          Controversy Is Over $75,000......................................................................14

   C.  Even if the Court Believes Some of the Damages Could Be Negated Under the Legal
       Certainty Standard, So Long as $75,000 or More Remains in
       Controversy, the Motions Must Be Denied ....................................................15

IV.   CONCLUSION....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apton v. Volkswagen Group,*
    233 F. Supp. 3d 4 (D.D.C. 2017)................................................................................14

*Bigelow v. RKO Radio Pictures,*
    327 U.S. 251 (1946)..................................................................................................7

*Broida v. First Union Visa Corp.,*
    1999 WL 1215354 (D.C. Cir. Dec. 7, 1999).............................................................9

*Bronner ex rel. American Studies Ass'n v. Duggan,*
    962 F.3d 596 (D.C. Cir. 2020)..............................................................................5, 8

*Compton v. Alpha Kappa Alpha Sorority, Inc.,*
    64 F. Supp. 3d 1 (D.D.C. 2014)..............................................................................12

*Desert Palace, Inc. v. Costa,*
    539 U.S. 90 (2003)..................................................................................................10

*Hartigh v. Latin,*
    485 F.2d 1068 (D.C. Cir. 1973)................................................................................4

*Hudson v. Lazarus,*
    217 F.2d 344 (D.C. Cir. 1954)................................................................................13

*James v. Lusby,*
    499 F.2d 488 (D.C. Cir. 1974)..................................................................................4

*Jung v. Mundy Holt & Mance,*
    2005 WL 8165853 (D.D.C. Jun. 3, 2005)................................................................7

*Lacy v. District of Columbia,*
    424 A.2d 317 (D.C. App. 1980)..............................................................................13

*Love v. Budai,*
    665 F.2d 1060 (D.C. Cir. 1980)................................................................................4

*Mace v. Domash,*
    550 F. Supp. 2d 101 (D.D.C. 2008)..........................................................................5

*Mt. Healthy City Board of Education v. Doyle,*
    429 U.S. 274 (1977)..................................................................................................3

*National Ass'n of Mental Health v. Califano*,
    717 F.2d 1451 (D.C. Cir. 1983) ......................................................................................6, 8

*Payne v. District of Columbia*,
    559 F.2d 809 (D.C. Cir. 1977) ...........................................................................................4

*Rosenboro v. Kim*,
    994 F.2d 13 (D.C. Cir. 1993) .........................................................................5, 8, 9, 13, 16

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*,
    303 U.S. 283 (1938) ..........................................................................................................3

## I.      INTRODUCTION

Plaintiff Hindu American Foundation ("HAF") has established that at least $75,000 is in controversy in this action.  Rather than focus on that, Defendants' briefing changes the subject, by asking such questions (at the pleadings stage, before any discovery has been taken on the merits) as how much damage HAF has suffered, whether there is some alternate explanation for the reduction in donations, or whether it is true that every donor who made a smaller or no donation in 2021 did so because of Defendants' defamation.  These may be interesting arguments for Defendants to make to a jury when contesting damages at trial, but they have no place in determining whether Plaintiff has plausibly pleaded that $75,000 is in controversy.

Similarly, whether or not Defendants will have some argument at trial that any losses in donations should be offset by donations that supposedly came in as a result of this court case, that in no way affects **the amount in controversy** now.  Just because Defendants disagree with HAF's calculation of damages does not mean the amount is not in controversy.

## II.     STATEMENT OF FACTS

After the Court ordered discovery, Defendants served document demands and interrogatories, and took the deposition of an HAF executive/corporate designee.  Numerous damages theories, and factual support for them, were produced by HAF during this process.

Specifically, a number of people who had previously donated to HAF either stopped donating or reduced their donations.  In terms of donors who stopped donating, donors who had donated a total of $648,061 in the year prior to the Defendants' defamation campaign stopped donating in 2021, and donors who had donated a total of $564,447 in the year prior to the Defendants' defamation campaign stopped donating in 2022.  In addition, other donors continued donating, but at a reduced amount.  With respect to those donors, there were aggregate

reductions in donations of $84,991.98 in 2021 and $72,632.90 in 2022.  HAF generally does not speak to donors as to the specific reasons they reduced or discontinued donations, as it hopes to get the donors back and does not wish to alienate them.  However, HAF believes that these lost and reduced donations are due, at least in part, to Defendants' defamation campaign.  HAF has also identified 668 prospective new donors and reasonably expected, based on its past experience, that some percentage of those potential donors would donate; however, none did so after Defendants' defamatory campaign against HAF.

HAF lost at least two grants for which it had applied, which HAF believes was connected to Defendants' defamation campaign.  These include a $143,000 grant from Oak Foundation and a $45,000 grant from The Allstate Foundation (collectively, the "Foundations").  HAF believes it was fully qualified for both grants and had an excellent chance of receiving them.  The Foundations did not give HAF a reason for the denials; however, this is common practice when a grant is denied and does not in any way indicate that the denial was not based on Defendants' defamation campaign.

HAF also was informed that it would not be permitted to present a seminar to a Fortune 500 company on Hinduism.  This decision came after the Defendants' defamation campaign, and HAF believes that it was caused by the defamation and negative publicity Defendants directed towards HAF.

HAF also targeted a direct mail campaign to at least 30 family foundations for donations .  Based on industry statistics, this should have netted a success rate of 14.4%.  However, none of those family foundations donated to HAF after Defendants' defamatory statements were publicized.

HAF also spent staff time and resources responding to Defendants' defamation; however, it has not yet quantified the amount of damage it suffered from lost staff time and resources.

Finally, HAF retained a reputation repair expert, Eric Rose, with extensive experience in the area.  As set forth in Mr. Rose's expert report, which is submitted concurrently herewith, Mr. Rose estimated that HAF would need to spend at least $485,000 to repair the damage caused by Defendants' defamatory statements, including $60,000 a year to hire a public relations firm, $180,000 for an online reputation specialist, and corrective advertising in the amount of $245,000.

## III.   THE AMOUNT IN CONTROVERSY REQUIREMENT IS MET.

### A.  The Legal Standard Limits This Court Solely To a Consideration of Whether the Amount in Controversy Requirement Is Plausibly Met; HAF Is Not Required To Prove Its Damages Claims at This Stage.

When a plaintiff invokes federal court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith.  *See, e.g.*, *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 276 (1977) ("'[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.'") (citation and quotations omitted).

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls...if the claim is apparently made in good faith...It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal...The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction...Nor does the fact that the complaint discloses the existence of a valid defense to the claim...But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-–89 (1938).

The D.C. Circuit permits some limited factual litigation of the amount in controversy at the pleadings stage.  "[W]here the allegations as to the amount in controversy are challenged by the defendant in an appropriate manner the plaintiff must support them by competent proof." *James v. Lusby*, 499 F.2d 488, 493 (D.C. Cir. 1974) (citation and quotations omitted).  Notably, *James* involved a case where the defendant answered the complaint and took the case into discovery before seeking dismissal on the ground of amount in controversy, and thus depositions and discovery were taken before the issue of the amount in controversy was decided. Nonetheless, the *James* rule has been extended in later cases to permit litigation of the facts regarding the amount in controversy at the motion to dismiss stage.

Still, the standard to be met by HAF is minimal:  HAF must simply show that it is not foreclosed "to a legal certainty" from recovering $75,000.  *James*, 499 F.2d at 493.  Notably, HAF does not in any way have to **prove** its damages.  The D.C. Circuit has strictly applied the "legal certainty" test and has repeatedly indicated that only the small number of cases where there is no doubt that the plaintiff cannot recover $75,000 in damages may be dismissed on amount in controversy grounds.  *See, e.g., Love v. Budai*, 665 F.2d 1060, 1063 (D.C. Cir. 1980) (plaintiff who only lost a week's worth of wages because of defendant's conduct nonetheless met the amount of controversy test based on testimony that she suffered unspecified amounts of emotional distress); *Hartigh v. Latin*, 485 F.2d 1068, 1071–72 (D.C. Cir. 1973) (plaintiff who could only quantify $1,430 in compensatory damages nonetheless met amount in controversy requirement because he was likely to lose future earnings that had not yet been quantified, and could potentially recover punitive damages as well).  Thus, dismissals for amount in controversy are limited to situations where the plaintiff has no "chance whatever of meeting the statutory mandate."  *Payne v. District of Columbia*, 559 F.2d 809, 821 (D.C. Cir. 1977) (threatening

conduct by police officer that caused no physical harm or monetary loss nonetheless met amount in controversy requirement).

Rather than requiring a plaintiff to quantify every item of compensatory damages, courts are instead required to estimate the "maximum potential value" of the plaintiff's claim. *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993) (plaintiff who testified as to continued pain met amount in controversy requirement despite no quantification of pain and suffering damages). In other words, there can be no weighing of evidence, and no resolution of contested facts against HAF:  the Court must calculate the maximum amount that HAF **could** recover, if all the factual conflicts are resolved in HAF's favor, all inferences are drawn HAF's way, and HAF is awarded every single dollar of damages potentially legally available to it.  Even if the Court would not award a particular item of damages, or would disagree with a jury verdict awarding it, that is not a basis for dismissing based on amount in controversy because the Court may only consider the maximum **potential** value of the claim.  *See also Mace v. Domash*, 550 F. Supp. 2d 101, 106 (D.D.C. 2008) (even if plaintiff is unable to recover his claimed damages, the amount is still in controversy).

Even those D.C. Circuit cases that permit dismissals based on amount in controversy emphasize the narrowness of the inquiry.  *Bronner ex rel. American Studies Ass'n v. Duggan*, 962 F.3d 596, 606 (D.C. Cir. 2020) stated that "the issue is not whether the plaintiff is victorious once the dust settles.  Success (or lack thereof) on the merits is not the linchpin of federal diversity jurisdiction."  *Id.*  Thus, *Bronner* held that the amount in controversy was not met when a substantive legal doctrine (in that case the separate legal status of corporations, which denies entities standing to sue for damages resulting from harm to their shareholders) barred the plaintiff from recovery.

In *National Ass'n of Mental Health v. Califano*, 717 F.2d 1451, 1459 (D.C. Cir. 1983), plaintiff's counsel admitted at a court hearing that his clients' damages were approximately $1,250, well under the amount in controversy requirement.  The court there held, based on those facts, that "[t]he standard of 'legal certainty' is a high one, but we are satisfied that the record as a whole supports the District Court's conclusion here."  *Id.*

In sum, under D.C. Circuit law, the Court has a very limited remit to review the amount in controversy.  It may only dismiss if the absolute maximum potential value of HAF's claim, resolving every single factual dispute and drawing every single inference in HAF's favor, cannot possibly be $75,000 or higher.  If there is even a slight chance, based on evidence by which the Court might not even be persuaded, but a jury might be, that the damages might total $75,000, it would be reversible error to dismiss on this ground.

### B.  The Evidence Establishes That The Amount In Controversy Requirement Is Met.

#### 1.  HAF has demonstrated that over $1.3 million in lost donations are in controversy.

HAF has cleared far over the low bar for a plaintiff to demonstrate the amount in controversy.  HAF has shown that there were reductions in donations to HAF of $84,991.98 in 2021 and $72,632.90 in 2022, following Defendants' defamatory statements.  HAF also showed donors who had donated $648,061 in the year prior stopped donating in 2021, and donors who had donated $564,447 in the year prior stopped donating in 2022.  Defendants do not deny that these reductions occurred; they simply argue that it is possible that these lost donations were not caused by Defendants' conduct.  However, this completely ignores the legal certainty test.

Defendants do not even attempt to show that it is a legal certainty that these damages

6

would not be recoverable, because they cannot do so.  Rather, Defendants argue a completely different issue, which cannot be considered at this time; Defendants are making what is essentially a summary judgment argument on causation.  There is no basis under D.C. Circuit law for the Court to resolve the legal issue of causation based only on limited discovery of the amount in controversy.  The only issue is whether the $1.3 million+ in lost donations is **in controversy**.  So long as HAF could **potentially** recover these damages, the amount in controversy requirement is satisfied.

Defendants also argue that HAF admitted that it has not yet asked any specific donor why a specific donation was reduced or eliminated.  Again, however, this puts the cart before the horse—there is no legal doctrine that permits Defendants to use the amount in controversy to obtain an early summary judgment on causation.  *See Jung v. Mundy Holt & Mance*, 2005 WL 8165853 at *2 (D.D.C. Jun. 3, 2005) (legal bill for $98,402 establishes amount in controversy even though defendants claimed the amount did not result from their tortious conduct).

There is also no requirement that HAF marshal all the evidence it might use at trial at the start of the case simply because Defendants contest amount in controversy.  For instance, HAF might decide to question donors later in preparation for trial, or to call some donors as witnesses. It might also have an expert witness create a model to determine the amount of donations that are attributable to Defendants' actions.  HAF might also argue that it is entitled to recovery of the entire $1.3 million based on the legal theory that Defendants' wrongful actions made a more precise estimation of damages impossible.  *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) ("[T]he jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances 'juries are allowed to act on probable and inferential as well as (upon) direct and positive proof.'...Any other rule would

enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain.").

Defendants' argument that HAF's damages are "speculative" fares no better.  There is no requirement that **at the time the complaint is filed**, plaintiff must have established all of its damages to certainty.  As noted above, several D.C. Circuit cases have held the amount in controversy was met based on mere testimony of the plaintiffs' emotional distress or their potential to recover punitive damages, which was not reduced to any amount at all.  It was surely "speculation" whether the ultimate amount awarded to these plaintiffs would exceed the amount in controversy; nonetheless, this was sufficient because the legal standard does not require that the plaintiff develop all of the proof necessary to bring their damages claims to trial at the amount in controversy stage.  So long as Defendant cannot negate the damages claims to a legal certainty (for instance, through a judicial admission of the plaintiff (*Bronner*) or a legal doctrine that prohibits damages altogether (*Califano*), the amount in controversy requirement is met.

Defendants argue for a different standard that would allow them to pursue a speculative damages argument, based solely on isolated language from *Rosenboro* that is taken out of context.  *Rosenboro* does contain a "to be sure" statement saying that "purely speculative" damages might not be enough to satisfy amount in controversy, but that comes just after the court stated "[n]evertheless, federal courts are still obliged...to include inherently nebulous unliquidated damage claims in the amount in controversy calculus."  *Rosenboro*, 994 F.2d at 19. In other words, even "inherently nebulous unliquidated" damages are sufficient to meet the standard.  *Id.*  What *Rosenboro* meant by speculative can be seen by the language immediately before the "purely speculative" damages statement, a case parenthetical stating "bare allegation

of such damages as pain and suffering and loss of consortium does not satisfy the jurisdictional amount requirement." *Id.*  In other words, *Rosenboro* merely says that a party cannot rely on its complaint that says nothing more than the plaintiff experienced pain and suffering.  Obviously, that "purely speculative" exception does not apply here, where there is an extensive evidentiary record.[1]

The point is:  in no sense have Defendants shown **to a legal certainty** that it is impossible for HAF to recover more than $75,000 in lost donations.  They obviously cannot, given that more than $1.3 million in donations were reduced or lost after the Defendants commenced their campaign to defame HAF.  Defendants have simply made arguments that one might make on a summary judgment motion based on causation, or, more appropriately, to a jury in a plea to reduce the damages.  As Defendants cannot show that it is legally certain that there is no possible way that HAF will recover $75,000 or more in lost donations, their arguments fail.

### 2.   HAF Has Shown That $186,000 in Lost Grants And Opportunities Are in Controversy.

Defendants' arguments regarding lost grants and opportunities suffer from the same defects.  Defendants argue that lack of causation and speculative damages establish that it is 100% certain that HAF will never possibly recover more than $75,000 for the grants and opportunities that it lost.

A good example of Defendants' improper attempts to shoehorn other arguments into the amount in controversy requirement concerns the Oak Foundation grant.  HAF sought a grant from the Oak Foundation for $143,000.  HAF met the qualifications for the grant, and its

---

[1] Defendants' other "authority" for their speculative damages argument is an unpublished three-paragraph memorandum decision from 1999, which contains no analysis whatsoever about why the damages allegations in that case were speculative.  *Broida v. First Union Visa Corp.*, 1999 WL 1215354 at *1 (D.C. Cir. Dec. 7, 1999).

corporate designee testified to that effect.   However, the grant was denied, and the Oak Foundation, understandably, did not reveal the reason for the lost grant.  To Defendants, this last point is fatal, *i.e.* because the Oak Foundation did not say that it denied the grant due to Defendants' scheme to defame HAF, it must be assumed that Oak Foundation did not do so and any other conclusion is "speculative."

Defendants are thus essentially arguing for a direct evidence requirement that would simply negate claims in federal court based on this common fact pattern.  After all, a plaintiff is rarely, if ever, told why they lost the grant, why they lost their job or were never hired, or why they were not admitted to the college they applied to, particularly at this early stage of the proceedings before substantive discovery has commenced.

Nonetheless, numerous legal causes of action, from breach of contract to anti-discrimination law, permit parties to litigate and establish by circumstantial evidence that the reason for such adverse actions was something the defendant did.  Indeed, the U.S. Supreme Court has remarked, in the context of mixed motive discrimination cases (where an adverse employment action is alleged to have occurred due to some unexpressed improper motive), that direct evidence and circumstantial evidence are to be treated alike and that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (citation and quotations omitted).

Obviously, HAF's loss of the Oak Foundation grant by itself is sufficient to meet the amount in controversy requirement, and Defendants have not come close to showing that it is legally certain that a jury could never award the amount of the lost Oak Foundation grant to HAF.  That, by itself, is enough to deny the motions to dismiss based on the amount in

controversy.

Defendants' arguments regarding the Allstate grant and the Fortune 500 Company seminar are without merit for the same reason.  In all of these cases, Defendants are arguing that just because, at the start of a lawsuit, HAF has not gotten someone on the record to say "yes, we rejected you because of the Defendants' defamation campaign," that ends the case.  Such an approach is entirely inconsistent with the requirements of "legal certainty" and "maximum potential value" that this Court is required to apply under controlling D.C. Circuit authority.

### 3. HAF Has Shown That $150,000 in Grants From Family Foundations Are In Controversy.

If anything, Defendants' dismissal of the family foundation evidence strays even further from the appropriate legal standard.  Here, HAF has actually offered the sort of evidence that a plaintiff might offer at trial to prove a mixed motive:  Fundraising marketing data estimating a 14.4% chance of success for this type of campaign, as compared to HAF's actual success rate of 0%.  But even this is not enough for Defendants, because, again, none of the foundations wrote to HAF and said "the reason we aren't donating to you is because of the Defendants' defamatory statements about you."

Defendants offer no arguments cognizable in this proceeding in response.  They suggest that the fundraising marketing data does not establish that the family foundations would have donated to HAF, only that other organizations have a 14.4% success rate.  However, Defendants do not cite to any law that holds they may make what are essentially *Daubert* arguments against a damages theory at the amount in controversy stage.  And again, if the Court believes that there is even a tiny possibility that HAF would recover more than $75,000 based on lost donations from a family foundation, then it must deny the motion to dismiss under controlling D.C. Circuit

11

authority.

**4.   This Court must consider the lost potential new donors even if the losses have not yet been quantified.**

Defendants' claim that lost potential new donors cannot be considered contradicts D.C. Circuit authority holding that even unliquidated claims must be considered in determining whether the amount in controversy has been met.  Because these potential new donors have not donated yet, HAF does not have detailed evidence as to the amount they would have donated.  At trial, HAF should be permitted to offer any reasonable estimate of this, but as of now, the claim is unliquidated—in other words, it is directly analogous to the unliquidated emotional distress claims that D.C. Circuit authority holds must be considered in determining amount in controversy.  *Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F. Supp. 3d 1, 15 (D.D.C. 2014) (dismissal is improper when there are "too many unquantifiable variables" in the plaintiff's damages allegations).  Defendants have not negated to a legal certainty that HAF has lost $75,000 in new donations based on their defamatory campaign.[2]

**5.   Moneys raised after or as a result of this litigation are not cognizable to reduce the amount in controversy.**

After Defendants published their defamatory statements, HAF received approximately $370,000 from first-time donors, some of which may have been raised in connection with litigation fundraising efforts by HAF.  Like many nonprofit groups facing the prospect of litigation, HAF conducted a litigation fundraising campaign in connection with this lawsuit, which raised money for its legal defense fund.  HAF uses the fund to prosecute this lawsuit as well as for other legal projects of interest to HAF donors and the Hindu-American community.

---

[2] Similarly, the fact that HAF has not yet quantified its lost staff time does not mean that such time should not be considered by this Court when ruling on the amount in controversy.

The D.C. Circuit recognizes the collateral source rule, which holds that "an injured person may usually recover in full from a wrongdoer regardless of anything he may get from a 'collateral source' unconnected with the wrongdoer." *Hudson v. Lazarus*, 217 F.2d 344, 346 (D.C. Cir. 1954). Thus, as a matter of law, moneys raised by HAF as a result of Defendants' defamation campaign, which required HAF to bring this lawsuit, do not reduce HAF's damages.

In any event, however, even if the collateral source rule did not bar Defendants' argument, a potential mitigation defense would not decrease the amount in controversy. Even if a jury were to reduce HAF's damages based on some mitigation claim by Defendants, the maximum **potential** recovery, which is the only thing relevant for amount in controversy, would be the same. *See Rosenboro*, 994 F.2d at 19 n. 4 ("[D]efenses cannot be considered in determining the amount in controversy."). Thus, Defendants may not rely upon any reductions in damages that they believe they might be able to obtain at trial to reduce the amount in controversy in this litigation at this point.

### 6. The Expulsion of HAF from the Alliance Against Genocide Must Be Considered in the Amount in Controversy.

Defendants argue that because Alliance Against Genocide ("AAG") stated (in an out of court, unsworn statement) that this lawsuit was the reason HAF was expelled, this means that the expulsion of HAF cannot be considered part of the amount in controversy. However, Defendants cite no authority for the proposition that just because AAG may have reacted to this lawsuit rather than the underlying conduct, this cannot be traceable to the Defendants as an item of damages. This lawsuit was necessitated by Defendants' conspiracy to defame HAF, and a party's resort to the courts as a result of tortious conduct is a natural and foreseeable result of tortious conduct. *See, e.g., Lacy v. District of Columbia*, 424 A.2d 317, 320 (D.C. App. 1980)

(so long as there is a "natural and continual sequence," an intervening event does not negate proximate cause under D.C. tort law).  Defendants' statement that "HAF has no one but itself to blame for its expulsion" is unmitigated victim-blaming.

## 7. HAF's Expert Testimony of the Cost of Repairing Its Reputation Establishes the Amount in Controversy As Well.

HAF's expert, Eric Rose, a reputation repair specialist, has issued a report that concludes it will cost at least $485,000 to restore HAF's reputation.  Again, the legal standard here is whether Defendants can establish to a legal certainty that HAF will not recover at least $75,000 in reputational repair damages.  Given the estimate of $485,000 from the expert, Defendants cannot do so.  Defendants characterize these as "future damages," but that is clearly false:  Mr. Rose's report concerns damages HAF has **already suffered**; he is simply estimating the cost of the repair.  If a plaintiff seeks damages for repair of a car after a traffic accident, those damages would not be "future damages" simply because the plaintiff has not performed the repairs yet and only has a written estimate as to the cost of repair.

## 8. Reporting of Jury Verdicts In Other Cases Confirms the Amount in Controversy Is Over $75,000.

Jury verdicts from analogous cases can also inform the conclusion that the amount in controversy requirement is met.  *Apton v. Volkswagen Group*, 233 F. Supp. 3d 4, 15 (D.D.C. 2017).  There are a number of reported jury verdicts within the past six years that this Court can refer to in confirming that the amount in controversy is met:

a. A 2016 Nevada verdict for $38 million for internet defamation and false light invasion of privacy.  *See* *https://www.mitchell-attorneys.com/internet-defamation*.

b. A 2017 Massachusetts verdict for $1.5 million for defamatory statements by a city official.  *See* *https://www.toddweld.com/nick-carter-joe-cacace-obtain-15m-federal-jury-verdict-in-defamation-case;*

https://www.toddweld.com/C855A0/assets/files/documents/Nick%20Carter%20and%20J
oe%20Cacace%20VS%20Reprint%207-3-17pdf.pdf.

c.  A 2022 Georgia defamation verdict for $1.25 million in favor of rapper Cardi B.  *See*
    https://www.billboard.com/business/legal/cardi-b-wins-million-dollar-defamation-
    verdict-against-malicious-youtuber-1235022154/.

d.  A 2022 South Carolina defamation verdict for $50 million in favor of a city official.  *See*
    https://www.wtoc.com/2022/02/04/bluffton-mayor-award-50-million-defamation-lawsuit/.

e.  A 2016 Virginia defamation verdict for $3 million in favor of a college dean against
    *Rolling Stone* magazine.  *See*  https://www.washingtonpost.com/local/education/jury-to-
    deliberate-damages-to-u-va-dean-in-rolling-stone-defamation-
    lawsuit/2016/11/07/e2aa2eb0-a506-11e6-ba59-a7d93165c6d4_story.html.

f.  A 2019 North Carolina defamation verdict for $15.8 million.  *See*
    https://clarelocke.com/wp-content/uploads/2022/04/20190315-Eshelman-Combined-
    Verdict-Forms.pdf.

g.  A 2017 New Hampshire defamation verdict in favor of a businessman for $275 million.
    *See* https://www.concordmonitor.com/Jury-awards-over-$274M-in-billboard- defamation
    -case-12815648.

Juries can award substantial damages in successful defamation cases.  The amount in
controversy here is clearly more than $75,000.

**C. Even if the Court Believes Some of the Damages Could Be Negated Under
the Legal Certainty Standard, So Long as $75,000 or More Remains in
Controversy, the Motions Must Be Denied.**

Importantly, while this brief has analyzed each component of damages individually (as
Defendants do as well), the ultimate legal standard requires the aggregation of all damages
claims, including both the liquidated ones **and** the unliquidated ones such as loss of new donors
and expulsion from the AAG.  The issue is whether, having considered all of these different and
sundry damages claims, including those that do not yet have a number, it is possible that the final
damages calculation is over $75,000.  To ask that question is to answer it—Defendants have not
even come close to meeting their enormous legal burden of showing that it is "a legal certainty"

that the maximum potential claim of HAF, under any scenario and even if all the facts are decided in HAF's favor, is less than $75,000.

**IV.     CONCLUSION**

"[C]ourts [must] be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." *Rosenboro*, 994 F.2d at 17.  Based on the extensive evidence produced by HAF, and summarized herein, this Court cannot have that confidence.  For the foregoing reasons as well as those set forth in previous briefing, the motions to dismiss for failure to state the amount in controversy should be denied.

Dated: June 24, 2022                                   Respectfully submitted,

By:  /s/ Ryan J. Stonerock
Ryan J. Stonerock
D.C. Bar 1632636
Dilan A. Esper
(admitted *pro hac vice*)
Lan P. Vu
(admitted *pro hac vice*)
HARDER LLP
8383 Wilshire Blvd., Suite 526
Beverly Hills, CA 90211
Tel. (424) 203-1600
rstonerock@harderllp.com
desper@harderllp.com
lvu@harderllp.com

David C. Tobin
D.C. Bar 395959
TOBIN O'CONNOR & EWING
5335 Wisconsin Avenue NW, Suite 700
Washington, D.C. 20015
Tel. (202) 362-5900
dctobin@tobinoconnor.com