**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HINDU AMERICAN FOUNDATION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 21-cv-01268 (APM)** |
| ) | |
| **SUNITA VISWANATH,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**<u>MEMORANDUM OPINION</u>**

## I.   INTRODUCTION

This case arises from two online articles published by aljazeera.com, an online news platform operated by Al Jazeera Media Network.  The articles concerned federal COVID-19 relief payments and loans distributed to five U.S.-based groups allegedly linked to Hindu nationalist organizations in India.  Plaintiff Hindu American Foundation, one of the groups mentioned in the articles, brings the instant defamation action not against the articles' authors or Al Jazeera, but against its critics who were quoted in the articles and published tweets concerning the articles. Plaintiff alleges that Defendants Sunita Viswanath, Raju Rajagopal, Rasheed Ahmed, Audrey Truschke, and John Prabhudoss[1] conspired to publish these allegedly false and defamatory statements and that the statements have caused substantial injury to Plaintiff, including lost donations and reputational damage.

---

[1] Plaintiff also brings suit against 20 unnamed Does but has not amended its Complaint to identify these additional defendants.

Before the court are Defendants' motions to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim.  Def. Prabhudoss's Mot. to Dismiss, ECF No. 34 [hereinafter Prabhudoss Mot.]; Defs. Viswanath & Rajagopal's Mot. to Dismiss, ECF No. 35 [hereinafter Viswanath & Rajagopal Mot.]; Def. Truschke's Mot. to Dismiss, ECF No. 36, [hereinafter Truschke Mot.], Def. Truschke's Mem. of P. & A., ECF No. 36-1 [hereinafter Truschke Mem.]; Def. Ahmed's Mot. to Dismiss, ECF No. 37 [hereinafter Ahmed Mot.]  For the reasons that follow, the motions are granted as to all Defendants.  As to Defendants Viswanath, Rajagopal, Truschke, and Ahmed, the court lacks personal jurisdiction and Plaintiff has failed to state a claim.  As to Defendant Prabhudoss, Plaintiff has failed to state a claim.

## II.   FACTUAL BACKGROUND

Plaintiff Hindu American Foundation ("HAF") is a non-profit organization whose mission is "educating the public about Hindus and Hinduism" and serving Hindu Americans across all Hindu religious traditions.  Compl. ¶¶ 1, 19.  HAF supports the political party currently in power in India, often labeled a "Hindu nationalist" party.  *Id.* ¶ 4.

Defendants are political opponents of the current Indian government, taking issue particularly with "its alleged treatment of Muslims and other religious minorities."  *Id.*  Defendants Viswanath and Rajagopal are co-founders and Board members of Hindus for Human Rights ("HfHR"), *id.* ¶ 8–9; Defendant Ahmed is the Executive Director of the Indian American Muslim Council ("IAMC"), *id.* ¶ 10; Defendant Prabhudoss is the Chairman of the Federation of Indian American Christian Organizations ("FIACONA"), *id.* ¶ 11; and Defendant Truschke is a professor of South Asian history at Rutgers University in New Jersey, *id.* ¶ 21.

### A.   First Story

On April 2, 2021, Al Jazeera published an article (the "First Story") with the headline "Hindu right-wing groups in US got $833,000 of federal COVID fund" and sub-headline "Five groups linked to Hindu nationalist organisations in India received direct payments and loans in federal relief fund."   Pl.'s Opp'n to Def. Rasheed Ahmed's Mot. to Dismiss, ECF No. 39 [hereinafter Pl.'s Opp'n Ahmed], Ex. 58, ECF No. 39-61 [hereinafter Ex. 58[2]].   The article, authored by Raqib Hameed Naik ("Hameed Naik"), concerned five organizations "with ties to Hindu supremacist and religious groups [that] received COVID-19 relief funding amounting to $833,000," and noted that HAF received the "lion's share" of the funds, with around $388,064 in Paycheck Protection Program (PPP) loans and Economic Injury Disaster Loan (EIDL) advances. Ex. 58 at 2, 7.  The First Story described HAF as an advocacy group that "lobbies to deflect any criticism of [the] Modi government's policies on Capitol Hill" and "has open links with [Rashtriya Swayamsevak Sangh] (RSS) members." *Id.* at 7.  The article describes RSS as "a far-right Hindu nationalist organization . . . which aims to create an ethnic Hindu-majority state in India," "is the ideological mentor of India's governing Bharatiya Janata Party (BJP)[,] and boasts of having Prime Minister Narendra Modi among millions of its members in India." *Id.* at 3.

Defendant Viswanath is quoted in the First Story, Compl. ¶ 25, and Defendant Truschke republished a link to the First Story with a caption on her Twitter account, *id.* ¶ 26(b).  Plaintiff does not allege that Defendants were involved in drafting the First Story.

### B.   Second Story

On April 8, 2021, Al Jazeera published a second article (the "Second Story") with the headline "Call for US probe into Hindu right-wing groups getting COVID fund" and the sub-

---

[2] The court uses PDF pagination for all exhibits.

headline "Following an *Al Jazeera* report, US-based Coalition to Stop Genocide in India demands investigation into federal funds given to 'sponsor hate.'"  Pl.'s Opp'n Ahmed, Ex. 59, ECF No. 39-62 [hereinafter Ex. 59].  The Second Story extensively quotes a statement issued by the Coalition to Stop Genocide in India ("Coalition"), which claimed that the five Hindu organizations listed in the article—including HAF—had "existential links" with RSS which, according to the Coalition, is the "fountainhead of Hindu supremacist ideology."  Ex. 59 at 2.  According to Plaintiff, HfHR, IAMC, and FIACONA, organizations which Viswanath, Rajagopal, Ahmed, and Prabhudoss lead, are "members that have a controlling interest" in the Coalition and "had approval of the [Coalition's] statements before publication."  Compl. ¶ 28.

In the Second Story, the Coalition described the five groups as "US-based front organisations for Hindutva, the supremacist ideology that is the driving force behind much of the persecution of Christians, Muslims, Dalits, and other minorities in India."  Ex. 59 at 3; Compl. ¶ 29(d)(ii).  The Coalition further accused RSS of being "directly involved in orchestrating anti-Christian and anti-Muslim pogroms and instigating terror attacks, as part of a relentless campaign to subvert India's secular moorings and turn it into a Hindu authoritarian state where minorities are relegated to the status of second class citizens."  Ex. 59 at 4; Compl. ¶ 29(d)(iv).  The Coalition also stated that RSS's "members and affiliated organisations have been implicated in countless acts of massacres, ethnic cleansing, terrorism, forced-conversions and other forms of violence against religious minorities in India."  Ex. 59 at 4; Compl. ¶ 29(d)(v).  Defendants Ahmed, Rajagopal, and Prabhudoss are quoted in the Second Story.  Compl. ¶ 29.  Plaintiff does not allege that Defendants were involved in drafting the Second Story.

### C.    Defendants' Allegedly Defamatory Statements in the Al Jazeera Articles

The individual Defendants are alleged to have made the following defamatory statements in the two Al Jazeera articles.

*Viswanath*.  Viswanath is quoted in the First Story as saying: (1) "All these organisations are sympathetic to the Hindu supremacist ideology.  Their parent organisations continue to spread hatred in Hindu communities towards Muslims and Christians," Ex. 58 at 9; Compl. ¶ 25(a)(ii); and (2) "Any American non-profit that perpetuates Islamophobia and other forms of hate should not receive federal relief funds in any form."  Ex. 58 at 9; Compl. ¶ 25(a)(iii).  The article describes Viswanath as expressing "concern that the US pandemic relief funds might end up furthering hate campaign against Muslims and other minorities in India."   Ex. 58 at 9; Compl. ¶ 25(a)(i).  HAF alleges that Viswanath, along with Rajagopal, "caused" HfHR to post a link to the First Story and Second Story on its Twitter account and website.  Compl. ¶¶ 27, 31.

*Rajagopal*.  Rajagopal made the following statement in the Second Story: "The rise of HAF and other organisations linked with Hindutva has emboldened Hindu supremacist organizations in India, while also stifling the moderate Hindu voices here in the US."  Ex. 59 at 4; Compl. ¶ 29(b).  HAF alleges that Rajagopal, along with Viswanath, "caused" HfHR to post a link to the First Story and Second Story on its Twitter account and its website.  Compl. ¶¶ 27, 31.

*Ahmed*.  The Second Story reports Ahmed as having said: "US taxpayers' money being used to keep hate groups in business is absolutely unacceptable and should concern all who believe in fairness, justice and government accountability."  Ex. 59 at 3; Compl. ¶ 29(a)(i).  HAF alleges that Ahmed "caused" IAMC to republish the First Story on its Twitter account and website with the caption: "Experts have raised concerns that the US pandemic relief funds received by Hindu rightwing groups might end up furthering hate campaign against Muslims and other minorities in

India." *Id.* ¶ 26(a).  HAF further alleges that Ahmed "caused" IAMC to republish a version of the Second Story on its website as a "Press Release" attributed to the Coalition.  *Id.* ¶ 30(a).  The Press Release stated that the Coalition was "committed to ensuring that American institutions and discourse are safeguarded from the virulent Hindutva ideology" and "will continue to expose Hindutva front organizations in the US and their role in normalizing the human rights abuses and religious freedom violations in India."  *Id.*

*Prabhudoss*.  Prabhudoss made the following statement in the Second Story: "Government watchdog groups as well as human rights organisations need to take serious note of the misappropriation of COVID funding by Hindu supremacist groups [in] the United States."  Ex. 59 at 5; Compl. ¶ 29(c).  A few weeks after the Second Story was published, Prabhudoss tweeted: "Recently realized that the @HinduAmerican just confirmed and acknowledged through its own lawyers that they are a Hindu supremacist organization in the US operating as a charity.  Wow! Who would have thought that!!"  Compl. ¶ 34.

*Truschke*.  Defendant Truschke is not quoted in either article.  However, Truschke did post a link to the First Story on her Twitter account with the following allegedly defamatory caption: "To add a personal note—Some of the groups mentioned here, especially HAF, have participated in a recent coordinated effort attacking me.  That effort has involved targeted harassment of me and others and violent threats.  This is a huge red flag for a US-based organization."  *Id.* ¶ 26(b)(i). Five days after publication of the Second Story, Truschke issued three tweets concerning HAF that accused it of promoting the Hindutva ideology in the U.S. and of "going after" Truschke due to her activism.  *Id.* ¶ 33.  Truschke republished the First Story with commentary "numerous times"

and posted a link of the Second Story to her Twitter account with additional commentary.  *Id.*
¶¶ 27, 31.

### D.     Conspiracy Among Defendants, Hameed Naik, and the Coalition

Plaintiff alleges that Defendants and their respective organizations have "substantial ties"
with Hameed Naik, the author of the First Story.  *Id.* ¶ 22.  Specifically, Defendant Ahmed
"arranged for Hameed Naik to appear at IAMC's virtual strategic meeting of its Executive Team."
*Id.* ¶ 32.  Plaintiff further contends that Defendants Viswanath, Rajagopal, Ahmed, and Prabhudoss
are leaders of organizations (HfHR, IAMC, and FIACONA) that "have a controlling interest" in
the Coalition and "had approval of [the Coalition's] statements before publication."  *Id.* ¶ 28.

Plaintiff says that Defendants' statements have "caused substantial damage[] to HAF's
reputation and its ability to raise funds."  *Id.* ¶ 35.

## III.    PROCEDURAL HISTORY

Plaintiff filed the instant complaint on May 7, 2021, bringing defamation and civil
conspiracy claims against each Defendant.  *See* Compl. ¶¶ 41–54.  Defendants moved to dismiss
for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim.
*See* Prabhudoss Mot.; Viswanath & Rajagopal Mot.; Truschke Mot.; Ahmed Mot.  In response to
Defendant Ahmed's argument that this court lacked subject matter jurisdiction because HAF had
not met the amount-in-controversy requirement, *see* Ahmed Mot. at 13–15, this court stayed the
pending motions for a limited period of jurisdictional discovery.  Order, ECF No. 48.  The parties
filed supplemental briefs[3] and their motions are now ripe for consideration.

---

[3] Defs.' Consolidated Supp. Brief in Supp. of Mot., ECF No. 55-1 [hereinafter Defs.' SMJ Mot.]; Pl.'s Supp. Mem. in Opp'n to Mot., ECF No. 58 [hereinafter Pl.'s SMJ Opp'n]; Defs.' Consolidated Reply Supp. Brief in Supp. of Mot., ECF No. 60 [hereinafter Defs.' SMJ Reply].

## IV.    LEGAL STANDARD

*Subject Matter Jurisdiction.* When deciding a motion to dismiss under Rule 12(b)(1), a court must accept all well-pleaded factual allegations in the complaint as true. *See Jerome Stevens Pharms., Inc. v. FDA.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). However, because the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," a plaintiff's factual allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted). Accordingly, the court may consider "such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record . . . plus the court's resolution of disputed facts." *See Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted).

*Personal Jurisdiction.* "The plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant," *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990), and to meet that burden, plaintiffs must allege "specific facts upon which personal jurisdiction may be based," *Blumenthal v. Drudge*, 992 F. Supp. 44, 53 (D.D.C. 1998). Similar to a 12(b)(1) motion, "the Court need not treat all of a [plaintiff's] allegations as true when determining whether personal jurisdiction exists over a defendant." *Lewy v. S. Poverty L. Ctr., Inc.*, 723 F. Supp. 2d 116, 119 (D.D.C. 2010). However, any "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *New York Zoological*, 894 F.2d at 456. A plaintiff "may rest their argument on their pleadings, bolstered by such affidavits and

other written materials as they can otherwise obtain." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

*Failure to State a Claim.*  A motion to dismiss for failure to state a claim "tests the legal sufficiency of a claim." *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, if accepted as true, that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is "plausible" if a plaintiff pleads facts which "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The court must accept the plaintiff's factual allegations as true and must grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, the court "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam).

## V.  DISCUSSION

### A.  Subject Matter Jurisdiction

The court begins, as it must, with its jurisdiction to hear this matter.  Plaintiff invokes the court's diversity jurisdiction.  Compl. ¶ 16 (citing 28 U.S.C. § 1332(a)(1)).  It alleges that "Plaintiff and Defendants are citizens of different states," that Defendants' conduct caused "substantial injury" to "HAF's reputation and ability to fundraise," and that Plaintiff "suffered, or will suffer, lost donations . . . which exceed $75,000." *Id.* ¶¶ 6, 16, 49.  Defendants dispute that Plaintiff can satisfy the amount-in-controversy requirement.  With the benefit of jurisdictional discovery, Defendants argue that HAF is "unable to identify *any* evidence of economic harm."  Defs.'

Consolidated Supp. Brief in Supp. of Mot., ECF No. 55-1 [hereinafter Defs.' SMJ Mot.], at 1. "[N]ot a single existing or potential donor ever told HAF it was reducing, eliminating, or not making initial contributions due to the challenged statements," Defendants assert, making HAF's estimated amount in controversy "entirely speculative." *Id.* at 1–2. HAF responds that it has cleared "the low bar for a plaintiff to demonstrate the amount in controversy" and that Defendants' argument "is essentially a summary judgment argument on causation," which is improper at this stage. Pl.'s Supp. Mem. in Opp'n to Mot., ECF No. 58 [hereinafter Pl.'s SMJ Opp'n], at 6–7. The court agrees with Plaintiff.

To invoke the court's diversity jurisdiction, a party must establish both complete diversity of parties and an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332(a). While plaintiffs "bear[] the burden of establishing the amount in controversy," *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993), they are not required to "provide an exact valuation or detailed breakdown of damages at the outset of litigation" and the claimed amount controls if "made in good faith," *Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 610 (D.C. Cir. 2020) (internal quotation marks omitted). A court must be "very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." *Rosenboro*, 994 F.2d at 17. "But it does not follow that any unsupported claim will suffice," and dismissal is warranted if a plaintiff submits "no evidence supporting [its] alleged injury." *Bronner*, 962 F.3d at 610 (internal quotation marks and alterations omitted). Once the amount in controversy is challenged, the party claiming jurisdiction "must produce evidence supporting a legal uncertainty about whether [it] could prove" the amount asserted. *Rosenboro*, 994 F.2d at 18.

In their consolidated supplemental briefing, Defendants focus primarily on Plaintiff's alleged failure to establish causation between the challenged statements and the evidence it

presents of reduced donations and lost grant opportunities.[4]  *See* Defs.' SMJ Mot. at 2 ("HAF postulates that every single donor who gave it money in 2020, but did not give or gave less in 2021 or 2022, must have made those choices because of the challenged statements—without evidence that any particular donor even knew of the statements.").  Plaintiff responds that it has provided adequate information regarding its damages, and that causation goes to the merits of its claims rather than whether it has met the amount in controversy requirement.  *See* Pl.'s SMJ Opp'n at 7 ("There is no basis under D.C. Circuit law for the Court to resolve the legal issue of causation based only on limited discovery of the amount in controversy.").

While the court is skeptical of Plaintiff's ability to prove causation between the challenged statements and the alleged damages—it has proffered little, if any, evidence of a causal connection—the court's skepticism is not sufficient at this stage to warrant dismissal of the complaint.  *See Rosenboro*, 994 F.2d at 17 ("[C]ourts [must] be very confident that a party cannot recover the jurisdictional amount before dismissing."); *Kaplan v. Jewett*, 229 F. Supp. 3d 731, 738 (N.D. Ill. 2017) ("Defendant devotes substantial energy to attacking the causation element of Plaintiff's case . . . . Defendant, however, confuses Plaintiff's burden of proof *at trial* with her burden in the face of an *amount-in-controversy challenge*.") (emphasis in original).  This court finds that HAF has sufficiently placed into controversy whether over $75,000 in donations and grant opportunities was lost due to Defendants allegedly defamatory statements.  "[T]he law is generous to plaintiffs on amounts in controversy," and HAF has met the "low bar" that the law

---

[4] While the court doubts whether staff time expended to mitigate the alleged harm and reputational damage can be considered when determining the amount in controversy, it does not need to resolve the question because HAF meets the $75,000 threshold without it.  *See Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1156 (D.C. Cir. 1985) ("[A] corporation suing for defamation . . . may only recover actual damages in the form of lost profits.").

requires by specifying the value of donations and grant opportunities it allegedly has lost. *BYD Co. v. All. for Am. Mfg.*, 554 F. Supp. 3d 1, 7 (D.D.C. 2021).

### B.   Personal Jurisdiction

The court now turns to Defendants Viswanath, Rajagopal, Truschke, and Ahmed's motions to dismiss Plaintiff's claims against them for lack of personal jurisdiction.[5]  *See* Viswanath & Rajagopal Mot. at 12–16; Truschke Mem. at 13–20; Ahmed Mot. at 6–12; FED. R. CIV. P. 12(b)(2). Personal jurisdiction is a threshold matter the court must resolve before reaching the merits of a claim.  *See Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018).

The Supreme Court has recognized "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Plaintiff alleges that Viswanath, Rajagopal, Truschke, and Ahmed reside in New York, California, New Jersey, and Illinois, respectively.  Compl. ¶¶ 8, 9, 10, 12.  None reside in the District of Columbia, so there is no general jurisdiction over any of them.

A court can exercise specific jurisdiction over "defendants less intimately connected with [the forum state], but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).  "In order to establish specific jurisdiction over a non-resident defendant in a diversity case such as this, [HAF] must plead facts that (1) bring the case

---

[5] References to "Defendants" in Section V.B concerns Viswanath, Rajagopal, Truschke, and Ahmed.  Defendant Prabhudoss did not move to dismiss for lack of personal jurisdiction and has thus waived any objection to being sued in this forum.  *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982) ("[T]he failure to enter a timely objection to personal jurisdiction constitutes . . . a waiver of the objection.").

within the scope of the District of Columbia's long-arm statute, D.C. CODE § 13–423(a), and (2) satisfy the constitutional requirement of due process." *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 81 (D.D.C. 2006); *see also Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020).

a.    Long-Arm Statute

"The District's long-arm statute states, in pertinent part, that courts may exercise jurisdiction over any person who, acting directly or through an agent, engages in the following conduct:

> (1) transacts any business in the District of Columbia;
>
> (2) contracts to supply services in the District of Columbia;
>
> (3) causes tortious injury in the District of Columbia by an act or omission in the District of Columbia; or
>
> (4) causes tortious injury in the District of Columbia by an act or omission outside the District of Columbia if the person 'regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.'"

*Kopff*, 425 F. Supp. 2d at 81–82 (quoting D.C. CODE § 13-423(a)).  Plaintiff claims the court can properly exercise jurisdiction over all Defendants under §§ 13–423(a)(1) and (a)(3), and over Viswanath, Rajagopal, and Ahmed under § 13–423(a)(4).  Pl.'s Opp'n Ahmed at 15–26; Pl.'s Opp'n to Mot. by Def. Viswanath & Rajagopal, ECF No. 40 [hereinafter Pl.'s Opp'n Viswanath & Rajagopal], at 14–28; Pl.'s Opp'n to Def. Truschke's Mot., ECF No. 41 [hereinafter Pl.'s Opp'n Truschke] at 15–21.  The court addresses each in turn.

*Section 13-423(a)(1).*  For cases under § 13–423(a)(1), the long-arm statute and due process inquiry merge into one, because "§ 13-423(a)(1) provides jurisdiction to the full extent allowed by the Due Process Clause."  *Urquhart-Bradley*, 964 F.3d at 44 (internal quotations omitted).  As a threshold matter, the complaint is devoid of any facts alleging that the Defendants

"transact[ed] any business in the District of Columbia."  Plaintiff's jurisdictional allegations rely on contacts between Defendants' employers and the District, not on contacts between Defendants and the District.  *See e.g.*, Pl.'s Opp'n Ahmed at 19 ("IAMC is organized under the laws of [the] District and has thus necessarily availed itself of the privileges and responsibilities of doing business here.").  For that reason alone, the court cannot exercise jurisdiction over any Defendant under § 13–423(a)(1).

Plaintiff nevertheless contends that Defendants Viswanath, Rajagopal, and Ahmed are subject to this court's jurisdiction under (a)(1) due to the "more than a mere employee" exception to the fiduciary shield doctrine.  *See* Pl.'s Opp'n Ahmed at 16–21; Pl.'s Opp'n Viswanath & Rajagopal at 16–21.  If a court has personal jurisdiction over a corporation, HAF argues, the court can exercise jurisdiction over "individual corporate officers or employees, based on the company's activities" as long as they are "more than mere employees of the corporation."  Pl.'s Opp'n Ahmed at 17 (internal citation omitted); Pl.'s Opp'n Viswanath & Rajagopal at 17.  But the D.C. Circuit has held that "the fiduciary shield doctrine lacks any basis in either the Due Process Clause or the transacting-business prong of the District of Columbia's long-arm statute, D.C. Code § 13-423(a)(1)."  *Urquhart-Bradley*, 964 F.3d at 40.  So, the "more than a mere employee" exception cannot establish jurisdiction under § 13-423(a)(1).  Plaintiff must establish that Defendants themselves transacted business in the District of Columbia; it has failed to do so.

*Section 13-423(a)(3).*  Under § 13–423(a)(3), a court can exercise personal jurisdiction over a defendant who causes "tortious injury in the District of Columbia[] by an act or omission in the District of Columbia."  § 13–423(a)(3).  Plaintiff argues that jurisdiction is proper under § 13–423(a)(3) because Defendants are representatives of D.C.-based entities and caused injury to D.C.-based HAF by making statements to a D.C. branch of Al Jazeera, which published stories

that were eventually circulated in the District.  *See e.g.*, Pl.'s Opp'n Ahmed at 25.  Plaintiff's argument is inapposite, because § 13–423(a)(3) requires the *tortious conduct* to have occurred in the District of Columbia.  Plaintiff does not allege that the defamatory statements were made here. Accordingly, this subsection is inapplicable.

*Section 13-423(a)(4).*   Finally, HAF seeks jurisdiction over Defendants Viswanath, Rajagopal, and Ahmed under § 13–423(a)(4) on the grounds that they regularly do or solicit business in the District and engage in a "persistent course of conduct" in the District.[6]  Pl.'s Opp'n Ahmed at 24–25; Pl.'s Opp'n Viswanath & Rajagopal at 24–25.  Defendants respond that HAF, once again, fails to identify any contacts between the individual Defendants and the District, pointing instead only to contacts HfHR and IAMC have with the District.  *See* Reply Mem. of P. and A. in Supp. of Def. Rasheed Ahmed's Mot., ECF No. 47, at 5–6 ("Plaintiff simply reiterates that Ahmed is an officer of IAMC"); *see also* Reply Mem. of P. and A. in Supp. of Def. Viswanath & Rajagopal Mot., ECF No. 44 [hereinafter Viswanath & Rajagopal Reply], at 7.

For a court to exercise jurisdiction under § 13–423(a)(4), a plaintiff must make a *prima facie* showing that (1) plaintiff suffered a tortious injury in the District of Columbia; (2) the injury was caused by the defendant's act or omission outside of the District of Columbia; and (3) the defendant either "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  D.C. CODE § 13-423(a)(4); *Blumenthal*, 992 F. Supp. at 53.  Section 13–423(a)(4) is "more restrictive than the Due Process Clause of the Constitution—meaning the District government has made a deliberate decision not to allow access to D.C. courts to every person who is injured here and otherwise could bring a claim for civil redress."  *Kopff*,

---

[6] Plaintiff does not seek jurisdiction over Defendant Truschke under § 13-423(a)(4).

425 F. Supp. 2d at 82.  It requires a "plus factor" that is "separate from and in addition to the in-state injury," showing that there is "some other reasonable connection between the state and the defendant."  *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987).  The purpose of the "plus factor" is "to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum."  *Id.* at 763.  "[T]he claim need not arise from the 'plus factors'" and a "defendant's contacts need not be great to satisfy subsection (a)(4)."  *Lewy*, 723 F. Supp. 2d at 123–24.  However, the contacts must "at least be continuing in character."  *Burman v. Phoenix Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 153 (D.D.C. 2006) (citation omitted).

*Injury in the District.*  Plaintiff argues that its injury occurred in the District because "HAF is domiciled and headquartered" in the District and its "reputation and ability to fundraise [has] been injured" as a result of Defendants' allegedly defamatory statements.  *See, e.g.*, Pl.'s Opp'n Ahmed at 23–24.  The court agrees that HAF suffered tortious injury in the District caused by the allegedly defamatory statements.  *See Carr*, 814 F.2d at 760 (stating that defamation claims "are the kind in which the injury, foreseeably, is felt with greatest force in the place where the plaintiff lives").

*Conduct Outside the District.*  Defendant Ahmed argues that neither (a)(3) nor (a)(4) are met because HAF does not plead where the allegedly defamatory statements were made.  *See McIntosh v. Gilley*, 753 F. Supp. 2d 46, 58 (D.D.C. 2010) ("[T]he Complaint fails to meet either (a)(3) or (a)(4) because the Complaint does not allege, *inter alia*, where [Defendants] created and sent the email at issue. . . .  Accordingly, the Court finds that the Complaint does not allege specific facts connecting [Defendants'] allegedly libelous email to the District.").  But when ruling on a 12(b)(1) motion to dismiss, the court is not limited to arguments made in the pleadings and can

review "affidavits and other written materials" submitted by the parties. *Mwani*, 417 F.3d at 7. The record shows that Viswanath and Rajagopal were in New York and California, respectively, when communicating with the Al Jazeera reporter. *See* Viswanath & Rajagopal Mot., Decl. of Sunita Viswanath, ECF No. 35-1 [hereinafter Viswanath Decl.] ¶ 5; Viswanath & Rajagopal Mot., Decl. of Raju Rajagopal, ECF No. 35-2 [hereinafter Rajagopal Decl.] ¶ 5. While the court is less certain about Ahmed's whereabouts when he made his allegedly defamatory statement, the record shows that Ahmed's last two visits to the District were in January 2020 and July 2021. Ahmed Mot., Decl. of Def. Rasheed Ahmed in Supp. of Mot., ECF No. 37-1 [hereinafter Ahmed Decl.] ¶¶ 3, 4. Because both articles were published in April 2021, *see* Ex. 58, Ex. 59, it is reasonable to assume that any statement Ahmed made would have been on or around April 2021, when he was not in the District. *See* Ahmed Decl. ¶¶ 3, 4. Accordingly, the court finds Defendants' allegedly defamatory statements were made outside the District.

*Persistent Code of Conduct/Regularly Do Business.* Plaintiff argues that Defendants Viswanath, Rajagopal, and Ahmed, as controlling officers of their respective D.C.-based entities, "regularly do[] business" and engage in a "persistent course of conduct" in the District of Columbia. Pl.'s Opp'n Ahmed at 24; Pl.'s Opp'n Viswanath & Rajagopal at 24–25. Plaintiff rests its arguments under subsection (a)(4) on "the same reasons and based upon the same voluntary, deliberate, and regular contacts with this District specified under Subsection (a)(1)." Pl.'s Opp'n Ahmed at 24; Pl.'s Opp'n Viswanath & Rajagopal at 24. In other words, Plaintiff relies on contacts that HfHR and IAMC have with the District. Pl.'s Opp'n Ahmed at 24 ("Ahmed—as a controlling officer of D.C.-based IAMC—'regularly does business' and/or engages in a 'persistent course of conduct' in this District.") (cleaned up); Pl.'s Opp'n Viswanath & Rajagopal at 24–25 ("Viswanath

and Rajagopal—as controlling officers of D.C.-based HfHR—'regularly do business' and/or engage in a 'persistent course of conduct' in this District.") (cleaned up).

Plaintiff's complaint and supporting materials are devoid of any facts establishing a "real connection" between Defendants and the District. *Lewy*, 723 F. Supp. 2d at 124. There are neither allegations nor factual support that they solicit business or engage in conduct that is "continuing in character." *Burman*, 437 F. Supp. 2d at 153. Plaintiff's allegations are largely conclusory and concern HfHR and IAMC, not the individual Defendants. Pl.'s Opp'n Viswanath & Rajagopal at 24–25 (arguing that jurisdiction is proper because Defendants "have longstanding ties with this District" as founders and controlling officers of entities organized under D.C. law); *see also* Pl.'s Opp'n Ahmed at 24. Plaintiff's argument fails because, as "a general rule, courts cannot exert jurisdiction over individual corporate officers or employees 'just because the court has jurisdiction over the corporation.'" *Lewy*, 723 F. Supp. 2d at 129 (citation omitted). Viswanath, Rajagopal, and Ahmed's contacts with the District are insufficient to establish jurisdiction under § 13-423(a)(4). *See id.* (stating that "occasionally writ[ing] articles for national publications that are distributed in the District" and "travel[ing] to the District four times" in eight years does not amount to a "persistent" course of conduct).

b.    Due Process Clause

Because HAF has not satisfied the D.C. long-arm statute, this court "need not reach the constitutional portion of the analysis." *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 6 (D.D.C. 2019); Truschke Mem. at 18; Ahmed Mot. at 9. However, even if the long-arm statute were satisfied, the case against Defendants could not stand because the exercise of personal jurisdiction would not "comport with constitutional due process." *Id.* Due process is satisfied when there are sufficient "'minimum contacts' between the defendant and the forum such that the defendant 'should

18

reasonably anticipate being haled into court there.'" *Urquhart-Bradley*, 964 F.3d at 44. "[M]inimum contacts exist where a defendant takes 'intentional, and allegedly tortious, actions' 'expressly aimed' at a jurisdiction." *Id.* at 48 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)). Importantly, a plaintiff "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Plaintiff's complaint contains one conclusory jurisdictional allegation: that "Defendants . . . have minimum contacts with Washington, District of Columbia . . . includ[ing] their purposeful conduct in making and conspiring to publish defamatory statements intended to injure an organization located in the District of Columbia." Compl. ¶ 17.  Plaintiff's oppositions do not address whether Defendants have sufficient "minimum contacts" with the District. Pl.'s Opp'n Ahmed at 15–26; Pl.'s Opp'n Viswanath & Rajagopal at 15–26; Pl.'s Opp'n Truschke at 15–20.  Simply put, Plaintiff fails to plead facts or present evidence satisfying the constitutional requirement of due process, requiring dismissal of the case against Defendants Viswanath, Rajagopal, Ahmed, and Truschke.

c.   Conspiracy Jurisdiction

Finally, HAF argues that conspiracy jurisdiction exists under § 13-423(a)(1).  Under HAF's conspiracy jurisdiction theory, the court could exercise jurisdiction over Defendants as long as the "conduct of their alleged co-conspirators . . . supplies the necessary contacts with the District of Columbia." *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 90 (D.D.C. 2017), *aff'd*, 894 F.3d 339 (D.C. Cir. 2018).  Defendants respond that "conspiracy jurisdiction requires pleading with particularity the existence of a conspiracy, an overt act within the forum, and the out-of-forum co-conspirators' knowledge that that act would occur within the

forum, which Plaintiff has not done."  Viswanath & Rajagopal Reply at 7–8.  The court agrees with Defendants.

"[C]onspiracy jurisdiction . . . cannot exist unless the [complaint] actually states a plausible claim of civil conspiracy," and the D.C. Circuit requires a plaintiff to "'plead *with particularity* the conspiracy as well as the *overt acts within the forum* taken in furtherance of the conspiracy' in order to establish conspiracy jurisdiction over a defendant." *EIG Energy Fund*, 246 F. Supp. 3d at 90 (quoting *Companhia Brasileira Carbureto de Calicio v. Applied Industrial Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011) (emphasis in the original)).  "This particularity requirement is strictly enforced," and courts in this Circuit "have appl[ied] the test for co-conspirator jurisdiction warily in order to prevent a broad extension of long-arm jurisdiction." *Id.* (quotations omitted).

Plaintiff's pleading comes nowhere close to stating a sufficient claim of civil conspiracy and does not satisfy "this Circuit's rigorous conspiracy jurisdiction pleading requirement." *Id.* HAF is required to plead with particularity both the existence of a conspiracy and "overt acts within the forum taken in furtherance of the conspiracy." *Companhia Brasileira Carbureto*, 640 F.3d at 372.  HAF has done neither.  HAF does not allege a single overt act by a co-conspirator in furtherance of the conspiracy that occurred in the District and it pleads no overt act with particularity.  For this reason alone, Plaintiff's conspiracy jurisdiction theory fails.  Additionally, for the reasons stated in Section VI, HAF has not pleaded with particularity the existence of a civil conspiracy.  HAF's complaint "falls well short of the particularized pleading requirements for conspiracy jurisdiction demanded by the D.C. Circuit." *EIG Energy Fund*, 246 F. Supp. 3d at 90.

d.    Jurisdictional Discovery

HAF seeks jurisdictional discovery to supplement its jurisdiction allegations.  HAF's request is denied.  Courts permit jurisdictional discovery when a plaintiff demonstrates that it can cure jurisdiction deficiencies through discovery.  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351–52 (D.C. Cir. 2000).   A plaintiff's request "cannot be based on mere conjecture or speculation."  *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093–94 (D.C. Cir. 2008), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021).  It "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant."  *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).

HAF's requests for discovery concern Defendants' roles and responsibilities within their respective political organizations and Defendants' relationships with each other.  *See e.g.*, Pl.'s Opp'n Viswanath & Rajagopal at 27 (seeking documents regarding "Viswanath and Rajagopal's respective roles, duties, activities, authorities, and responsibilities with respect to HfHR . . . [and their] respective contacts with D.C. in their roles and capacity as founders and officers of HfHR"). It is hard to see how the requested information would cure Plaintiff's jurisdiction deficiencies. Even if there were a plausible conspiracy, additional discovery would not establish co-conspirator jurisdiction because HAF has not pleaded that any overt act occurred in the District of Columbia. The additional discovery would not support jurisdiction under § 13-423(a)(1) because HAF does not seek discovery related to any Defendant's business transactions in the District, and it would not support jurisdiction under § 13-423(a)(3) because no tortious act is alleged to have occurred in the District.

Nor would the requested discovery support jurisdiction under § 13-423(a)(4) or the Due Process Clause. Defendants have submitted affidavits stating that they do not have regular contacts with the District and were not in the District when they made the allegedly defamatory statements at issue. *See* Viswanath Decl. ¶¶ 4–5; Rajagopal Decl. ¶¶ 4–5; Truschke Mot., Decl. of Audrey Truschke, ECF No. 36-2, ¶¶ 14–15; Ahmed Decl. ¶¶ 3–7. Plaintiff makes no attempt to contest these affidavits. HAF does not, for example, identify any contact with the District of Columbia by any Defendant not already acknowledged by them. Plaintiff's jurisdictional discovery request, therefore, amounts to a fishing expedition, is speculative, and is not made in good faith. "In light of [Defendants'] uncontested affidavit[s]," this court is "justified in denying further discovery." *Caribbean Broad*, 148 F.3d at 1090.[7]

### C. Defamation Claim Against Prabhudoss

That leaves Defendant Prabhudoss. Plaintiff argues that Prabhudoss made a defamatory statement that was quoted in the Second Story and published a defamatory tweet. Compl. ¶¶ 29(c), 34. Prabhudoss responds that Plaintiff, as a public figure or limited purpose public figure, failed to allege that Prabhudoss acted with actual malice and therefore fails to state a claim. Prabhudoss Mot. at 20–27. Prabhudoss further argues that his quoted statement "is reasonably understood to communicate a subjective value proposition" and "thus cannot be considered false for purposes of a defamation claim," and that his tweet amounts to "imaginative expression or rhetorical hyperbole" and "cannot be libelous." Prabhudoss Mot. at 11–12.

Under District of Columbia law, a defamation plaintiff must allege "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published

---

[7] Even if jurisdictional discovery were warranted, for the reasons stated in Section V.C.a, HAF fails to plead actual malice against Defendants Viswanath, Rajagopal, Ahmed, and Truschke and thus fails to state a claim for relief against those defendants.

the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Bauman*, 377 F. Supp. 3d at 10.  Public figures and limited purpose public figures must plausibly plead actual malice, meaning that the defendant published the defamatory statement with "knowledge that it was false or with reckless disregard of whether it was false or not." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001).  If a public figure fails to plead actual malice, the defamation claim fails, even if the statement is verifiably false.

Prabhudoss argues that HAF is, at least, a limited purpose public figure.  HAF does not contend otherwise, and it assumes that it is a limited purpose public figure.  Pl.'s Opp'n to Def. John Prabhudoss's Mot., ECF No. 42 [hereinafter Pl.'s Opp'n Prabhudoss], at 23.  Accordingly, in addition to the other elements of a defamation claim, Plaintiff also must plead sufficient facts from which to infer that Prabhudoss acted with actual malice.

a.  Actual Malice

Plaintiff argues that Prabhudoss acted with actual malice because publicly available tax statements "show that HAF was not misusing taxpayer funds" and therefore there were "obvious reasons" for Prabhudoss to doubt the truthfulness of his statements.  Pl.'s Opp'n Prabhudoss at 22–23; Compl. ¶ 40 ("Because there were obvious reasons to doubt the accuracy of the Defamatory Statements, Defendants had an obligation to verify the truth, which they failed to do, thereby demonstrating that they published the Defamatory Statements with actual malice."), ¶ 37 ("There are extensive publicly available and readily accessible financials and other documents that directly contradict the Defamatory Statements and establish that no funds were provided by HAF to any alleged Indian nationalist or supremacist organizations.").  Prabhudoss responds that "HAF's

23

argument boils down to an assertion that the *mere existence* of its financial statements . . . should give rise to an inference of actual malice" and falls short of the requirement that "defamation plaintiffs[] allege facts sufficient to infer that the defendant *subjectively* entertained doubts about the truth of their statements prior to publication."  Reply Mem. of L. in Supp. of Def. Prabhudoss Mot., ECF No. 45, at 13–14.

The "standard of actual malice is a daunting one." *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1515 (D.C. Cir. 1996).  A defendant acts with "actual malice" if he makes a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Jankovic v. International Crisis Group*, 822 F.3d 576, 589 (D.C. Cir. 2016) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).  The actual malice test is subjective; a defendant acts "recklessly" if "the defendant in fact entertained serious doubts" as to the truth of the publication or acted "with a high degree of awareness of [its] probable falsity." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  Importantly, "it is not enough to show that defendant should have known better"—the plaintiff "must offer evidence that the defendant in fact harbored subjective doubt." *Jankovic*, 822 F.3d at 589.

Here, Plaintiff does not plausibly allege that Prabhudoss entertained "serious doubts" as to the truth of his statements or acted with a high degree of awareness of its probable falsity. *St. Amant*, 390 U.S. at 731.  The Supreme Court has held, in the context of a news reporter, that the "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish [the] reckless disregard" required to prove actual malice. *Harte-Hanks Comms, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).  If the failure to investigate does not constitute actual malice for journalists, such failure cannot make out actual malice against a lay person.  Plaintiff's malice allegations ultimately amount to an argument that Prabhudoss

"should have known better." *Jankovic*, 822 F.3d at 589. Pleading actual malice requires much more, and Plaintiff's conclusory allegations against Prabhudoss fall far short of the "daunting" standard of actual malice. *McFarlane*, 91 F.3d at 1515.

HAF also fails to plead actual malice against Defendants Viswanath, Rajagopal, Ahmed, and Truschke. The court cannot plausibly infer that any of their statements were made with actual malice. Again, the only allegation HAF points to in support of malice is the existence of publicly available financial statements. For the reasons discussed, those allegations are not enough to sustain a claim. *See e.g.*, Pl.'s Opp'n Viswanath & Rajagopal at 37 ("HAF pleads that the co-conspirators were aware of the public filings of HAF and thus knew that its claims of connections to Indian groups and misuse of taxpayer funds were false."); Pl.'s Opp'n Truschke at 24 ("[T]here are extensive public records that were available to members of the conspiracy, including Truschke, that establish the truth[.]"); Pl.'s Opp'n Ahmed at 43 ("Ahmed controls a non-profit that is required to publicly report the same information that HAF contends he should have investigated prior to publication.").

Accordingly, this court finds that HAF fails to plead actual malice and thus fails to state a claim of defamation against all Defendants.

b.    Falsity

Plaintiff's defamation claim against Prabhudoss fails for another reason—HAF does not plausibly allege that Prabhudoss's statements are verifiably false. Falsity is a distinct element of defamation that must be separately pleaded. *See Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 155 (D.D.C. 2018) ("[W]hen confronted with a motion to dismiss a defamation claim, a court must determine not only whether a statement is capable of defamatory meaning but also whether the statement is plausibly false."). "For a statement to be actionable under the First

25

Amendment, it must at a minimum express or imply a verifiably false fact." *Weyrich*, 235 F.3d at 624.

Prabhudoss is quoted in the Second Story as stating: "Government watchdog groups as well as human rights organisations need to take serious note of the misappropriation of COVID funding by Hindu supremacist groups [in] the United States." Ex. 59 at 5; Compl. ¶ 29(c). Prabhudoss's declaration is a statement of opinion—he is stating his view on how certain organizations should respond to what he sees as a "misappropriation of COVID funding." The statement is not actionable as defamation because "expressions of a subjective view . . . are not provably false and thus cannot undergird a claim of defamation." *Bauman*, 377 F. Supp. 3d at 10–11.

Prabhudoss later tweeted: "Recently realized that the @HinduAmerican just confirmed and acknowledged through its own lawyers that they are a Hindu supremacist organization in the US operating as a charity. Wow! Who would have thought that!!" Compl. ¶ 34. Prabhudoss's "tweet was posted shortly after HAF issued cease-and-desist letters to Defendants after the publication of the First and Second Stories demanding" that Defendants publish retractions and apologies on their websites and social media accounts, and cease and desist from publishing further allegedly defamatory statements about HAF. Prabhudoss Mot. at 8. The tweet amounts to "rhetorical hyperbole"—in response to actions taken by HAF's attorneys—which "cannot be libelous, as such statements are used not to implicate underlying acts but merely in a loose, figurative sense to demonstrate strong disagreement with another." *Bauman*, 377 F. Supp. 3d at 11. For the stated reasons, Plaintiff's defamation claim against Defendant Prabhudoss fails to plausibly allege falsity.

Furthermore, the court has reviewed the allegedly defamatory statements attributed to Defendants Viswanath, Rajagopal, Ahmed, and Truschke, and finds that HAF fails to plausibly

plead that any statement made by any defendant is verifiably false.  Most of the statements are clearly statements of opinion.  For example, Defendant Viswanath is quoted in the First Story[8] stating: "Any American non-profit that perpetuates Islamophobia and other forms of hate should not receive federal relief funds in any form."  Compl. ¶ 25(a)(iii); Ex. 58 at 9.  This is a non-actionable statement of opinion—Viswanath is expressing her view on what types of organizations are deserving of federal relief funds.  *Bauman*, 377 F. Supp. 3d at 10–11.  Defendant Ahmed is quoted in the Second Story stating: "US taxpayers' money being used to keep hate groups in business is absolutely unacceptable and should concern all who believe in fairness, justice and government accountability."  Ex. 59 at 3; Compl. ¶ 29(a)(i).  This is another clear statement of opinion expressing a view on how government funding should be distributed, and which groups are deserving of federal relief funds.  *See also* Ex. 59 at 4 (Defendant Rajagopal stating: "The rise of HAF and other organisations linked with Hindutva has emboldened Hindu supremacist organizations in India, while also stifling the moderate Hindu voices here in the US."); Compl. ¶ 31(a) (Defendant Truschke[9] tweeting: "As a scholar of South Asia, I can attest that some of these groups spread hate & use intimidation tactics.  These things are dangerous and unwelcome on US soil").  For the stated reasons, HAF fails to plausibly plead that any statement made by any defendant is verifiably false.

---

[8] Defendant Viswanath is further quoted in the First Story stating: "All these organisations are sympathetic to the Hindu Supremacist ideology. Their parent organisations continue to spread hatred in Hindu communities toward Muslims and Christians." Ex. 58 at 9; Compl. ¶ 25(a)(ii). The term "Hindu Supremacist ideology" is not actionable— "because of the tremendous imprecision of the meaning and usage of [the] term[] in the realm of political debate," it "cannot be regarded as having been proved to be [a] statement[] of fact." *Ollman v. Evans*, 750 F.2d 970, 980–81 (D.C. Cir. 1984) (en banc). However, the court notes that Viswanath's claim that HAF has "parent organisations" in India is plausibly verifiably false—HAF's complaint alleges that "HAF has no affiliation or ties to . . . any alleged Hindu nationalist or supremacist group in India." Compl. ¶ 36. Nevertheless, the plausible falsehood of this claim does not save HAF's defamation claim against Viswanath.

[9] The court notes that some of Truschke's statements are arguably verifiably false. *See e.g.*, Compl. ¶ 33(c) ("Full disclosure that the HAF Board member in question [Rajiv Pandit] has been going after me, along with a growing list of people, in recent days."). Nevertheless, even if proven false, HAF's defamation claim fails because the statement is not defamatory.

## VI.    CIVIL CONSPIRACY

Plaintiff alleges a common law civil conspiracy claim against all Defendants for conspiring to "defame HAF" by "causing false and disparaging statements about HAF to be published in the First and Second Stories."  Compl. ¶ 52.  Civil conspiracy is not a standalone tort and "thus fails unless the elements of the underlying tort are satisfied."  *Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009).  Because the underlying defamation claim against Prabhudoss fails, Plaintiff's civil conspiracy claim fails.

## VII.    CONCLUSION

For the foregoing reasons, Defendant Prabhudoss's Motion to Dismiss, ECF No. 34; Defendants Viswanath & Rajagopal's Motion to Dismiss, ECF No. 35; Defendant Truschke's Motion to Dismiss, ECF No. 36; and Defendant Ahmed's Motion to Dismiss, ECF No. 37, are granted.  A final, appealable order accompanies this Memorandum Opinion.

Dated:  December 20, 2022

Amit P. Mehta
United States District Judge