UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HINDU AMERICAN FOUNDATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-cv-01268 (APM) |
| ) | |
| SUNITA VISWANATH et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**I.**

After the court dismissed this matter for lack of personal jurisdiction, *see Hindu Am. Found. v. Viswanath*, 646 F. Supp. 3d 78, 86 (D.D.C. 2022), a non-party journalist, Raqib Hameed Naik, filed a letter seeking public disclosure of information redacted in Defendants' Supplemental Memorandum to the Motion to Dismiss, ECF No. 55. Letter, ECF No. 63. Several pages of the brief and three declarations contain redactions, and certain exhibits were filed entirely under seal, all of which pertain to Plaintiff Hindu American Foundation ("HAF"). Defs.' Mem. re Letter, ECF No. 65 [hereinafter Defs.' Mem.], at 1–2. HAF opposes the request to unseal the filing, arguing that the records contain "private highly confidential and sensitive information that would cause significant harm to HAF if publicly released." Pl.'s Mem. re Letter, ECF No. 64 [hereinafter Pl.'s Mem.], at 1. Plaintiff does not, however, oppose refiling more lightly redacted versions of some of the records. Defendants support the unsealing request in its entirety. Defs.' Mem.

For the reasons explained below, the continued sealing of disputed materials is not warranted.

## II.

The redacted information falls primarily into five categories: (1) aggregate annual donor contributions; (2) individual, de-identified donations; (3) information about grant applications and rejections; (4) information about HAF's expulsion from an activist coalition, the Alliance Against Genocide; and (5) information about HAF's discussions with a Fortune 500 company regarding a speaking engagement. The contents of the filings are described below.

- The redacted information in the brief concerns an increase in donations to HAF after publication of the alleged defamatory articles; donation reductions in particular years; information about a denied funding request to the Oak Foundation; a blast email that HAF received from the Allstate Foundation and the outcome of HAF's funding request; rejection of a proposed educational opportunity with a Fortune 500 company; the amount of money that HAF raised in connection with a litigation fundraising campaign and the number of donors; and lastly, information about the Alliance Against Genocide's expulsion of HAF and its reason for doing so. Def.'s Suppl. Mem., ECF No. 55-1, at 2, 5, 6, 7, 8, 9, 10, 12, 13, and 14.

- Exhibit B, sealed in its entirety, is a deposition that discusses the funding request made to the Allstate Foundation and its outcome, HAF's removal from the Alliance Against Genocide, the specific Fortune 500 company that rejected the proposal for HAF to present to its employees, the number of donors who reduced their contributions, and fluctuations of donors' contributions. Other exhibits similarly discuss differences in donations between 2021 and 2022, general solicitation of family foundations for donations, and the number of total donations for specific years. Exhibit C also contains deposition testimony.

- Exhibits D & E are spreadsheets tracking "reduced donations" and "lost donations" from de-identified individuals in 2021 and 2022.

- Exhibit F is HAF's grant application to the Oak Foundation and the foundation's rejection of that request.

- Exhibit G is the blast fundraising email from the Allstate Foundation, Exhibit H is HAF's grant application, and Exhibit I is the foundation's response to HAF.

- Exhibit J is an email from HAF to the Fortune 500 company.

- Exhibit L is a list of first-time donors, all de-identified, since April 2021.

- Exhibit M is the letter from the Alliance Against Genocide informing HAF of its expulsion and the reasons for that action.

- The Declaration of Thomas Sullivan, ECF Nos. 55-3, 55-4, reflects the total amounts donated to HAF and the number of donors from 2018 to 2021.

**III.**

This court has discretion to decide whether to seal court records, but that calculus begins with a "strong presumption in favor of public access to judicial proceedings." *United States v. Hubbard*, 650 F.2d 293, 317 (D.D.C. 1980). This presumption exists because "access to records serves the important functions of ensuring the integrity of judicial proceedings." *Id.* at 314–15. In determining whether a sealing request overcomes the strong presumption of public access, the court must apply the six factors set forth in *Hubbard*: (1) the need for public access to the document to be sealed, (2) whether there has been previous public access, (3) whether a party has objected to disclosure of the document, (4) the strength of the privacy interests involved, (5) the possibility of prejudice, and (6) the purposes for which the document was introduced. *Id.* at 316–22. As explained below, the *Hubbard* factors weigh in favor of unsealing the records in their entirety.

The first factor—the need for public access—leans towards disclosure. HAF argues that the information concerns private and confidential activities, which have little need for public scrutiny. Pl.'s Mem. at 3. The court is unpersuaded. Following a period of court-ordered limited jurisdictional discovery, Defendants submitted the records to argue that HAF had not satisfied the amount-in-controversy requirement. The court reviewed the records and Defendants' arguments but concluded that HAF had satisfied its burden. *Hindu Am. Found.*, 646 F. Supp. 3d at 91. There is a strong public interest in the disclosure of evidence upon which a court relies to make rulings. *Cf. EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (observing that there is a "need for public access" when the "documents at issue [are] . . . specifically referred to in the

trial judge's public decision") (quoting *Hubbard*, 650 F.2d at 318).  Factor one thus favors release of the sealed information.

As to the second factor—the extent of previous public access—HAF contends that the sealed records are not in the public domain.  Defendants respond that some of the information is made public through annual tax returns, and they emphasize that the records do not reflect donors' identities.  Defendants are correct that HAF is required to disclose aggregate contributions and gifts information in its annual tax returns.[1]  The public availability of such information favors its disclosure.  On the other hand, because there has been no prior public access to information about individual donations, grants, or educational opportunities, this factor weighs against unsealing that particular information.

Third, HAF objects to disclosure.  Defendants argue that HAF's position is not persuasive because it is a party to the litigation.  Although party objections do not carry the same weight as those from third parties, *see Hyatt v. Lee*, 251 F. Supp. 3d 181, 185 (D.D.C. 2017); *cf. Hubbard*, 650 F.2d at 319 (addressing an objection from a third party), this factor modestly favors nondisclosure.

As to the fourth and fifth factors—the strength of the privacy and property interests and the risk of prejudice to the party opposing disclosure—HAF argues that the timing and amounts of donations are confidential and so too is the information about grants and the educational opportunity at issue.  HAF further claims that its critics and adversaries could use the information to interfere with its ability to contract for services and secure grants and donations, as well as trace and harass its donors.  HAF's argument is not persuasive.  The donors are anonymized, so individual privacy interests are not at stake.  Further, as discussed, because HAF is a nonprofit,

---

[1] For example, HAF's 2020 Form 990 can be found at
https://apps.irs.gov/pub/epostcard/cor/680551525_202106_990_2022030219676397.pdf.

much of its financial information already is subject to public disclosure. As for HAF's grant rejections and efforts to secure an educational opportunity with a Fortune 500 company, HAF does not say how disclosure of those records would prejudice it in connection with future grant applications or attempts to advance its educational objectives. The fourth and fifth factors therefore weigh in favor of disclosure.

The sixth factor—the purpose of the documents in the case—weighs heavily towards unsealing. HAF argues that the redacted information played a limited role in the case because it did not relate to the merits, and the court dismissed the case on separate jurisdictional grounds. That argument, however, overlooks the fact that the court specifically ruled in HAF's favor on the amount-in-controversy requirement and relied on the materials to inform that dispute. Although the court ultimately dismissed for a different reason, because the records were "considered as part of judicial decisonmaking" this factor leans heavily towards disclosure. *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 120 (D.C. Cir. 2021) ("When a sealed document is considered as part of judicial decisionmaking, the sixth factor will oftentimes carry great weight."); *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022) (same).

Finally, although the parties made no specific arguments regarding HAF's expulsion from the Alliance Against Genocide, the *Hubbard* factors favor disclosure. Defendants submitted the information for the court's consideration, and HAF's non-membership is a matter of public record as the Alliance has a publicly searchable database of its members. HAF may suffer some prejudice from public disclosure of the fact of its expulsion and the reasons therefor, but not to a degree that would outweigh the other factors.

On balance then, the *Hubbard* factors do not favor the continued sealing of any of the records submitted by HAF.

## IV.

In conclusion, the *Hubbard* factors weigh in favor of disclosure of the withheld information. By June 14, 2024, Defendants shall refile on the public record their Supplemental Memorandum to the Motion to Dismiss without any redactions or sealed exhibits.

Dated: June 5, 2024

Amit P. Mehta
United States District Court Judge